25-1989, 25-1990

# United States Court of Appeals for the Federal Circuit

SANHO CORP.,

*Plaintiff-Cross-Appellant,*

– v. –

KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., dba J5Create, KAIJET TECHNOLOGY INTERNATIONAL CORP., dba J5Create,

*Defendants-Appellants,*

STARVIEW GLOBAL LTD., dba J5Create,

*Defendant-Appellee,*

DOES 1-10, MAGIC CONTROL TECHNOLOGY, dba J5Create,

*Defendants.*

*On Appeals from the United States District Court for the Northern District of Georgia in Nos. 1:18-cv-05385-SDG and 1:20-cv-02150-TCB Honorable Steven D. Grimberg, Judge*

## CORRECTED BRIEF FOR DEFENDANTS-APPELLANTS

ELIZABETH H. RADER
CALLIOPE LEGAL
16550 Emory Lane
Rockville, Maryland 20853
(650) 346-9926
elizabeth@calliopelaw.com

*Counsel for Defendants-Appellants*

NOVEMBER 20, 2025

COUNSEL PRESS (800) 4-APPEAL • (384244)

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## AMENDED CERTIFICATE OF INTEREST

**Case Number** 25-1989

**Short Case Caption** Sanho Corp. v. Kaijet Technology International Limited Inc

**Filing Party/Entity** Kaijet Technology International Limited, Inc. and Kaijet Technology International Corporation

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/17/2025

Signature: /s/ Elizabeth H. Rader

Name: Elizabeth H. Rader

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☐ None/Not Applicable |
| Kaijet Techology International Limited, Inc. | None/Not Applicable | None/Not Applicable |
| Kaijet Technology International Corporation | None/Not Applicable | None/Not Applicable |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☑ Additional pages attached

| | | |
|---|---|---|
| Lee & Hayes, PC | Incorporating Innovation, LLC | King & Spalding, LLP |
| Rhett Vance Barney | Robert J. Carlson | William Brownell Dyer |
| Ryan Gentes | Robert Anthony Madayag, III | Steven Matthew Philbin |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

Form 9- Attachment (additional page for counsel appearing below or in appeal or cross-appeal)

Case No. No. 25-1989 (consolidated with cross-appeal No. 25-1990)

---

Additional attorneys:

Elizabeth Hannah Rader (counsel on appeal and cross-appeal)

David Keeler Ludwig (now counsel on appeal and cross-appeal)

Steven G. Hill (now counsel on appeal and cross-appeal)

James Avery Rollins

Heather Rebecca Saul

James D. Stein

Andrew Garrett Strickland

Charlena L. Thorpe

Johanna R. Tomlinson

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... v
STATEMENT OF RELATED CASES .......... 1
JURIDICTIONAL STATEMENT .......... 1
INTRODUCTION .......... 1
STATEMENT OF THE ISSUES .......... 4
STATEMENT OF THE CASE .......... 5

A. Sanho sues for patent, trademarks, and copyright infringement and related unfair competition claims .......... 5

B. The district court denies KaiJet Taiwan's motion to dismiss .......... 6

1. The motion .......... 6

2. The district court finds that Jessica Liu was a manager of KaiJet Taiwan when served .......... 10

3. The district court finds that jurisdiction comports with Georgia's long-arm statute and Constitutional due process .......... 11

C. The district court denies KaiJet Taiwan's summary judgment motion .......... 12

D. The district court precludes KaiJet Taiwan from arguing to the jury that it only engaged in foreign sales .......... 15

E. The trial and jury verdict of copyright infringement and disgorgement of profits .......... 15

F. The district court denies KaiJet Taiwan's post-trial motions on Sanho's copyright infringement claim .......... 19

SUMMARY OF THE ARGUMENT .......... 20

STANDARD OF REVIEW .......... 25

ARGUMENT .......... 26

I. The district court abused its discretion by treating Kaijet Taiwan's summary judgment motion as based on lack of subject matter jurisdiction because of its mistake of law .......... 26

A. The motion was for judgment on the merits .......... 26

B. The district court erred as a matter of law by concluding that territorial conduct is a requirement for subject matter jurisdiction .......... 28

C. The district court erred in finding that Sanho's evidence supported reasonable inferences that KaiJet Taiwan shipped, imported, marketed, and sold Ultradrive products in the United States .......... 29

D. Sanho's evidence did not support a reasonable inference that KaiJet Taiwan distributed Ultradrive hubs within the United States .......... 32

1. KaiJet Taiwan did not distribute Ultradrive hubs in the United States by telling KaiJet U.S. what products will soon be available .......... 32

2. Where a container that ultimately reaches the United States is "stuffed" is irrelevant .......... 32

3. The air waybills are unauthenticated by their third-party author and contain inadmissible hearsay .......... 33

4. That KaiJet U.S. paid KaiJet Taiwan directly does not support a reasonable inference that KaiJet Taiwan sold Ultradrive hubs within the United States .......... 33

5. KaiJet Taiwan's statement of use is not evidence that it sold j5Create-brand products in the United States .......... 34

6. Coordinating with KaiJet U.S. to import j5Create branded products is not evidence that KaiJet Taiwan distributed Ultradrive hubs in the United States ........ 35

7. KaiJet Taiwan emailing a product roadmap to KaiJet U.S. is not distribution or any other act that can infringe a copyright ........ 36

8. Owning the j5Create.com website is not evidence that KaiJet Taiwan does anything within the United States to infringe Sanho's copyright ........ 37

9. None of the above evidence creates a material issue of fact as to whether KaiJet Taiwan imported products into the United States ........ 38

II. The district court erred in denying KaiJet Taiwan's post-trial motion and entering judgment against KaiJet Taiwan on copyright infringement ........ 40

A. KaiJet did not waive the argument that Sanho's evidence did not prove infringing conduct within the United States by not raising it in its Rule 50(a) motion for JMOL ........ 40

B. The district court failed to make findings of facts on whether Sanho had proved that KaiJet Taiwan committed copyright-infringing acts within the United States ........ 44

C. The district court erred by entering judgment of copyright infringement when neither the jury nor the district court had found that Sanho had proved territorial infringing conduct by a preponderance of the evidence ........ 47

III. The jury's award should be vacated for Sanho's failure to show any profits attributable to use of its copyright in the design of its package ........ 48

A. The trial court erred in relying on the jury's award because monetary relief in the form of disgorgement of profits is equitable ........ 48

B. Sanho did not prove all the defendants' profits on sales of Ultradrive hubs were attributable to infringement of Sanho's copyright ........ 50

IV. The district court erred in denying Kaijet Taiwan's first motion to dismiss because Sanho offered no reliable evidence that Jessica Liu was a manager of KaiJet Taiwan when she was served ........ 53

V. The district court erred in denying Kaijet Taiwan's first motion to dismiss and exercising personal jurisdiction over KaiJet Taiwan based on its contacts with KaiJet U.S. ........ 58

CONCLUSION ........ 66

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Abitron Austria GmbH v. Hetronic Intl., Inc.*,
600 U.S. 412 (2023) .......... 26, 27

*Advanced BodyCare Solutions, LLC v. Thione Int'l, Inc.*,
615 F.3d 1352 (11th Circuit 2010) .......... 26

*Akro Corp. v. Luker*,
45 F.3d 1541 (Fed. Cir. 1995) .......... 64

*AlexSam, Inc. v. Aetna, Inc.*,
119 F.4th 27 (Fed. Cir. 2024) .......... 60

*Arbaugh v. Y & H. Corp,*
546 U.S. 500 (2006) .......... 29

*Ashcroft v. Iqbal*,
556 U.S.662 (2009) .......... 58, 59

*Atl. Thermoplastics Co., Inc. v. Faytex Corp.*,
5 F.3d 1477 (Fed. Cir. 1993) .......... 45

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
566 F.3d 1012 (Fed. Cir. 2009) .......... 25

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......... 30, 31

*Coney v. Macon-Bibb Cnty.*,
No. 5:19-00145, 2019 WL 2719799 (M.D. Ga. June 28, 2018) .......... 55

*Dainippon Screen Mfg. Co. v. CFMT Inc.*,
142 F.3d 1266 (Fed. Cir. 1998) .......... 25

*Diamond Crystal Brands, Inc. v. Food Movers Int'l.*,
593 F.3d 1249 (11th Cir. 2010) .......... 62

*Don't Look Media LLC v. Fly Victor Ltd.*,
999 F.3d 1284 (11th Cir. 2021) .......... 59, 61

*Electronics for Imaging v. Coyle*,
340 F.3d 1351 .......... 64

*Ericsson Inc. v. Intellectual Ventures, LLC*,
901 F.3d 1374 (Fed. Cir. 2018) .......... 57

*Erwin Hyper Grp. N. Am. v. United States*,
930 F.3d 1370 (Fed. Cir. 2019) .......... 38

*Falanga v. State Bar*,
150 F.3d 1333 (11th Cir. 1998) .......... 41

*Ferrari S.P.A. v. Roberts*,
944 F.2d 1235 (6th Cir. 1991) .......... 49

*Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*,
778 F.3d 1059 (9th Cir. 2015) .......... 49

*Fitzpatrick v. Bank of N.Y. Mellon*,
580 Fed. Appx. 690 (11th Cir. 2014) .......... 53

*G. Simon's & Co., S.A. v. New Bar of N.Am.*,
No. 98 Civ. 5162 (GBD), 2005 U.S. Dist. LEXIS 9043
(S.D.N.Y. May 12, 2005) .......... 33

*GB Mktg. USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*,
782 F. Supp. 763 (W.D.N.Y. 1991) .......... 29, 39, 40

*Gechter v. Davidson*,
116 F.3d 1454 (Fed. Cir. 1997) .......... 45

*Grecco v. Age Fotostock Am. Inc.*,
No. 21-CV-423 (JSR), 2021 U.S. Dist. LEXIS 192021
(S.D.N.Y. October 4, 2021) .......... 37

*Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*,
921 F.3d 1343 (11th Cir. 2019) .......... 49

*Innotex Precision Ltd. v. Horei Images Prods.*,
679 F. Supp. 2d 1356 (N.D. Ga. 2009) .......... 59

*Int'l. Custom Prods. v. United States*,
758 F.3d 1182 (Fed. Cir. 2014) .......... 38

*Intellicall, Inc. v. Phonometrics, Inc.*,
952 F.2d 1384 (Fed. Cir. 1992) .......... 25

*Kernel Records Oy v. Mosley*,
694 F.3d 1294 (11th Cir. 2012) .......... 30

*Litecubes LLC v. N. Light Prods, Inc.*,
523 F.3d 1353 (Fed. Cir. 2008) .......... *passim*

*Little Six, Inc. v. United States*,
280 F.3d 1371 (Fed. Cir. 2002) .......... 25

*Loctite Corp. v. Ultraseal Ltd.*,
781 F.2d 861 (Fed. Cir. 1985) .......... 44-45

*Madera v. Hall*,
916 F.2d 1510 (11th Cir. 1990) .......... 58, 59

*Markman v. Westview Instrs., Inc.*,
517 U.S. 370 (1996) .......... 48

*McGinness v. Am. Home Mtg. Serv., Inc.*,
817 F. 3d 1241 (11th Cir. 2016) .......... 43

*Medtronic, Inc. v. Daig Corp.*,
789 F.2d 903 (Fed. Cir. 1986) .......... 44

*Nat'l. Investing, Inc. v. Sharon Steel Co.*,
781 F.2d 1545 (11th Cir. 1986) .......... 43

*O'Neill v. NYU Med. Ctr.*,
No. 1:22-cv-0011-SEG (N.D. Ga. March 14, 2023) .......... 55

*Omni Cap. Int'l Ltd. v. Rudolf Wolff & Co.*,
484 U.S. 97 (1987) .......... 53

*Palmer v. Braun*,
376 F.3d 1254 (11th Cir. 2004) .......... 14, 27, 28, 29

*Parker v. Alcon Mgmt. S.A.*,
No. 21-14068, 2022 U.S. App. LEXIS 24523,
2022 WL 3905872 (11th Cir. Aug. 31, 2022) .......... 57

*Pinero v. 4800 W. Flagler, LLC*,
430 Fed. Appx. 866 (11th Cir. 2011) .......... 42

*Pinnacle Pizza v. Little Caeser Enters*,
598 F.3d 970 (8th Cir. 2010) .......... 34

*Polar Bear Prods., Inc. v. Timex Corp.*,
384 F.3d 700 (9th Cir. 2004) .......... 50, 51

*Polski Line Oceaniczne v. Seasafe Transp. A/S*,
795 F.2d 968 (11th Cir. 1986) .......... 59

*Potts v. City of Roswell*,
No. 1:24-cv-05116-TWT-RGV,
2025 U.S. Dist. LEXIS 90789 (N.D. Ga. May 13, 2025) .......... 55

*Pronman v. Styles*,
645 F. App'x 870 (11th Cir. 2016) .......... 50

*Quality Candy Shoppes/Buddy Squirrel of Wis., Inc. v. Grande Foods*,
90 U.S.P.Q.2d 1389 (T.T.A.B. 2007) .......... 34

*Reardon, LLC v. Walt Disney Pictures*,
152 F.4th 1058, 2025 U.S. App. LEXIS 23474 (9th Cir. 2025) .......... 49

*Reeves v. Wilbanks*,
542 Fed. Appx. 742 (11th Cir. 2013) .......... 53

*Rotec Indus., Inc. v. Mitsubishi Corp.*,
215 F.3d 1246 (Fed. Cir. 2000) .......... 65

*Sheldon v. Metro-Goldwyn Pictures Corp.*,
309 U.S. 390 (1940) .......... 50

*Sloss Indus Corp. v. Eurisol*,
488 F.3d 922 (11th Cir. 2007) .......... 65, 66

*Smith v. GTE Corp.*,
236 F.3d 1292 (11th Cir. 2001) .......... 28

*Subafilms Ltd. v. MGM-Pathe Commn'ns Co.*,
24 F.3d 1088 (9th Cir. 1994) .......... 20

*Superior Indus., LLC v. Thor Glob. Enters.*,
700 F.3d 1287 (Fed. Cir. 2012) .......... 64, 65

*Texas Advanced Optoelec. Sols., Inc. v. Renesas Elecs. Am., Inc.*,
895 F.3d 1304 (Fed. Cir. 2018) .......... 48, 49

*Thigpen v. Nissan Motor Co.*,
2023 U.S. Dist. LEXIS 58560, 2023 WL 2760056 (N.D. Ga. Mar. 31, 2023) .......... 57

*United States v. Ziegler Bolt & Parts Co.*,
111 F.3d 878 (Fed. Cir. 1997) .......... 53

*Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*,
196 F.3d 1366 (Fed. Cir. 1991) .......... 51

*Visa, USA, Inc. v. Birmingham Tr. Nat'l Bank*,
696 F.2d 1371 (Fed. Cir. 1982) .......... 34

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 59

*Wechsler v. Macke Int'l Trade, Inc.*,
486 F.3d 1286 (Fed. Cir. 2007) .......... 25-26

*Weiland v. Palm Beach County Sheriff's Off.*,
792 F.3d 1313 (11th Cir. 2015) .......... 60

*Well-Toy Mfg. Corp. v. Lotus Onda Indus. Co.*,
No. 00- Civ. 9605, 2002 U.S. Dist. LEXIS 789 .......... 27, 34, 36

**Statutes & Other Authorities:**

U.S. Const. Amend. VII .......... 48, 49

15 U.S.C. § 1055 .......... 34

17 U.S.C. § 106 .......... 28, 29, 30

17 U.S.C. § 504(b) .......... 48, 49

17 U.S.C. § 602 .......... 30

28 U.S.C. § 1295(a)(1) .......... 1

28 U.S.C. § 1338(a) .......... 27

35 U.S.C. § 271(a) .......... 64

4 Melvin B. Nimmer and David Nimmer, *Nimmer on Copyright* § 14.03[A] (1999) .......... 51

Fed. R. Civ. P. 4(h)(1)(B) ........ 54
Fed. R. Civ. P. 12(b) ........ 12
Fed. R. Civ. P. 12(b)(2) ........ 25
Fed. R. Civ. P. 50(a) ........ *passim*
Fed. R. Civ. P. 50(b) ........ 19, 43
Fed. R. Civ. P. 52 ........ 45
Fed. R. Civ. P. 52(a)(1) ........ 44, 45
Fed. R. Civ. P. 52(c) ........ 42, 43, 44
Fed. R. Civ. P. 56(c) ........ 25
J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 18:52 (5th ed. 2023) ........ 34-35
j5Create - www.j5Create.com ........ 37
O.C.G.A. § 9-10-91(1) ........ 11
O.C.G.A. § 9-11-4(e)(2)(b) ........ 54, 56

## STATEMENT OF RELATED CASES

This appeal is related to the consolidated appeal No. 25-1990, *Sanho Corp. v. KaiJet Technology International Limited, Inc.*, involving the same parties. The cases were consolidated in the district court.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over the appeal under 28 U.S.C. § 1295(a)(1) because the appeal is from a final judgment of a district court in a case arising under the patent[1] laws of the United States.

## INTRODUCTION

This appeal is largely about the reach of the United States' federal courts' jurisdiction over overseas companies and controversies that arise from trade between those companies and domestic ones. KaiJet Technology International Corporation (KaiJet Taiwan) designs computer peripherals, including the j5Create Ultradrive hub for MacBook laptops. It outsources manufacturing to other companies in Taiwan, packages the hubs, and sells them to independent distributors, including KaiJet U.S., which resells them in the United States. Sanho Corporation sells a competing hub and owns related intellectual property.

---

[1] The appeal does not present any patent issues, so the patents at issue below are intentionally not included under Fed. Cir. R. 30(a)(1)(A)(iii).

Sanho sued KaiJet U.S., and when it learned of KaiJet Taiwan, it amended its operative complaint to add KaiJet Taiwan. From its first special appearance to challenge personal jurisdiction, KaiJet Taiwan argued its lack of U.S. conduct. Although it presented evidence that Sanho did not serve it by serving KaiJet U.S.'s officers, and that it has no contacts with Georgia other than doing business with KaiJet U.S., the district court denied its motion to dismiss, After discovery, KaiJet Taiwan moved for summary judgment on Sanho's intellectual property claims, arguing that the evidence did not show a material dispute that it operates only in Taiwan, where KaiJet U.S. buys the accused products, takes title, and arranges to ship them to the United States and import them. The district court denied its motion, but not on the merits. Instead, it assumed that the geographical scope of U.S. statutes was a threshold, jurisdictional issue and that Sanho met that threshold by showing that KaiJet Taiwan coordinated with KaiJet U.S. to ship, import and distribute the accused products in the United States. That was not a mere labeling mistake—it led to a cascade of errors that caused the district court to enter a judgment of copyright infringement not supported by findings by either the jury or the court itself.

Because of its ruling that extraterritoriality was a jurisdictional defense that Sanho had overcome, the district court precluded KaiJet Taiwan from telling the jury that it did nothing within the United States. KaiJet Taiwan therefore did not discuss the insufficiency of Sanho's evidence of United States conduct in its initial JMOL motion directed to issues the jury would decide. The jury found both KaiJet Defendants liable for design patent and copyright infringement and awarded their profits on their sales as disgorgement damages.

After the verdict, the KaiJet Defendants renewed their JMOL motion and in the same brief, KaiJet Taiwan moved to dismiss Sanho's copyright infringement claim, again arguing that Sanho did not show it did anything potentially infringing within the United States. But then the district court recognized its mistake at the summary judgment stage: territoriality is not a threshold jurisdictional defense but a merits issue in a copyright infringement claim. The district court should have also recognized that neither it nor the jury had found that Sanho had proved U.S. conduct by KaiJet Taiwan by a preponderance of the evidence. And without that finding, at least the verdict of copyright infringement could not support a judgment. Indeed, the district court

had denied both sides a jury finding on a merits issue. But rather than determine how to avoid those unjust consequences of its mistake of law at the summary judgment stage, the district court declined to rule on the territoriality issue, concluding that KaiJet Taiwan waived Sanho's failure to prove its U.S. conduct by not raising it in its Rule 50(a) motion for JMOL. Appellants now ask this Court to review and reverse the district court's orders denying the motions to dismiss, for summary judgment, and for JMOL and vacate the judgment of copyright infringement and damages.

## STATEMENT OF THE ISSUES

1. Whether the district court abused its discretion in denying KaiJet Taiwan's motion for summary judgment based on its lack of conduct within the United States because the district court treated extraterritoriality as jurisdictional rather than as an element of the merits of the copyright infringement claim and concluded it had jurisdiction based on findings not supported by the evidence.

2. Whether the district erred in denying KaiJet Taiwan's post-trial motion based on its lack of conduct within the United States and entering judgment against it for copyright infringement.

3. Whether the district court erred in entering judgment awarding Sanho the KaiJet defendants' profits from sales of Ultradrive hubs where Sanho made no showing of a nexus between the infringement and the profits.

4. Whether the district court erred in denying KaiJet Taiwan's motion to dismiss for lack of personal jurisdiction because Sanho did not present sufficient evidence that it served a managing agent of KaiJet Taiwan with process or that jurisdiction comported with Georgia's long-arm statute and due process.

## STATEMENT OF THE CASE

### A. Sanho sues for patent, trademarks, and copyright infringement and related unfair competition claims.

KaiJet Taiwan is Taiwanese corporation operating entirely in Taiwan. (Appx288-Appx290). KaiJet U.S. is a Delaware corporation in Kennesaw, Georgia. (Appx225). KaiJet U.S. is the exclusive U.S. distributor and seller of j5Create branded products that KaiJet Taiwan designs, sources, packages, and sells in Taiwan. (Appx280). Sanho is a computer electronics company that sells a competing hub under its trademark "Hyperdrive." (Appx224). In 2018, Sanho sued KaiJet U.S. in a California federal court, which transferred venue to the Northern District of Georgia. (Appx133). In its third amended complaint ("TAC"), Sanho added KaiJet Taiwan as a defendant. (Appx223). The TAC included claims for patent infringement, federal trademark infringement and unfair competition, and copyright infringement. (Appx239-Appx247). It lumped KaiJet Taiwan and KaiJet U.S.,

together as "KaiJet." (Appx223). It alleged that both participated in marketing, offering for sale, and selling the accused products in the United States. (Appx229). For good measure, it alleged that the KaiJet companies are alter egos. (Appx226). For that theory, the TAC alleged facts that had been found to support alter ego liability in precedential cases. (Appx226-Appx227). But it alleged virtually no specific facts.

In January 2020, Sanho's process server served Jessica Liu and Steven Lyu in Las Vegas. (Appx280-Appx285). Sanho obtained a clerk's entry of default against KaiJet Taiwan. (Appx5). KaiJet Taiwan appeared specially to move to dismiss the TAC for lack of personal jurisdiction. (Appx263).

### B. The district court denies KaiJet Taiwan's motion to dismiss.

#### 1. The motion

KaiJet Taiwan moved to dismiss for two independent reasons: Sanho did not properly serve it with process and the court lacked personal jurisdiction over KaiJet Taiwan because it operates entirely in Taiwan. (Appx263). In its moving papers, KaiJet Taiwan provided

sworn affidavits of Steven Lyu, Jessica Liu, and Yu-Chi Tai. (Appx279-Appx291). Mr. Lyu declared that he is KaiJet U.S.'s COO and on January 7, 2020, he was given a copy of a court summons directed to KaiJet Taiwan. (Appx280). The server asked his name but did not ask him if he was a manager of "KaiJet Technology" or anything else. He is not and has never been an officer, owner, or employee of KaiJet Taiwan and was not authorized to accept service on its behalf. He also declared that KaiJet U.S. is not a parent, child, subsidiary, or corporate affiliate of KaiJet Taiwan. It purchases products from KaiJet Taiwan in Taiwan. KaiJet US submits purchase orders for products from KaiJet Taiwan. KaiJet Taiwan issues invoices for the products and KaiJet U.S. pays them. KaiJet U.S. is responsible for shipping and importing those products from Taiwan to the United States. To the best of his knowledge, KaiJet Taiwan does not make, use, offer to sell, import, or sell any products in the United States. (Appx280-Appx282).

Ms. Liu declared that she is the KaiJet U.S.'s CEO, and that on January 7, 2020, she was given a court summons directed to KaiJet Taiwan. The server asked her if she was "Jessica," handed her the

documents and left. He did not ask if she was the manager of "KaiJet Technology" or anything else. She is not an officer, director, or manager of KaiJet Taiwan, and is not authorized to accept service on behalf of KaiJet Taiwan and has not been an owner of KaiJet Taiwan since 2014. (Appx284-Appx288).

Ms. Tai declared she is KaiJet Taiwan's CEO and that neither Steven Lyu nor Jessica Liu (since early 2014) is an officer, owner, manager, managing or general agent, or any other agent authorized to receive service of process. (Appx288-Appx291). KaiJet Taiwan does not make, use, offer to sell, or sell products in Georgia or the United States, and does not import any products into the United States.

In its opposition, Sanho presented the process server's affidavit of service, including unsworn "additional information" that when he served Ms. Liu and Mr. Lyu, each confirmed being "a managing member of KaiJet Technology, based out of Taiwan." (Appx261-Appx262). Sanho also provided a record from the FCC's website, indicating that a March 13, 2018 filing on behalf of KaiJet Taiwan listed Jessica Liu as its contact person and gave "Manager" as her title. (Appx337).

In its reply papers, KaiJet Taiwan rebutted the process server's affidavit and explained the 2018 FCC filing's listing of Liu as a manager of KaiJet Taiwan, filing supplemental declarations. (Appx110-Appx1111). Ms. Liu explained why the FCC's record from 2018 shows her title was "manager." "I understand that in 2017, [KaiJet Taiwan] changed its name from KaiJet Technology International Limited to its current name, KaiJet Technology International Corporation." She continued, "[a]fter changing its name, [KaiJet Taiwan] updated its registration with the [FCC] in 2018. The attached Exhibit A to my declaration shows the FCC registration before this 2018 update." Before the name change, KaiJet Taiwan's FCC registration record identified the contact person as "manager," but not by name. But in 2018 KaiJet Taiwan "updated the FCC registration because its name changed." It "added my name, email and phone number as the contact person. I believe that when the registration was revised, the title of "manager" was inadvertently left in that space on the registration form." She did not hold the title of "manager" of KaiJet Taiwan (KTIC) in 2018 or currently. There was no need that she be an officer or employee of KaiJet Taiwan to be listed as its contact person on its FCC registration.

(Appx1109-Appx1114). Ms. Tai testified consistently that KaiJet Taiwan had officially changed its name in 2017). (Appx1120).

2. **The district court finds that Jessica Liu was a manager of KaiJet Taiwan when served.**

After summarizing its rulings, the district court listed the facts it treated as true to resolve the motion to dismiss. These included Sanho's allegations that KaiJet Taiwan operates KaiJet U.S. "as a subsidiary in KaiJet Taiwan's "j5Create" brand" and nine paragraphs of Sanho's allegations that "KaiJet Taiwan and KaiJet US essentially operate as one entity, as exemplified by their overlapping ownership, officers, directors, interests, control and business operations." It concluded that Sanho properly served KaiJet Taiwan by personally serving Jessica Liu, because it found that she was a manager of KaiJet Taiwan when she was served. The district court based its findings on the process server's affidavit and the FCC document listing Ms. Liu as KaiJet Taiwan's contact person and manager. (Appx9). It declined to consider KaiJet Taiwan's supplemental declarations because "a court should not consider arguments raised for the first time in a reply brief." (Appx11).

### 3. The district court finds that jurisdiction comports with Georgia's long-arm statute and Constitutional due process.

Turning to KaiJet Taiwan's to its challenge of minimum contacts for personal jurisdiction, the district court observed that Georgia's long-arm statute provides that a court in Georgia may exercise personal jurisdiction over a non-resident that "transacts any business within this state." O.C.G.A. § 9-10-91(1). (Appx15). It found that Sanho satisfied Georgia's long-arm statute because there was uncontroverted evidence that KaiJet Taiwan sent communications with KaiJet U.S. into Georgia regarding pricing and the Ultradrive product. (Appx18). Acknowledging that KaiJet Taiwan disputed Sanho's evidence that it ships the Ultradrive to Georgia and sells it there, the district court recited that it was required to resolve conflicting evidence in favor of Sanho, the party asserting that personal jurisdiction existed. (Appx19).

The district court then analyzed whether personal jurisdiction over KaiJet Taiwan comported with Constitutional due process and again relied on the evidence that KaiJet Taiwan sent communications into Georgia. (Appx22). It concluded that exercising personal

jurisdiction over KaiJet Taiwan was consistent with due process and denied its motion to dismiss. (Appx25).

KaiJet Taiwan answered the TAC. Its answer denied "that it is subject to personal jurisdiction in this Court" and maintained "all objections to Plaintiff's claimed process and claimed service of process… ." (Appx1128). KaiJet Taiwan admitted that KaiJet U.S. resides within the judicial district but denied all other jurisdictional allegations. (Appx1130). Under "Affirmative Defenses," KaiJet Taiwan asserted: "KTIC is not subject to personal jurisdiction in this Court. Plaintiff has never obtained sufficient service of process over KTIC, and the process Plaintiff claims to have served is not sufficient. KTIC maintains all defenses asserted by motion under Rule 12(b), FRCP." (Appx1167).

### C. The district court denies KaiJet Taiwan's summary judgment motion.

After discovery closed, KaiJet Taiwan moved for summary judgment on Sanho's federal claims, arguing that all KaiJet Taiwan's actions took place in Taiwan. (Appx1647). It filed supporting declarations attesting to the following facts. Although it has one distributor/customer based in Georgia, KaiJet Taiwan does not operate

in the United States. (Appx1678-Appx1679)). KaiJet U.S. purchases products from KaiJet Taiwan in Taiwan. (Appx280). Negotiations between KaiJet Taiwan and KaiJet U.S. primarily take place in Taiwan. (Appx1699). When they reach an agreement, Ms. Liu forwards the pricing information to KaiJet U.S. employees in the United States. (Appx1700). KaiJet Taiwan does not import products into the United States. (Appx281; Appx290). It delivers them "FOB Taiwan." (Appx281). After taking title in Taiwan, KaiJet U.S. shipped them and imported them into the United States. (Appx1700). Chuck Akins, KaiJet U.S.'s Vice President of Sales, testified in his deposition that KaiJet U.S. pays the tariffs on shipments of accused products into the United States when they go through customs. (Appx1715). Furthermore, KaiJet Taiwan does not advertise in the United States. (Appx1714-Appx1715). Nor does it participate in marketing in the United States, though it provides KaiJet U.S. with sample products for its marketing efforts. (Appx1699). KaiJet U.S. is not KaiJet Taiwan's subsidiary and KaiJet Taiwan is not able to control its operations. (Appx1701). KaiJet Taiwan and KaiJet U.S. have no common owners. Jessica Liu originally owned an interest in KaiJet Taiwan, but has not since 2014. (Appx1701). Ms.

Tai makes the decisions about KaiJet Taiwan's operations. (Appx1736). KaiJet Taiwan holds the j5create.com website, but KaiJet U.S. is responsible for its English content. (Appx1700).

Although KaiJet Taiwan's motion did not raise any jurisdiction issue, the district court treated the motion as seeking an order finding a lack of *subject matter jurisdiction.* It found that "KaiJet Taiwan's activity in the United States subjects it to U.S. intellectual property law." (Appx86). The district court concluded that KaiJet Taiwan's intentional "coordination" with KaiJet U.S. was "more than enough" for it to be liable under U.S. intellectual property statutes. (Appx89).

Turning to KaiJet Taiwan's argument specific to U.S. *copyright* law, the district court concluded that "[w]here a person imports an infringing work into the United States, the federal courts have jurisdiction over the action for infringement," citing *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004). (Appx93). Based on its findings that KaiJet Taiwan marketed its products in the United States, packaged its products for the United States and shipped its products

here, the district court concluded that "KaiJet Taiwan cannot assert extraterritoriality as a defense against KaiJet Taiwan's copyright infringement claims." (Appx93).

### D. The district court precludes KaiJet Taiwan from arguing to the jury that it only engaged in foreign sales.

Sanho moved in limine to preclude KaiJet Taiwan from introducing evidence or arguing that it only engaged in foreign sales not subject to U.S. intellectual property laws. (Appx3311-Appx3312). KaiJet Taiwan had no choice but to acknowledge the district court's ruling that it had jurisdiction over Sanho's claims and to agree not to present such evidence or argument to the jury. But it reserved the rights to appeal the district court's denial of its summary judgment motion and to make an order of proof at trial. (Appx3376). The district court granted Sanho's motion.

### E. The trial and jury verdict of copyright infringement and disgorgement of profits.

Sanho introduced KaiJet U.S.'s shipping documents for the accused Ultradrive hubs. Chuck Akins testified that KaiJet U.S. buys the

accused hubs from KaiJet Taiwan. (Appx4151). He also testified that "FOB" is basically a shipping term meaning the buyer picks products up from their country of origin. (Appx4172). KaiJet Taiwan's CEO, Ms. Tai, identified "ID-27-248818200" on an invoice as KaiJet U.S.'s importer ID for United States customs. (Appx5236-Appx5237). Ms. Tai testified that in international trade, "FOB" on an invoice is the price of goods when they leave the shore. "That is to say our obligation is to deliver the goods to the airport or the port in Taiwan and to hand that over to the buyer and the … rest of the [shipping] cost would be borne by the buyer. (Appx5234). She testified that KaiJet Taiwan is registered with the United States FCC, and that she signed its letter to apply for security-related certificates and permits. (Appx4745-Appx4746). "In order for our products to be sold in the U.S. market, registration is required." Ms. Tai testified that Jessica Liu had been KaiJet Taiwan's CEO between 2010 and the end of 2013. (Appx4748). Laboratories that worked with KaiJet Taiwan drafted its application filed with the FCC and listed Jessica Liu as manager. "[I]t was a mistake on the part of the labs, and when we discovered the error, we actually asked FCC to make a correction." (Appx4749). Shown an FCC letter to Sanho stating that KaiJet Taiwan

and KaiJet U.S. are the same company, Ms. Tai testified that that KaiJet Taiwan had replied to the FCC "to clarify that we're not the same company." (Appx4747). She also testified that KaiJet Taiwan owns the J5Create domain name and trademark and licenses KaiJet U.S. to use it in the United States. (Appx4753).

Jessica Liu testified that she was previously CEO of KaiJet Taiwan. She currently has a consulting agreement with KaiJet Taiwan and communicates with Ms. Tai about once a month. Steven Lyu testified that KaiJet Taiwan and KaiJet U.S. "are two completely independent compan[ies]" that work closely and that KaiJet Taiwan helps and supports KaiJet U.S. as much as it can with its products. KaiJet Taiwan owns the j5Create brand and KaiJet U.S. distributes and sells [products] under that brand.

Sanho's damages expert, Daniel Cenatempo, testified that he measured Sanho's damages on all its intellectual property claims in the form of the KaiJet defendants' profits on the accused products. (Appx4650-Appx4651). But he never testified that those profits were attributable to copying and using Sanho's copyrighted design for its HyperDrive packaging. That was because he understood that "Sanho

and I were responsible for proving the sales of the infringing products and that it was the KaiJet defendants' responsibility to prove any costs or deductible expenses or other deductions." (Appx4651). He used KaiJet Taiwan's and another vendor, StarView's, sales data to verify KaiJet U.S.'s sales, understanding that KaiJet U.S. and its suppliers are "separate companies." (Appx4724). KaiJet U.S.'s incremental profits on sales of the Ultradrive products were $1,654,949. He testified that KaiJet U.S.'s profits from copyright infringement were $910,141 and KaiJet Taiwan's profits were $657,323. (Appx4721). The district court denied the KaiJet Defendants' Rule 50(a) motion as to copyright infringement.

The district court instructed the jury that if they found copyright infringement, "Sanho is entitled to the KaiJet Defendants' profits that are attributable to the infringement you found." (Appx6290). It explained "[f]or purposes of copyright damages only, Sanho must also show a causal relationship between the infringement of its copyright and the KaiJet Defendants' profits." "Sanho's burden to show a causal connection is low, but the existence of a causal connection cannot be speculative. If you find that Sanho has failed to prove a causal

connection between the infringement of its copyright and KaiJet Defendants' profits, you must not award any profits."

The jury found that KaiJet U.S., KaiJet Taiwan, and StarView infringed Sanho's copyright. (Appx6318). For disgorgement damages, it awarded Sanho KaiJet U.S.'s profits of $598,008 and KaiJet Taiwan's profits of $471,599 on their sales of the Ultradrive hubs. (Appx6318)

### F. **The district court denies KaiJet Taiwan's post-trial motions on Sanho's copyright infringement claim**.

After the verdict, KaiJet U.S. and KaiJet Taiwan renewed their motion for judgment as a matter of law on patent and copyright infringement and KaiJet Taiwan moved to dismiss the copyright infringement claim against it for lack of subject matter jurisdiction. (Appx9680). On the Rule 50(b) motion for JMOL on copyright infringement, the district court ruled that the jury had a "a legally sufficient basis" to find in Sanho's favor…" (Appx108). In denying KaiJet Taiwan's post-trial motion to dismiss, it stated that "if territoriality is not jurisdictional, then KaiJet Taiwan has waived it by failing to raise it in its pre-verdict motion for judgment as a matter of law under Rule 50(a)." (Appx110). Then the district court reversed its

previous interpretation of the Copyright Act and ruled that "what conduct the Copyright Act prohibits is a merits question rather than one of subject matter jurisdiction." (Appx112). But because it decided that KaiJet Taiwan had waived the right to challenge the sufficiency of the evidence to show conduct within the United States, the district court again concluded that it had subject matter jurisdiction over Sanho's copyright claim and therefore denied the motion. (Appx114).

## SUMMARY OF THE ARGUMENT

The Copyright Act does not reach "acts of infringement that take place entirely abroad." *Subafilms Ltd. v. MGM-Pathe Commn'ns Co.*, 24 F.3d 1088, 1098 (9th Cir. 1994 (en banc); *Litecubes LLC v. N. Light Prods, Inc.*, 523 F.3d 1353, 1336 (Fed. Cir. 2008). KaiJet Taiwan moved for summary judgment on the merits of Sanho's infringement claims because while it sells Ultradrive hubs in Taiwan to KaiJet U.S., it does nothing infringing within the United States. Drawing all reasonable inferences in favor of Sanho, the district court denied that motion because it found that Sanho's evidence showed that KaiJet Taiwan sold and shipped the accused Ultradrive hubs to the United States. (Appx86). That was error because most of Sanho's evidence was

irrelevant and the rest did not support the unreasonable inferences Sanho persuaded the district court to draw in its favor. But the district court erred in a more consequential way. It assumed that extraterritoriality was a defense based on its lack of subject matter jurisdiction, and ruled in favor of Sanho, the non-moving party, that KaiJet Taiwan could not assert that "defense" against Sanho's copyright claims. (Appx93).

That mistake of law caused a cascade of errors, ultimately leading the district court to enter judgment against both KaiJet Defendants for infringement although neither the district court nor the jury had ever found that Sanho proved by a preponderance of the evidence that KaiJet Taiwan performed infringing acts within the United States. First, at the pretrial stage, it granted Sanho's motion to exclude KaiJet from arguing or presenting evidence to the jury that it took all its actions with respect to the Ultradrive hubs outside the United States.

Because the district court had ruled that extraterritoriality is a jurisdictional defense, not a merits issue, KaiJet Taiwan did not raise it in its Rule 50(a) motion for JMOL, which was summarily denied. (Appx5192). After the verdict, both KaiJet defendants renewed their

motion for JMOL on copyright infringement, focusing on the lack of evidence of substantial similarity. In the same brief, KaiJet Taiwan, consistent with the district court's opinion and order denying summary judgment, moved to dismiss the copyright claim for lack of subject matter jurisdiction, again challenging the sufficiency of Sanho's evidence that it acted within the United States to infringe Sanho's copyright. (Appx9680). Denying that motion, the district court reversed its summary judgment determination that extraterritoriality was a subject matter jurisdiction defense and recognized that it is a merits issue. But despite acknowledging this error of law in its earlier opinion and order denying summary judgment, it erred again, agreeing with Sanho that because territoriality is a merits issue, KaiJet Taiwan had waived it when it did not argue it in its initial Rule 50(a) motion.

The district court's third error was that it did not acknowledge that its mistake of law at the summary judgment stage had led it to take the territoriality issue away from the jury, denying KaiJet Taiwan its right to jury findings on merits issues on which Sanho had the burden of proof. Its fourth error was finding that KaiJet Taiwan had waived its extraterritoriality argument by asking for dismissal rather

than for JMOL, which deprived KaiJet Taiwan of an opportunity to be heard on its argument—first raised in its summary judgment motion—that Sanho failed to prove an element of its copyright claim. As a result, the district court never analyzed whether Sanho proved that element and never made findings of fact. Without either the jury or the district court finding that Sanho met its burden to prove all the requirements for copyright infringement, including infringing acts within the United States, the district court made one final error: entering judgment for Sanho on its copyright claim. This Court should vacate that judgment, including the resulting award of disgorgement of profits damages.

The damages award suffers from additional defects. Disgorgement of profits is an equitable remedy that must ultimately be awarded by the district court. There is no right to fact-finding by a jury on what portion of indirect profits is attributable to infringement. The district court should have treated the jury's award as advisory and issued its own findings of fact and conclusions of law as to what profits were attributable to copying Sanho's package.

Sanho's copyright claim was for infringement of the design for its Hyperdrive hub's packaging. Sanho had the initial burden to show that

the profits it claimed were attributable to copying its package. But its damages expert did not testify to the nexus required to show causation. That was not an oversight. He testified that he thought he only needed to show their profits on sales and the burden was on the defendants to show other bases for some or all of those profits. That understanding was incorrect. The plaintiff bears the initial burden to show some nexus between the infringement and profits on indirect sales like those of the hubs inside the infringing package. He also admitted that consumers usually throw away the box after they unbox a purchased device.

Finally, the district court never had personal jurisdiction over KaiJet Taiwan. The district court erred by rejecting KaiJet Taiwan's insufficient service argument despite its evidence that the people served were not its managers or agents. It erred again by finding the KaiJet Taiwan had minimum contacts with *Georgia* based on KaiJet's business relationship with one Georgia *resident,* KaiJet U.S. The district court again drew unreasonable inferences from Sanho's meager evidence and conclusory allegations. And although the district court reached that decision without holding an evidentiary hearing, and by drawing all inferences in Sanho's favor, and although KaiJet Taiwan preserved this

challenge in its Rule 12(b)(2) motion and again in its answer to the TAC, the jury was never asked to decide the facts relevant to personal jurisdiction. And the district court never weighed the evidence after the trial, placing the burden of proof on Sanho. For all these reasons, the judgment below with respect to Sanho's copyright claims should be vacated.

## STANDARD OF REVIEW

Personal jurisdiction is a question of law that the Court reviews de novo." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009). It reviews district court findings regarding underlying disputed facts for clear error. *Dainippon Screen Mfg. Co. v. CFMT Inc.*, 142 F.3d 1266, 1269 (Fed. Cir. 1998). The Court reviews a denial of summary judgment for abuse of discretion. *Little Six, Inc. v. United States*, 280 F.3d 1371, 1373 (Fed. Cir. 2002). In reviewing it, the Court makes an independent determination of whether the standards of Rule 56(c) were met. *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1387 (Fed. Cir. 1992). When reviewing the denial of a motion for JMOL after a jury verdict, the Court applies "the same standard of review as that applied by the trial court."" *Wechsler v. Macke Int'l*

*Trade, Inc.*, 486 F.3d 1286, 1290 (Fed. Cir. 2007). Trial courts in the Eleventh Circuit should "consider all the evidence, and the inferences drawn therefrom, in the light most favorable to the nonmoving party." *Advanced BodyCare Solutions, LLC v. Thione Int'l, Inc.*, 615 F.3d 1352, 1360 (11th Circuit 2010). They "then determine whether, in this light, there was any "legally sufficient basis for a reasonable jury to find in favor" of the nonmoving party." *Id.*

## ARGUMENT

### I. The district court abused its discretion by treating KaiJet Taiwan's summary judgment motion as based on lack of subject matter jurisdiction because of its mistake of law.

#### A. The motion was for judgment on the merits.

KaiJet Taiwan moved on Sanho's intellectual property claims arguing that Sanho's evidence failed to show that KaiJet Taiwan committed any allegedly infringing acts in the United States. (Appx1678-Appx1679). It requested summary judgment on Counts II-IV, not to dismiss them. (Appx1643). It explained that courts apply a presumption against extraterritoriality in statutes. citing *Abitron Austria GmbH v. Hetronic Intl., Inc.*, 600 U.S. 412, 428 (2023). *Abitron* concerns statutes'

geographical scope, not subject matter jurisdiction. (600 U.S. at 416). KaiJet Taiwan recited the standard for a grant of summary judgment on the *merits* of claims. (Appx1663). It never used the phrase "subject matter jurisdiction." It stated the premise that plaintiff cannot use federal copyright law "to obtain relief for acts of infringement occurring outside the United States" quoting *Palmer v. Braun*, 376 F.3d 1254, 1258 (11th Cir. 2004). But despite *Palmer*'s passing reference to federal jurisdiction, KaiJet Taiwan's argument focused on U.S. conduct as a *merits* issue, citing *Well-Toy Mfg. Corp. v. Lotus Onda Indus. Co.,* No. 00-Civ. 9605, 2002 U.S. Dist. LEXIS 789, at *1, 2002 WL 72930126 (S.D.N.Y. Jan. 16, 2002). (Appx1678). In *Well-Made Toy*, a district court granted an overseas defendant's motion for summary judgment *on the merits*. (2002 U.S. Dist. LEXIS at * 10 ("Plaintiff has not provided "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.")) That court's sole reference to subject matter jurisdiction was "Plaintiff … invokes the jurisdiction of our court pursuant to 28 U.S.C. 1338(a)." 2002 U.S. Dist. LEXIS 789 at 1. Had KaiJet Taiwan asked the district court to find it lacked subject matter jurisdiction, it would have moved *to dismiss*; if the district court lacked

jurisdiction it could not enter *any* judgment on Sanho's claims. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001).

The district court, however, denied the motion because it found it had subject matter jurisdiction, stating that "where a person imports an infringing work into the United States, the federal courts have jurisdiction over the action for infringement," citing *Palmer*, 376 F.3d at 1258. (Appx93). Because the district court misconstrued KaiJet Taiwan's motion and applied the wrong law, it failed to rule on KaiJet Taiwan's actual motion for summary judgment.

### B. The district court erred as a matter of law by concluding that territorial conduct is a requirement for subject matter jurisdiction.

Not only did the district court decide an issue not raised in KaiJet Taiwan's motion, but it reached the wrong legal conclusion. Not only did it assume that extraterritoriality was a jurisdictional issue, but it repeatedly called it a "defense." (Appx89-Appx93). That was error. In *Palmer*, the Eleventh Circuit held that the district court had subject matter jurisdiction over an overseas seller because it concluded that *importing* an infringing work violated the copyright owner's exclusive right under 17 U.S.C. § 106 to distribute copies of his work. 376 F.3d at

1258. It relied for that premise on *GB Mktg. USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*, 782 F. Supp. 763, 772-73 (W.D.N.Y. 1991). But after *Palmer*, the Supreme Court explained that "[s]ubject matter jurisdiction in federal-question cases is sometimes erroneously conflated with a plaintiff's need and ability to prove the defendant bound by the federal law asserted as the predicate for relief—a merits-based determination." *Arbaugh v. Y & H. Corp,* 546 U.S. 500, 511 (2006). Two years after *Arbaugh*, this Court recognized that the *Palmer* court erred because it simply assumed that extraterritoriality was a jurisdictional issue. *Litecubes, LLC v. Northern Light Prods., Inc.*, 523 F.3d 1353, 1368 (Fed. Cir. 2008). "Accordingly, we hold that the issue is properly treated as an element of the claim which must be proven before relief can be granted, not a question of subject matter jurisdiction." *Id.*

**C. The district court erred in finding that Sanho's evidence supported reasonable inferences that KaiJet Taiwan shipped, imported, marketed, and sold Ultradrive products in the United States.**

Sanho's evidence did not support the district court's findings. Section 106 of the Copyright Act grants a copyright owner the exclusive rights, including the right to "distribute copies of the copyrighted work

to the public "by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106. The Copyright Act does not define "distribution" so that term should be given its plain and ordinary meaning. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1303 (11th Cir. 2012). The Act separately provides that "[i]mportation into the United States" of copies of a work acquired outside the United States, without the copyright owner's authorization, infringes copyright. 17 U.S.C. § 602. Sanho's TAC alleged only direct infringement, not contributory infringement. (Appx245-Appx247). Therefore, to prove copyright infringement at trial, Sanho was required to show that KaiJet Taiwan transferred ownership or possession of infringing works within the United States or imported copies into the United States.

KaiJet Taiwan bore the initial burden to prove the absence of a material fact that Sanho needed to prove to succeed on its intellectual property claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (moving party bears initial burden). In its moving papers, KaiJet Taiwan provided sworn declarations of witnesses with personal knowledge, attesting to the following facts. KaiJet Taiwan does not make, use, offer to sell, or sell products in the United States. (Appx288-Appx290). KaiJet

U.S. purchases products from KaiJet Taiwan in Taiwan. (Appx279-Appx280). KaiJet U.S. takes title to the products in Taiwan, ships them and imports them into the United States. (Appx279-Appx281). KaiJet Taiwan is not involved with products after they are delivered in Taiwan. KaiJet Taiwan's evidence shifted the burden to Sanho to establish an issue of material fact. *See Celotex*, 477 U.S. at 324 (nonmovant is required "to go beyond the pleadings" and to present competent evidence designating "specific facts showing that there is a genuine issue for trial."). The district court concluded that Sanho's evidence, rather than creating a material issue of fact, *established* subject matter jurisdiction. "[T]he Court finds that KaiJet Taiwan's activity in the United States subjects it to U.S. intellectual property law." (Appx86). With respect to copyright specifically, the district court denied KaiJet Taiwan's motion because it found that "[w]here Sanho has presented evidence that KaiJet Taiwan "marketed its products in, packaged its products for, and shipped its products to the United States, a jury question exists as to KaiJet Taiwan's copyright Act liability." (Appx94). But even drawing reasonable inference in Sanho's favor, those findings were not supported by the evidence.

**D. Sanho's evidence did not support a reasonable inference that KaiJet Taiwan distributed Ultradrive hubs within the United States.**

1. **KaiJet Taiwan did not distribute Ultradrive hubs in the United States by telling KaiJet U.S. what products will soon be available.**

First, the district court noted that KaiJet Taiwan tells KaiJet U.S. what products will soon be available and KaiJet U.S. selects which will be marketed and sold in the United States. (Appx87). But telling a customer what products will be available is not an act that can infringe a copyright. And Sanho offered no evidence that KaiJet Taiwan's communications about availability were made anywhere but in Taiwan.

2. **Where a container that ultimately reaches the United States is "stuffed" is irrelevant.**

Second, the district court found that KaiJet Taiwan's address *in Taiwan* is the "container stuffing location" for shipments to KaiJet U.S. of accused products. (Appx87). But it cited no authority suggesting that stuffing a container can infringe copyright. The container stuffing location is consistent with testimony that KaiJet U.S., not KaiJet Taiwan, ships the products from Taiwan to the United States.

**3. The air waybills are unauthenticated by their third-party author and contain inadmissible hearsay.**

Third, the district court stated that KaiJet Taiwan admitted that waybills designate KaiJet Taiwan as the shipper of goods shipped to KaiJet U.S. (Appx87). But a third-party logistics company prepared the waybills. The facts they contain are inadmissible hearsay if offered for the truth of those facts. *See G. Simon's & Co., S.A. v. New Bar of N. Am.*, No. 98 Civ. 5162 (GBD), 2005 U.S. Dist. LEXIS 9043, at *12 n.2 (S.D.N.Y. May 12, 2005) (Aeroflot waybill submitted to prove ownership of goods shipped was inadmissible hearsay that need not be considered on a summary judgment motion). Therefore, the waybills could not create an issue of material fact precluding summary judgment or support subject matter jurisdiction.

**4. That KaiJet U.S. paid KaiJet Taiwan directly does not support a reasonable inference that KaiJet Taiwan sold Ultradrive hubs within the United States.**

Fourth, KaiJet Taiwan admitted that KaiJet U.S. paid it directly for the delivery of the products. (Appx87). Again, this is consistent with testimony that KaiJet U.S. purchases products and takes title to them in Taiwan. It does not support a reasonable inference that KaiJet Taiwan sold Ultradrive hubs in the United States or shipped them to

the United States. *See Well-Made Toy*, 2002 U.S. Dist. LEXIS 789 at *4 (foreign seller not liable for copyright infringement where U.S. buyer arranged for shipment of goods to the United States).

**5. KaiJet Taiwan's statement of use is not evidence that it sold j5Create-brand products in the United States.**

Fifth, the district court concluded that KaiJet Taiwan knew its Ultradrive products were sold in the United States because it applied to the USPTO to register the j5Create trademark. (Appx87). As part of its application, KaiJet Taiwan declared under penalty of perjury that the j5Create mark was in use in commerce in the United States in connection with the accused products. (Appx87). But KaiJet Taiwan swore that its *trademark* was in use in U.S. commerce, not that KaiJet Taiwan *itself* had used its trademark in the United States. KaiJet Taiwan properly relied on KaiJet Taiwan's authorized and licensed use of the j5Create mark in the United States to satisfy the "use in commerce" requirement for trademark protection. 15 U.S.C. § 1055; *Visa, USA, Inc. v. Birmingham Tr. Nat'l Bank*, 696 F.2d 1371, 1377 n. 4 (Fed. Cir. 1982); *Pinnacle Pizza v. Little Caeser Enters*, 598 F.3d 970, 980 (8th Cir. 2010); *Quality Candy Shoppes/Buddy Squirrel of Wis., Inc. v. Grande Foods*, 90 U.S.P.Q.2d 1389 (T.T.A.B. 2007); J. Thomas

McCarthy, McCarthy on Trademarks and Unfair Competition § 18:52 (5th ed. 2023). KaiJet Taiwan made this point in its reply brief. (Appx1800-Appx1801). Thus, KaiJet Taiwan's statement of use does not support a reasonable inference that KaiJet Taiwan distributed j5Create branded hubs in the United States.

#### 6. Coordinating with KaiJet U.S. to import j5Create branded products is not evidence that KaiJet Taiwan distributed Ultradrive hubs in the United States.

Sixth, the district court cited evidence that KaiJet Taiwan "coordinated with KaiJet U.S. to import its goods into the United States." (Appx87). Specifically, it applied to the FCC "in pursuit of the certificates of conformity needed to import j5Create products into the United States," designating Jessica Liu as its contact person. KaiJet Taiwan admitted that its former invoicing agent coordinated with a KaiJet U.S.'s shipper to "facilitate the shipment of j5Create products to the United States." While FCC certificates of conformity are necessary to import devices like the Ultradrive hubs into the United States, applications to the FCC only show KaiJet Taiwan's knowledge that KaiJet U.S. would need FCC certificates to import the Ultradrive hubs into the United States. Filing applications to obtain certificates a

*customer* needs to import goods has never been found to constitute distribution under the Copyright Act. Neither Sanho nor the district court cited any authority that "coordinating" from overseas with a customer who will import the accused products into the United States can infringe a copyright. International trade requires coordination between a seller and a buyer to facilitate shipping. That does not make every overseas company that sells to a U.S. company for importation liable for copyright infringement under U.S. law.

### 7. KaiJet Taiwan emailing a product roadmap to KaiJet U.S. is not distribution or any other act that can infringe a copyright.

Seventh, the district court found evidence that KaiJet Taiwan "coordinates with KaiJet U.S. to market j5Create products in the United States." (Appx88). In October 2017, KaiJet Taiwan emailed a "product roadmap" including product launch date, sample date, quantity of pilot run, quantity of sample, and packaging to KaiJet U.S. personnel. But sending such a message to a customer would not even infringe copyright if the message were sent within the United States. *See Well Made Toy*, 2002 U.S. Dist. LEXIS 789, at *4 (foreign defendant that sent fabric samples directly to U.S. defendant did not infringe

copyright). Even if a roadmap were deemed an offer, unconsummated offers to sell an infringing product do not directly infringe copyright. *Grecco v. Age Fotostock Am. Inc.*, No. 21-CV-423 (JSR), 2021 U.S. Dist. LEXIS192021 at *13 (S.D.N.Y. October 4, 2021). The October 2017 email is not evidence that KaiJet Taiwan did anything in the United States that could infringe Sanho's copyright or support jurisdiction.

**8. Owning the j5Create.com website is not evidence that KaiJet Taiwan does anything within the United States to infringe Sanho's copyright.**

Eighth, the district court found that KaiJet Taiwan coordinates with KaiJet U.S. to market j5Create brand products because it owns the website "www.j5Create.com" which "boasts" of offices around the world, including one in Georgia. (Appx88). Visitors to that website can navigate to a different website where j5Create products are sold. Again, this evidence is consistent with witnesses' testimony that KaiJet U.S. buys the products in Taiwan and sells them in the United States. It does not support a reasonable inference that KaiJet Taiwan itself distributes Ultradrive hubs within the United States.

### 9. None of the above evidence creates a material issue of fact as to whether KaiJet Taiwan imported products into the United States.

The district court concluded that federal courts have jurisdiction over a party that "imports an infringing work into the United States." (Appx93). But here, the sworn witness testimony was consistent: KaiJet Taiwan does not its import its Ultradrive hubs into the United States. The word "import" generally refers to getting goods that have arrived at a U.S. port through U.S. customs. *See, e.g., Int'l. Custom Prods. v. United States*, 758 F.3d 1182, 1187 (Fed. Cir. 2014) (importers have the right to be informed about customs rules and regulations and to expect that customs will not change them without providing proper notice and an opportunity for comment); *Erwin Hyper Grp. N. Am. v. United States*, 930 F.3d 1370, 1375 (Fed. Cir. 2019) ("when an importer enters merchandise into the United States, the importer must deposit estimated duties with Customs.") Asked if KaiJet U.S. pays any tariffs on product that it purchases from KaiJet Taiwan, KaiJet U.S.'s 30(b)(6) witness, Chuck Akins, testified: "I believe we have tariffs at the border and things like that, that comes when shipments get cleared, yes."

(Appx1711). Paying tariffs at the border when shipments are cleared is compelling evidence that KaiJet U.S. is the importer.

But the district court apparently found that Sanho's evidence "that KaiJet Taiwan marketed its products in, packaged its products for, and shipped its products to the United States" supported a further inference that KaiJet Taiwan *imported* Ultradrive hubs into the United States. As demonstrated above, the evidence does not even support those three findings. But even if it did, it would not support a reasonable inference that *KaiJet Taiwan* brought any shipment of Ultradrive hubs through U.S. customs. The district court relied on *GB Marketing* to conclude that a foreign company is subject to U.S. copyright law for "for marketing its products in the United States, the bottles were packaged for shipment to the United States, and the bottler sold them to a company which imported them to the United States." (Appx93). But *GB Marketing* never reached the *merits* of the plaintiff's copyright infringement claim. Rather, to decide whether it had *subject matter jurisdiction*, the court concluded that because "Gerolsteiner is alleged to have contributed to, or authorized, a direct infringement which occurred in the United States, Gerolsteiner's

alleged actions give rise to subject matter jurisdiction." 782 F. Supp. at 773. Here, Sanho's claim was for *direct* copyright infringement, not contributing to infringement. So *G.B. Marketing* is irrelevant as well as not binding on this Court.

On inspection, none of Sanho's evidence that KaiJet Taiwan "sold and shipped" allegedly infringing products to the United States is evidence from which a reasonable jury, properly instructed, could find copyright infringement. Nor does it support subject matter jurisdiction. For all these reasons, the district court erred in denying KaiJet Taiwan's motion for summary judgment and ruling that Sanho's evidence established subject matter jurisdiction.

## II. The district court erred in denying KaiJet Taiwan's post-trial motion and entering judgment against KaiJet Taiwan on copyright infringement.

### A. KaiJet did not waive the argument that Sanho's evidence did not prove infringing conduct within the United States by not raising it in its Rule 50(a) motion for JMOL.

After the verdict, KaiJet Taiwan asked the district court to find that Sanho had failed to show it did any potentially infringing acts within the United States. Applying the district court's own previous

holding that this was a jurisdictional issue, KaiJet Taiwan framed that argument in a motion to dismiss for lack of subject matter jurisdiction. To do otherwise, it would have had to ask the district court to reverse its determination that territoriality is a jurisdictional issue as well as to argue the insufficiency of Sanho's evidence. But KaiJet Taiwan did move, in the same papers, for JMOL on the sufficiency of Sanho's evidence to prove copyright infringement, focusing on substantial similarity. (Appx107-Appx108). The district court erred in concluding that KaiJet Taiwan waived the argument that Sanho's evidence was insufficient to prove infringing conduct within the United States by not raising it in its Rule 50(a) motion for JMOL.

KaiJet Taiwan had a good reason not to raise sufficiency of Sanho's evidence of infringing acts within the United States in a Rule 50(a) motion. Motions for JMOL are appropriate for issues tried to a jury. *Falanga v. State Bar*, 150 F.3d 1333, 1338 (11th Cir. 1998) n. 12. Here, the district court took the territoriality issue away from the jury, leaving itself as the factfinder on that issue. *From that ruling*, KaiJet Taiwan reasonably framed its post-trial motion as a jurisdictional challenge. When the district court reversed itself after the verdict to

conclude that territoriality is a merits issue, it should have avoided finding that KaiJet Taiwan waived its argument by construing KaiJet Taiwan's post-trial motion to dismiss as one for "judgment on partial findings" under Rule 52(c). *See Pinero v. 4800 W. Flagler, LLC*, 430 Fed. Appx. 866, n.1 (11th Cir. 2011). Or it could have construed the merits argument as though it were part of KaiJet's contemporaneous motion for JMOL on the sufficiency of Sanho's evidence to prove copyright infringement in the same post-trial brief.

This Court faced a similar procedural anomaly in *Litecubes*. The defendant/appellant had moved to dismiss and for JMOL in the district court, each motion arguing that the plaintiff had failed to establish that any of the allegedly infringing acts took place within United States borders. 523 F.3d at1368. But it had not appealed the denial of its JMOL, so ordinarily the Court would have considered the JMOL issue waived. *Id.* Because the circumstances were unusual, and "the parties have fully briefed the issue, albeit under the incorrect rubric of subject matter jurisdiction," the Court exercised its discretion to consider whether the district court erred by finding the plaintiff's evidence sufficient to establish infringing acts within the United States. *Id.*

The district court should have followed this Court's example in *Litecubes* and treated KaiJet Taiwan's post-trial motion as a motion for JMOL or a Rule 52(c) motion for judgment on partial findings so as to avoid waiver and decide the merits issue on the evidence. Here too, the parties fully briefed the issue, albeit under the incorrect rubric of subject matter jurisdiction. The district court was aware of *Litecubes* when it decided the post-trial motions: it cited *Litecubes* with other authorities to belatedly recognize that "the issue is not one of jurisdiction." (Appx112).

Not only did the district court have *Litecubes* as an example, but the Eleventh Circuit has long "taken a liberal view of what constitutes a motion for JMOL." *McGinness v. Am. Home Mtg. Serv., Inc.*, 817 F. 3d 1241, 1254 (11th Cir. 2016) (citing *Nat'l. Investing, Inc. v. Sharon Steel Co.*, 781 F2d 1545, 1549 (11th Cir. 1986). Eleventh Circuit courts will not find that a party has waived an issue by not raising it in an initial motion for JMOL if the issue is closely related to those argued in a Rule 50(b) motion. And here, KaiJet Taiwan had preserved the issue for appeal when it moved for summary judgment based on the same copyright infringement merits argument: that Sanho's evidence could

not prove it did any infringing act within United States borders. Rather than construe KaiJet Taiwan's post-trial motion to dismiss as a renewed JMOL, however, the district court denied KaiJet's motion solely because it was briefed under the wrong rubric. And it did so even though it recognized that KaiJet Taiwan briefed it that way following its own earlier holding that extraterritoriality was a jurisdictional issue. (Appx109). KaiJet Taiwan did not waive its argument based on insufficiency of the evidence and the Court should review the district court's denial of KaiJet's post-trial motion to dismiss as if it had been a motion for JMOL or a Rule 52(c) motion.

**B. The district court failed to make findings of facts on whether Sanho had proved that KaiJet Taiwan committed copyright-infringing acts within the United States.**

Rule 52(a)(1) of Civil Procedure provides that in general, in "an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1). Findings of fact are adequate when "they are sufficiently comprehensive and pertinent to the issue to form a basis for the decision." *Medtronic, Inc. v. Daig Corp.*, 789 F.2d 903, 906 (Fed. Cir. 1986) (quoting *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d

861, 873 (Fed. Cir. 1985)). Although Rule 52(a)(1) does not require detailed factual findings on every issue raised, it does require findings on "as many of the subsidiary facts as are necessary to disclose to the appellate court the steps by which the trial court determined factual issues and reached its ultimate conclusions." *Atl. Thermoplastics Co., Inc. v. Faytex Corp.*, 5 F.3d 1477, 1479 (Fed. Cir. 1993). "When the opinion explaining the decision lacks adequate fact-findings, meaningful review is not possible, frustrating the very purpose of appellate review as well as this court's compliance with its statutory mandate." *Gechter v. Davidson*, 116 F.3d 1454, 1457 (Fed. Cir. 1997) (citation omitted). Here, although the jury heard and decided most of the issues, the district court took the territoriality issue away from the jury, believing it to be a jurisdictional issue of law. In so doing, the district court deprived both sides of their right to a jury trial. *See Litecubes*, 523 at 1362 ("if satisfaction of an essential element of a claim for relief is at issue, however, the jury is the proper trier of contested facts.") And by treating KaiJet Taiwan's position as a jurisdictional *defense*, the district court also incorrectly assigned KaiJet Taiwan the burden to prove it. Thus, under Rule 52, having taken the issue from

the jury, the district court should have issued post-trial findings of fact on whether Sanho met its burden at trial to prove by the preponderance of the evidence that KaiJet Taiwan performed infringing acts within the United States. But it never did so.

The district court apparently accepted Sanho's position that it had already determined, based on the same evidence that was admitted at tria, that KaiJet sent emails and communications into Georgia relating to transactions and pricing for the Ultradrive and that KaiJet Taiwan ships and sells the Ultradrive in Georgia. But that determination was a mere drive-by jurisdictional ruling, not a finding applying the correct burden of proof and standard of proof. At the summary judgment stage, again drawing all reasonable inferences in favor of Sanho, the district court concluded that "a jury question exists as to KaiJet Taiwan's liability under the Copyright Act." (Appx94). After the trial, despite holding in its final July 1, 2025 Opinion and Order that whether KaiJet Taiwan's acts took place within the United States is a *merits* issue, the district court never analyzed whether Sanho had presented sufficient evidence that KaiJet Taiwan did any potentially infringing act in the United States. And because it found that KaiJet Taiwan waived that

issue, it never issued findings of fact and conclusions of law on that issue. Without those findings, this Court is left with no relevant analysis or findings of fact on this issue to permit meaningful review. It can only review the evidence de novo or remand for further proceedings.

### C. The district court erred by entering judgment of copyright infringement when neither the jury nor the district court had found that Sanho had proved territorial infringing conduct by a preponderance of the evidence.

The district court ultimately concluded that whether a defendant accused of copyright infringement performed infringing acts within the United States is a merits issue. Sanho had the burden to prove KaiJet performed infringing acts within the United States, an element of the merits of copyright infringement. *See Litecubes*, 523 F.3d at 1362 (a failure to prove the allegations in the complaint requires a decision on the merits). And to support a judgment of copyright infringement, either the jury or the district court should have decided whether Sanho proved it by a preponderance of the evidence. But because of the district court's summary judgment ruling that extraterritoriality was a jurisdictional defense, and its subsequent ruling precluding KaiJet Taiwan from offering evidence or arguing that its allegedly infringing

conduct was all outside the United States, the jury was not asked to decide that issue. The district court did not issue findings on the issue either. Accordingly, the record lacks factual support in the record for the judgment of copyright infringement.

## III. The jury's award should be vacated for Sanho's failure to show any profits attributable to use of its copyright in the design of its package.

### A. The trial court erred in relying on the jury's award because monetary relief in the form of disgorgement of profits is equitable.

17 U.S.C. § 504 (b) allows a copyright owner to seek damages in the form of disgorgement of profits from the infringement. But it does not provide the right to a jury trial on disgorgement damages. The Seventh Amendment right to trial by jury "is the right which existed under the English common law when the Amendment was adopted." *Markman v. Westview Instrs., Inc.*, 517 U.S. 370, 376 (1996); *see also Texas Advanced Optoelec. Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1319 (Fed. Cir. 2018) (a right to a jury verdict on disgorgement of profits depends on whether law courts awarded a defendant's profits for the same kind of wrong in 1791). No disgorgement remedy was available at law for claims for

intellectual property infringement. *Texas Advanced*, 895 F.3d at 1325. Most courts have concluded that there is no right to a jury trial on profits to be disgorged as a remedy for intellectual property infringement. *See, e.g., Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1248 (6th Cir. 1991) (no right to a jury trial in a trademark infringement action when the complaint requested "only equitable relief; an injunction and disgorgement of profits."); *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1065 (9th Cir. 2015) ("[t]he Seventh Amendment does not require that a jury calculate these profits, because juries have not traditionally done so, and a claim for profit disgorgement is equitable in nature."); *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343 (11th Cir. 2019) (disgorgement of a defendant's profits...is equitable in nature and does not carry with it a right to a jury trial."); *Reardon, LLC v. Walt Disney Pictures*, 152 F.4th 1058, 2025 U.S. App. LEXIS 23474, * 33 (9th Cir. 2025) (We agree with the majority of courts and hold that § 504(b) does not provide a statutory jury trial right on the disgorgement of profits remedy). The district court erred by not treating the jury's award as advisory and not issuing findings of fact

and conclusions of law concerning whether Sanho met its burden to prove the KaiJet defendants' profits were attributable to copying Sanho's Hyperdrive packaging.

### B. Sanho did not prove all the defendants' profits on sales of Ultradrive hubs were attributable to infringement of Sanho's copyright.

The purpose of disgorgement of defendant's profits is to provide just compensation, not to impose a penalty on the defendant by giving the copyright owner "profits which are not attributable to the infringement." *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 399 (1940). To secure disgorgement of profits, a plaintiff must "show a causal relationship between the infringement and profits, and must also present proof of the infringer's gross revenue." *Pronman v. Styles*, 645 F. App'x 870, 873 (11th Cir. 2016); *see also Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 711 (9th Cir. 2004). In the *Polar Bear* case, a jury found the defendant liable for continuing to use footage from the plaintiff's copyrighted film to market its watches after its license expired and awarded over two million dollars for defendant's related indirect profits. 384 F.3d at 705. But the court of appeals concluded that "Polar Bear sought

profits beyond the scope that the evidence could support" and vacated the damages award. *Id.* at 716. This Court affirmed another district court's denial of *any* disgorgement damages where a copyright plaintiff had failed to show a causal relationship between the defendant's indirect profits and the infringement. *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 196 F.3d 1366, 1375 (Fed. Cir. 1991) (citing 4 Melvin B. Nimmer and David Nimmer, *Nimmer on Copyright* § 14.03 [A] (1999) (noting that claims for indirect profits rarely succeed).

Here, Sanho's damages expert *intentionally* did not testify about any nexus between KaiJet Taiwan's alleged copying of Sanho's Hyperdrive package design and defendants' net profits on sales of the Ultradrive hubs. "Sanho and I were responsible for proving the sales of the infringing products and [] it was the KaiJet defendants' responsibility to prove any costs or deductible expenses or other deductions." But the jury did hear from other witnesses about other reasons consumers buy the accused hubs. Ms. Tai testified that based on her experience, "of course" consumers purchase a product based on the trademark—the brand—rather than the package

design. (Appx5231). And Sanho's witness, Daniel Chin, testified that consumers use Sanho's Hyperdrive hub to connect all kinds of digital devices to their MacBook laptop and charge them via USB, deriving all their power from the Hyperdrive hub. (Appx4318). His testimony supports a finding that KaiJet U.S.'s consumers buy Ultradrive hubs to connect and charge their devices, not because of the design of its package. In Sanho's rebuttal case, Mr. Cenatempo admitted "that the box is typically thrown away at some point after a purchaser buys the product that's within it." The evidence therefore showed that KaiJet Defendants' profits were overwhelmingly attributable to the Ultradrive trademark, the J5Create brand, and the hubs' functional features. Sanho failed to show the required nexus between copying and the KaiJet Defendants' entire profits.

Contradicting Sanho's expert's misunderstanding of the burden of proof, the district court correctly instructed the jury that "Sanho must also show a causal relationship between the infringement of its copyright and the KaiJet Defendant's profits. Sanho's burden to show a causal connection is low, but the existence of a causal connection cannot be speculative. If you find that Sanho has failed to

prove a causal connection between the infringement of its copyright and the KaiJet Defendants' profits, you must not award any profits." The jury, however, awarded Sanho the amounts Sanho's damages expert had testified were each KaiJet defendant's profits on sales of Ultradrive hubs, based on his calculations. The evidence simply does not support the jury's award and should be vacated.

## IV. The district court erred in denying KaiJet Taiwan's first motion to dismiss because Sanho offered no reliable evidence that Jessica Liu was a manager of KaiJet Taiwan when she was served.

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97-104 (1987); *United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 880 (Fed. Cir. 1997). When a defendant challenges service of process, the plaintiff bears the burden to establish service. *Reeves v. Wilbanks*, 542 Fed. Appx. 742, 749 (11th Cir. 2013); *Fitzpatrick v. Bank of N.Y. Mellon*, 580 Fed. Appx. 690, 694 (11th Cir. 2014). A foreign corporation must be served "by delivering a copy of the summons and complaint to "an officer, a managing or general agent, or any other agent authorized by

appointment or by law to receive service of process…" Fed. R. Civ. P. 4(h)(1)(B). The issue here was whether Jessica Liu was a manager of KaiJet Taiwan when she was served.

Georgia law defines "managing agent" for service purposes as "a person employed by a foreign corporation doing business in this state without authorization to transact business in this state or a nonresident individual, partnership, joint-stock company or association doing business in this state who is at an office or facility in this state and who had managerial or supervisory authority for such foreign corporation." O.C.G.A. Section 9-11-4(e)(2)(b).

Despite sworn testimony based on personal knowledge that Ms. Liu was not a manager or authorized agent of KaiJet Taiwan in 2020, or at any time after she sold KaiJet Taiwan to Ms. Tai in 2014, the district court found that she was, based on two documents: The process server's unsworn hearsay statement that Ms. Liu "confirmed that she is a managing member of KaiJet Technology, based out of Taiwan" and the FCC record in which "Liu is plainly listed as the "Manager" of KaiJet Technology International Corporation." (Appx9). But the process server's "additional information" was not sworn under penalty of

perjury like his testimony in the "Proof of Service" section above his signature. The "additional information" also does not provide any useful information for purposes of determining whether Ms. Liu was authorized to receive service of process on KaiJet Taiwan's behalf. It is undisputed that Ms. Liu lives and works in Taiwan. That she works for "KaiJet Technology" would not make it more likely that she worked for KaiJet Taiwan, given that the full names of *both* companies begin with "KaiJet Technology." The process server's ambiguous abbreviation renders his affidavit insufficient to show service on KaiJet Taiwan. *See Potts v. City of Roswell*, No. 1:24-cv-05116-TWT-RGV, 2025 U.S. Dist. LEXIS 90789, at *26 (N.D. Ga. May 13, 2025) (finding plaintiff failed to provide any evidence or argument that persons who accepted service were authorized to accept service for the defendant), citing *O'Neill v. NYU Med. Ctr.*, No. 1:22-cv-0011-SEG (N.D. Ga. March 14, 2023); *Coney v. Macon-Bibb Cnty.*, No. 5:19-00145, 2019 WL 2719799, at * 1 n.2 (M.D. Ga. June 28, 2018). And declarations under penalty of perjury by Jessica Liu and Steven Lyu expressly contradicted the process server's unsworn statements that they confirmed that they were managing members of KaiJet Taiwan.

As for the 2018 FCC filing, Ms. Liu explained that KaiJet Taiwan identified only "manager" as its contact person in its previous FCC filing, and when it refiled the form after the name change, it added her name but left the "manager" title inadvertently. The district court never took judicial notice of KaiJet Taiwan's 2018 filing information on the FCC's website when it discussed Sanho's evidence from the FCC website. It merely observed that it was "conflicting evidence" regarding Ms. Liu's role at KaiJet Taiwan, recited that it must "construe all reasonable inferences in Sanho's favor," and found that Sanho had presented sufficient evidence that it properly served KaiJet Taiwan. (Appx11). But the FCC filing does not even support a reasonable inference that Ms. Liu was a manager of KaiJet Taiwan in March 2018. And even if she had been, that could have changed between March 2018 and January 7, 2020, when she was served.

Further, under Georgia law, Ms. Liu could not be a "managing agent" of KaiJet Taiwan, a foreign company, for purposes of service. *See* O.C.G.A. Section 9-11-4(e)(2)(b) ("manager" must be "at an office or facility in this state." Based on her uncontradicted sworn declaration, Ms. Liu was not "located at an office or facility in Georgia." That Sanho

had her served in Nevada, not Georgia, is consistent with her testimony. Without any *evidence* that Ms. Liu ever worked at a Georgia office, it was error to find that service on her to serve KaiJet Taiwan satisfied Georgia's long-arm statute.

The district court also erred by declining to consider facts in KaiJet Taiwan's supplemental declarations as "arguments made for the first time in a reply brief." "That proposition does not, however, prevent a reply brief from addressing arguments first raised in the opposing brief. That's what a good reply brief should do." *Thigpen v. Nissan Motor Co.*, 2023 U.S. Dist. LEXIS 58560, 2023 WL 2760056, at *4 (N.D. Ga. Mar. 31, 2023). "[E]vidence can be offered to rebut a point raised in an opposition brief.'" *Parker v. Alcon Mgmt. S.A.*, No. 21-14068, 2022 U.S. App. LEXIS 24523 at *7, 2022 WL 3905872, at *3 (11th Cir. Aug. 31, 2022). This Court reached a similar conclusion in *Ericsson Inc. v. Intellectual Ventures, LLC*, 901 F.3d 1374, 1380 (Fed. Cir. 2018) (Board erred in rejecting arguments in a reply that expressly followed from contentions raised in the Petition). Here, KaiJet Taiwan argued in its *opening* brief that Ms. Liu and Mr. Lyu were not its officers, owners, or employees. Sanho then relied, in its opposition, on the 2018 FCC

document and the process server's statements that Ms. Liu and Mr. Lyu had confirmed that they were managers of KaiJet Taiwan. KaiJet Taiwan's reply papers offered the supplemental declarations as evidence, to rebut that raised in Sanho's opposition brief. Thus the district court should have considered those declarations—of witnesses who could testify about their own employment, titles, and duties from personal knowledge—to contradict the process server's unsworn statements and the registration Sanho found on the FCC's website. The Court should find that Sanho failed to serve KaiJet Taiwan by serving KaiJet U.S.'s officers and that the district court never properly exercised jurisdiction over KaiJet Taiwan.

## V. The district court erred in denying KaiJet Taiwan's first motion to dismiss and exercising personal jurisdiction over KaiJet Taiwan based on its contacts with KaiJet U.S.

The plaintiff has the burden to establish a prima facie case of personal jurisdiction. *Madera v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). A prima facie case requires evidence that could survive a motion for a directed verdict. *Id*. A complaint does not suffice 'if it tenders naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S.662, 679 (2009). The "tenet that a court must accept as

true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 664. "When a defendant submits an affidavit contesting the basis for personal jurisdiction, the burden shifts back to the plaintiff to produce evidence to support personal jurisdiction." *Don't Look Media LLC v. Fly Victor Ltd.*, 999 F.3d 1284, 1292 (11th Cir. 2021). The plaintiff must "substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof." *Polski Line Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 972 (11th Cir. 1986). Where the plaintiff's complaint and defendants' affidavits conflict, the district court must construe all reasonable inferences in the plaintiff's favor. *Madera*, 916 F.2d at 1514. "Minimum contacts" analysis looks to the defendant's contacts with the forum state itself, not its contacts with its residents. *Id.* Each defendant's contacts must be evaluated separately. *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014).

District courts considering a motion to dismiss to "may begin by identifying pleadings that because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. 662, 664; *see also Innotex Precision Ltd. v. Horei Images Prods.*, 679 F. Supp.2d 1356, 1360 (N.D. Ga. 2009) (disregarding alter ego allegations as

"threadbare allegations of factors cited by Georgia courts in deciding whether to pierce the corporate veil"). Whether a particular allegation is well-pled and factual can be a crucial issue subject to de novo review. *AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 39-40 (Fed. Cir. 2024). And the Eleventh Circuit disfavors "shotgun pleadings" that fail "to give the defendants adequate notice of the claims against them." *Weiland v. Palm Beach County Sheriff's Off.*, 792 F.3d 1313, 1323, (11th Cir. 2015). One kind of shotgun pleading asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* Here, however, the district court made no effort to identify the numerous conclusory or shotgun allegations in the TAC. And the TAC is replete with badly pled, conclusory, boilerplate and shotgun allegations lumping the KaiJet entities together. The first paragraph states that "KaiJet" or "Defendants" refers to both KaiJet entities and Does 1-10). Another alleges that the "defendants reside within this judicial district and the acts of infringement complained of herein occurred in Georgia and in this judicial district." Another alleges that "KaiJet Taiwan operates through a physical office in Georgia, in

which state its officers and directors also operate on the ground in Georgia." But still another alleges "KaiJet U.S. and KaiJet Taiwan conduct activities in the United States and in Georgia through its (sic) subsidiaries and affiliates." Paragraphs 11-18 contain alter ego allegations, similar to those other courts found were "threadbare allegations" of factors relevant to piercing a corporate veil. Paragraph nineteen alleges that "KaiJet Taiwan performed several overt acts … within the State of Georgia, including delivery of the accused products, and aiding and abetting the same . . . ." The district court flagged this paragraph for alleging "transacting business," but the allegation does not include specific facts about how KaiJet Taiwan allegedly did within Georgia to deliver the accused products, or any meaningful detail. The district court should have identified these paragraphs as not sufficiently well-pled to warrant acceptance as true to decide a motion to dismiss. This Court should do so now.

"When a defendant submits an affidavit contesting the basis for personal jurisdiction, the burden shifts back to the plaintiff to produce evidence to support personal jurisdiction." *Don't Look Media*, 999 F.3d at 1292. Here, KaiJet' Taiwan's affidavits contradicted Sanho's

allegations. They therefore shifted the burden back to Sanho to produce competent evidence to support its jurisdictional allegations in the TAC. *See Diamond Crystal Brands, Inc. v. Food Movers Int'l.*, 593 F.3d 1249, 1257 (11th Cir. 2010). But Sanho offered no competent evidence. The district court acknowledged Jessica Liu's and Yu-Chi Tai's affidavits, which contradicted Sanho's allegations and evidence. But the district court never expressly recognized that these affidavits shifted the burden back to Sanho to present competent evidence of jurisdiction.

The district court found personal jurisdiction for two reasons. First, KaiJet Taiwan did not rebut Sanho's evidence that KaiJet sent emails and other intangible communications into Georgia regarding price negotiations and the UltraDrive Products. It concluded that the undisputed communications were sufficient to show that KaiJet Taiwan met the "transacts any business" prong of Georgia's long-arm statute. Second, the district court cited a document created by third-party DLS logistics dated December 16, 2017, showing KaiJet Taiwan as the "shipper" of cartons of goods sold to KaiJet U.S. in Kennesaw, Georgia, including the Accused Products, loaded at Taipei's international airport for delivery to Atlanta, Georgia.

But the district court did not explain how those documents supported any of Sanho's conclusory jurisdictional allegations in the TAC. They do not. They suggest a *new* theory for jurisdiction. To support its new theory, Sanho presented an air waybill for a shipment from China to Atlanta showing KaiJet Taiwan as the shipper and evidence that KaiJet U.S. sent payment from Georgia. From this evidence, it argued that KaiJet Taiwan transacted business and committed patent infringement, from which the action arose, in Georgia. And it made a stream-of-commerce argument that because of KaiJet Taiwan's ongoing relationship with KaiJet U.S., "KaiJet Taiwan knew or could have reasonably foreseen that the Accused Device would eventually be sold by a retailer in Georgia."

As discussed above, statements in third-party documents offered to show the truth of the statements are inadmissible hearsay. Based on the DSL document and another document "showing KaiJet U.S. initiated electronic payments from Georgia to KaiJet Taiwan for the same of the ULTRADRIVE," the district court resolved the parties' conflicting evidence as to whether KaiJet Taiwan ships and sells the accused products "in Georgia" in Sanho's favor. (Appx19).

The district court erred by concluding that Sanho's action "arose from" KaiJet Taiwan's communications sent to KaiJet U.S. in Georgia. The district court found that the first two prongs of this Court's test for specific personal jurisdiction were met by KaiJet Taiwan having sent communications about Ultradrive to KaiJet U.S. in Georgia, citing *Electronics for Imaging*, 340 F.3d at 1350 (*citing Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995)). But in both those cases, the courts concluded that a *declaratory judgment* claim arose from the patentee's communications with the defendant in the forum state—communications concerning the patent and its underlying technology. *Elecs. for Imaging*, 340 F. 3d at 1351; *Akro Corp.*, 45 F.3d at 1549). A declaratory judgment action can "arise from" allegations of infringement or threats to sue. But Sanho's action was for infringement, not for declaratory judgment. A claim for patent infringement arises when an unauthorized party "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent . . ." *Superior Indus., LLC v. Thor Glob. Enters.*, 700 F.3d 1287, 1294 (Fed. Cir. 2012) (citing 35 U.S.C. § 271(a)). An "offer for sale" to give rise to

liability for patent infringement must meet the traditional contract law definition of that term. *Id.* at 1294, citing *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1255 (Fed. Cir. 2000). Similarly, copyright infringement claims arise from distribution of infringing works, not mere communications about them. Here, Sanho presented no evidence that KaiJet Taiwan's communications sent to Georgia were sales, distributions, or offers to sell Ultradrive products. Therefore, the claims did not arise from KaiJet Taiwan's communications. Similarly, Sanho's claims did not arise from KaiJet Taiwan shipping products that ultimately reached Georgia. They arose when KaiJet U.S. offered for sale and sold Ultradrive hubs to Best Buy and others. Sanho's evidence does not support personal jurisdiction over KaiJet Taiwan.

For the third specific jurisdiction factor, the district court wrote that KaiJet Taiwan only argued that it would not be "at home" in Georgia, the standard for general jurisdiction. That is incorrect. In its opening brief, KaiJet Taiwan urged that "the exercise of specific jurisdiction … would be inconsistent with due process." (Appx275). It cited the requirements for specific jurisdiction recited in *Sloss Indus Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007). A defendant's

contacts with the forum state "must be related to the plaintiff's cause of action or have given rise to it;" they must involve "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum;" and they "must be such that the defendant should reasonably anticipate being haled into court there." *Sloss*, 488 F.3d at 925. KaiJet Taiwan emphasized that it "does not make, use, design, or sell any products in Georgia," or "import any products into Georgia," nor could it have "reasonably be expected to be subject to jurisdiction in Georgia[2]." The district court did not articulate any reason that KaiJet Taiwan's dealings with KaiJet US would have caused it to reasonably expect to be subject to jurisdiction in Georgia. For all these reasons, the district court erred in concluding that it had specific personal jurisdiction over KaiJet Taiwan.

## CONCLUSION

The Court should reverse the judgment of copyright infringement and vacate the award of disgorgement damages.

---

[2] At the summary judgment stage, KaiJet Taiwan submitted evidence that the contract between it and KaiJet U.S. mandates that all disputes between them be resolved in Taiwan. (Appx1699).

Respectfully submitted,

/S/Elizabeth H. Rader

Calliope Legal

16550 Emory Lane

Rockville, MD 20854

(650)-346-9926

elizabeth@calliopelaw.com

Counsel for Appellants KaiJet Technology International, Inc. and KaiJet Technology International Corporation.

# ADDENDUM

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| SANHO CORPORATION,<br>Plaintiff,<br>v.<br>KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC.; KAIJET TECHNOLOGY INTERNATIONAL CORPORATION, INC., doing business as "j5create"; and DOES 1-10,<br>Defendants.<br>KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC.,<br>Counterclaim Plaintiff,<br>v.<br>SANHO CORPORATION,<br>Counterclaim Defendant. | Civil Action No.<br>1:18-cv-05385-SDG |

**OPINION AND ORDER**

This matter is before the Court on the following motions: Plaintiff/Counterclaim Defendant Sanho Corporation's motion to dismiss Counterclaim Count VIII [ECF 132]; Defendant KaiJet Technology International Corporation's ("KaiJet Taiwan") motion to dismiss all claims asserted against it in Sanho's Third Amended Complaint [ECF 146]; and Sanho's motion for a finding of overlapping entity status between KaiJet Taiwan and Defendant/Counterclaim

Plaintiff KaiJet Technology International Limited, Inc. ("KaiJet US"), as well as with two non-party entities for the purposes of discovery [ECF 165]. For the following reasons, Sanho's motion to dismiss is **DENIED**; KaiJet Taiwan's motion to dismiss is **DENIED**; and Sanho's motion for a finding of overlapping entity status for discovery is **GRANTED IN PART and DENIED IN PART**.[1]

## I. BACKGROUND[2]

The Court treats the following facts as true for the purpose of resolving these motions.[3] Sanho is a computer electronics company incorporated in Delaware with its principal place of business in Fremont, California.[4] KaiJet US is a corporation headquartered in Delaware with its principal place of business in Kennesaw, Georgia.[5] KaiJet Taiwan is a Taiwanese corporation that Sanho alleges

---

1 The parties have also filed four motions for leave to file certain matters under seal [ECF 154; ECF 167; ECF 171; ECF 175]. For good cause shown, these motions are **GRANTED**.

2 In this Order, the Court refers to some information that the parties have filed under seal. The Court does not find that the information cited in this Order needs to be sealed, notwithstanding the parties' confidentiality designations.

3 *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.").

4 ECF 89, ¶¶ 2, 7.

5 *Id.* ¶ 8.

operates KaiJet US as a subsidiary in KaiJet Taiwan's "j5Create" brand.[6] Sanho alleges KaiJet Taiwan and KaiJet US essentially operate as one entity, as exemplified by their overlapping ownership, officers, directors, interests, control, and business operations.[7]

On May 25, 2018, Sanho filed its initial Complaint against KaiJet US, asserting that Sanho is the owner, by assignment of all rights, in U.S. design patent D813,875 (the "'875 Patent").[8] The '875 Patent claims the ornamental design for a multi-function docking station colloquially known as the "HYPERDRIVE."[9] Subsequently, on August 6, 2019, Sanho obtained U.S. design patent D855,616 (the "'616 Patent").[10] The '616 Patent is directed at the technology underlying Sanho's HYPERDRIVE product.[11] Sanho alleges it released the HYPERDRIVE to the public on December 5, 2016 and began shipping the product in January 2017.[12] In October 2017, the KaiJet entities (*i.e.*, KaiJet US and KaiJet Taiwan) allegedly

6 *Id.* ¶¶ 8–9.

7 *Id.* ¶¶ 10–19.

8 ECF 1.

9 ECF 87, ¶ 31.

10 *Id.*

11 *Id.* ¶¶ 31, 33.

12 ECF 87, ¶ 30.

began misappropriating Sanho's technology and have infringed on both the '875 Patent and '616 Patent by manufacturing and selling their "ULTRADRIVE" product.[13] The Court analyzes each pending motion separately below.

## II. KAIJET TAIWAN'S MOTION TO DISMISS

### a. Background

On November 14, 2019, pursuant to this Court's Order,[14] Sanho filed the operative Third Amended Complaint.[15] That pleading added KaiJet Taiwan as a named Defendant and included allegations involving the '616 Patent.[16] On January 14, 2020, Sanho filed proofs of service showing it had served KaiJet Taiwan through personal service of the Third Amended Complaint and Summons on Jessica Liu and Shou Yuan Steven Lyu.[17] Sanho contends Liu and Lyu are managing agents of KaiJet Taiwan.[18]

Despite the personal service on Liu and Lyu, KaiJet Taiwan did not file an answer or otherwise respond to the Third Amended Complaint. On January 29,

---

13 *Id*. ¶ 37.

14 ECF 87.

15 ECF 88.

16 ECF 89, ¶¶ 55–64.

17 ECF 118; ECF 119.

18 *Id*.

2020, Sanho filed a motion for a Clerk's entry of default against KaiJet Taiwan.[19] The Clerk subsequently entered the default on January 30. On February 12, the same counsel representing KaiJet US in this action noticed their appearances on behalf of KaiJet Taiwan.[20] KaiJet Taiwan then filed a motion to dismiss all claims asserted against it in the Third Amended Complaint.[21] Sanho filed a response in opposition on March 4.[22] KaiJet Taiwan filed a reply on March 25.[23] To date, KaiJet Taiwan has not filed a motion to set aside the Clerk's entry of default.

**b. The Court Has Jurisdiction to Resolve KaiJet Taiwan's Motion to Dismiss.**

As a thresholder matter, the Court may exercise jurisdiction to resolve KaiJet Taiwan's pending motion to dismiss even though it has not filed a motion to set aside the Clerk's entry of default. "The entry of a default against a defendant, unless set aside pursuant to Rule 55(c), severely limits the defendant's ability to defend the action." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). For example, a defaulted defendant "is deemed to admit the plaintiff's well-

---

19 ECF 133.

20 ECF 144 (notice of appearance by Ryan Gentes); ECF 145 (notice of appearance by Robert Carlson).

21 ECF 146.

22 ECF 152.

23 ECF 160.

pleaded allegations of fact," but not "facts that are not well-pleaded or to admit conclusions of law." *Id*. A defaulting defendant is also entitled to challenge the Court's jurisdiction. *Id*. Crucially, such a defendant can "challenge the validity of service of process or contest the court's exercise of personal jurisdiction over him." *Id*. However, the defaulting defendant is limited to those narrow exceptions and cannot raise other defenses without successfully vacating the entry of default. *Id*.

Here, KaiJet Taiwan's motion to dismiss only attacks the Court's jurisdiction. Specifically, it raises the defenses of insufficient service of process, insufficient process, and a lack of personal jurisdiction. Since KaiJet Taiwan is entitled to raise these defenses while in default—and does not challenge the Third Amended Complaint on any other grounds—this Court may adjudicate the motion.

**c. Discussion**

KaiJet Taiwan contends all of Sanho's claims against it must be dismissed because: (1) Sanho did not properly serve KaiJet Taiwan with process pursuant to Federal Rule of Civil Procedure 12(b)(5); (2) Sanho did not provide KaiJet Taiwan with sufficient process pursuant to Federal Rule of Civil Procedure 12(b)(4); and (3) the Court lacks personal jurisdiction over KaiJet Taiwan. The Court addresses each below.

#### *i.* Sanho Properly Served KaiJet Taiwan with Sufficient Process.

KaiJet Taiwan argues that Sanho failed to properly effect service. Pursuant to Rule 12(b)(5), a defendant may seek the dismissal of a complaint for insufficient service of process. *Prewitt Enters., Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 925 (11th Cir. 2003) ("[A]n individual or entity is not obliged to engage in litigation unless officially notified of the action . . . under a court's authority, by formal process."); *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) ("Service of process is a jurisdictional requirement: a court lacks jurisdiction over the person of a defendant when that defendant has not been served."). Rule 4(h) governs the service of process on a corporation.[24] Rule 4(h)(1)(B), relevant here (for reasons explained further below), states:

> [A] domestic or foreign corporation . . . must be served: (1) in a judicial district of the United States . . . (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

---

24 KaiJet Taiwan is a corporation organized under the laws of Taiwan. ECF 89, ¶ 9; ECF 146, at 3.

The term "delivering" entails personal service. *Dyer v. Wal-Mart Stores, Inc.*, 318 F. App'x 843, 844 (11th Cir. 2009).

Rule 4 "is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Sanderford v. Prudential Ins. Co. of Am.*, 902 F.2d 897, 900 (11th Cir. 1990). In resolving a motion to dismiss based on insufficient service of process, the Court must apply "the standards of proof governing motions to dismiss for lack of personal jurisdiction." *Lowdon PTY Ltd. v. Westminster Ceramics, LLC*, 534 F. Supp. 2d 1354, 1360 (N.D. Ga. 2008). The party contesting service bears the burden of showing its deficiency. *Ritts v. Dealers All. Credit Corp.*, 989 F. Supp. 1475, 1478 (N.D. Ga. 1997). The Court may "make factual findings necessary to resolve [a] motion[ ] to dismiss for . . . ineffective service of process . . . so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Bryant v. Rich*, 530 F.3d 1368, 1376 (11th Cir. 2008). If the parties present "countering evidence, the court must construe all reasonable inferences in favor of the plaintiff." *Lowdon*, 534 F. Supp. 2d at 1360.

Relevant here, Sanho filed a proof of service as to Jessica Liu on January 14, 2020.[25] It indicates that Sanho personally served Liu with a copy of the Third Amended Complaint and Summons in Las Vegas, Nevada on January 7, 2020.[26] In the notarized affidavit, the registered process server—Adam Schwartz—stated that Liu "confirmed that she is a managing member of KaiJet Technology, based out of Taiwan."[27] To support its conclusion that Liu is a managing member of KaiJet Taiwan, Sanho points to registration documents KaiJet Taiwan filed with the Federal Communications Commission ("FCC") on March 13, 2018.[28] In those documents, Liu is plainly listed as the "Manager" of "KaiJet Technology International Corporation."[29]

KaiJet Taiwan agrees Sanho personally served Liu in Las Vegas. Assuming Liu is a managing member of KaiJet Taiwan, this evidence is sufficient for Sanho to demonstrate that it properly served KaiJet Taiwan. *Vax-D Med. Techs., LLC v. Texas Spine Med. Ctr.*, 485 F.3d 593, 596 (11th Cir. 2007) (holding plaintiff properly served defendant with process by serving the defendant's manager with a copy of

---

25 ECF 118; ECF 119.

26 ECF 118.

27 *Id*. As noted below, KaiJet Taiwan disputes this sworn testimony.

28 ECF 152-2, at 2.

29 *Id*.

the summons and amended complaint). KaiJet Taiwan, however, urges the Court to find that, despite Schwartz's representations in the proof of service and KaiJet Taiwan's own FCC filing, Liu is not an officer, director, or manager of KaiJet Taiwan and is not authorized to accepted service on its behalf.[30] KaiJet Taiwan provides the Court with affidavits from Liu and Yu-Chi Tai—the latter of whom purports to be KaiJet Taiwan's Chief Executive Officer—in support of its contention.[31] Liu's and Tai's affidavits directly contradict the proof of service document and KaiJet Taiwan's own representations in its FCC filing.[32] Specifically, Liu contends Schwartz "did not ask me if I was a manager of 'KaiJet Technology' or for any other information."[33] And both Liu and Tai contend that Liu has not been an officer, director, manger, or owner of KaiJet Taiwan since 2014.[34]

---

30 ECF 146, at 3.

31 ECF 146-2; ECF 146-3.

32 *Id*.

33 ECF 146-2, ¶ 3.

34 *Id*.; ECF 146-3.

However, neither KaiJet Taiwan, Liu, nor Tai explain the FCC filing that identifies Liu as KaiJet Taiwan's manager in 2018.[35]

Sanho and KaiJet Taiwan have presented the Court with conflicting evidence regarding Liu's role at KaiJet Taiwan. To resolve this conflict, the Court must construe all reasonable inferences in Sanho's favor. *Lowdon*, 534 F. Supp. 2d at 1360. In doing so, the Court finds Sanho has presented sufficient evidence that it properly served KaiJet Taiwan with process. As such, the Court need not address KaiJet Taiwan's arguments regarding Rule 4(h)(2), Rule 4(f), or the Taiwan Code of Civil Procedure.

---

[35] KaiJet Taiwan attaches "supplemental" declarations from both Liu and Lyu to its reply in support of its motion to dismiss [ECF 160-2; ECF 160-4.] In Liu's supplemental affidavit, she claims KaiJet Taiwan "inadvertently" listed her as its manager in the FCC registration after KaiJet Taiwan changed its name in 2017 [ECF 160-2.] The law is clear that "a court should not consider arguments raised for the first time in a reply brief." *Reliance Ins. Co. of Ill. v. Richfield Hosp. Servs., Inc.*, 92 F. Supp. 2d 1329, 1332 (N.D. Ga. 2000). Additionally, the Court is not required to credit a non-moving party's conclusory, self-serving affidavit when ruling on a motion to dismiss. *Cf. Bell v. Advanced Corr. Healthcare, Inc.*, No. 2:16-cv-278-TMP, 2016 WL 7242170, at *1 n.1 (N.D. Ala. Dec. 15, 2016); *Quach v. Paragon Sys. Inc.*, No. 1:15-cv-00750-RWS-RGV, 2015 WL 13719674, at *3 (N.D. Ga. Oct. 28, 2015). Therefore, the Court declines to consider the new argument raised in Liu's and Lyu's supplemental affidavits. As is clear from the discussion below, however, even if the Court considered KaiJet Taiwan's new argument, the Court's ruling would not change.

With respect to its argument under Rule 12(b)(4), KaiJet Taiwan argues the documents Sanho served on Liu and Lyu were deficient and do not qualify as sufficient process under the Federal Rules of Civil Procedure. Specifically, KaiJet Taiwan contends Sanho did not comply with the process required for letters rogatory to be served in Taiwan and did not serve Liu and Lyu with a certified language translation of the Third Amended Complaint and Summons from English to Mandarin Chinese.

KaiJet Taiwan's contentions regarding insufficient process are unpersuasive. First, KaiJet Taiwan's reliance on the processes required under the Hague Convention or to serve letters rogatory in Taiwan is misplaced. Since Sanho properly served KaiJet Taiwan in compliance with Rule 4(h)(1)(B) by personally serving Liu in the United States, it did not need to resort to the Hague Convention or a letter rogatory. *Lamb by & Through Donaldson v. Volkswagenwerk Aktiengesellschaft*, 104 F.R.D. 95, 97 (S.D. Fla. 1985) ("By its terms, The Hague Convention is applicable only to attempts to serve process in foreign countries.").

Second, it is undisputed that Sanho served Liu with a copy of the Third Amended Complaint and Summons in a timely manner in compliance with Rule 4(c). There is no indication that the documents served on Liu did not contain the information required by Rule 4(a). While KaiJet Taiwan asserts Sanho erred by not

including a translated version of these documents, there is no such requirement in Rule 4. *Albo v. Suzuki Motor Corp.*, No. C.A. 308-0139-KC, 2008 WL 2783508, at *3 (W.D. Tex. July 2, 2008) ("Defendant does not cite any authority stating that failure to translate a summons into a country's official language constitutes a defect in form of the process."). KaiJet Taiwan's argument is instead premised on the notion that Sanho had to serve KaiJet Taiwan ***in Taiwan***, which Sanho was not required to do because it properly served Liu in the United States. Therefore, Sanho provided KaiJet Taiwan sufficient process and KaiJet Taiwan's arguments are without merit.

**_ii._ KaiJet Taiwan Is Subject to Personal Jurisdiction in this Court.**

KaiJet Taiwan alternatively seeks dismissal on the theory that the Court lacks personal jurisdiction over it as a Taiwanese corporation. "Federal Circuit law governs personal jurisdiction in patent cases." *Kason Indus., Inc. v. Dent Design Hardware, Ltd.*, 952 F. Supp. 2d 1334, 1339 (N.D. Ga. 2013) (citing *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564–65 (Fed. Cir. 1994)). *See also Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003) ("[W]here the personal jurisdictional inquiry is intimately involved with the substance of the patent laws, we apply Federal Circuit law."). To defeat the motion to dismiss, Sanho is

"required only to make a *prima facie* showing of jurisdiction." *Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*, 395 F.3d 1275, 1282 (Fed. Cir. 2005). The Court must accept Sanho's uncontroverted allegations as true and resolve any factual conflicts in Sanho's favor. *Elecs. for Imaging*, 340 F.3d at 1349 (citing *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002)).

"Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017). Two recognized categories of personal jurisdiction comport with due process: general and specific jurisdiction. As succinctly articulated by the Supreme Court:

> A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State. Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal citations and punctuation omitted).

**1. The Court's Exercise of Jurisdiction Comports with Georgia's Long Arm Statute.**

In relevant part, Georgia's long arm statute provides:

> A court of this state may exercise personal jurisdiction over any nonresident . . . in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she: (1) Transacts any business within this state . . . .

O.C.G.A. § 9-10-91(1). Georgia's long arm statute is not "coextensive with procedural due process." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1259 (11th Cir. 2010) (interpreting *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, Iowa*, 279 Ga. 672 (2005)). The statute "must be read literally," as it "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." *Diamond Crystal*, 593 F.3d at 1259. Since the Court's application of the Georgia long arm statute is "governed by state law," the Court "must interpret and apply Georgia's long arm statute in the same way as would the Georgia Supreme Court." *Id.*

According to the Georgia Supreme Court, "O.C.G.A. § 9-10-91(1) grants Georgia courts the unlimited authority to exercise personal jurisdiction over any

nonresident who transacts any business in this State." *Amerireach.com, LLC v. Walker*, 290 Ga. 261, 266 (2011). And a nonresident corporation need not be physically present in the state to satisfy this requirement. *Diamond Crystal*, 593 F.3d at 1264. The Court must "examine all of a nonresident's tangible and intangible conduct and ask whether it can fairly be said that the nonresident has transacted any business within Georgia." *Id. See also POWERbahn, LLC v. Found. Fitness LLC*, No. 1:17-cv-2965-AT, 2020 WL 1467248, at *5 (N.D. Ga. Jan. 29, 2020) ("To transact business, a defendant need not physically enter the state to subject himself to the long-arm statute and courts may consider intangible acts that occur while the defendant is outside of Georgia, such as the nonresident's mail and telephone calls.").

In the Third Amended Complaint, Sanho alleges KaiJet Taiwan operates in a physical location in Georgia and ships and sells its products directly in the State.[36] Sanho presents evidence: (1) listing KaiJet Taiwan as the "shipper" of the

[36] *E.g.*, ECF 89, ¶ 10 ("KaiJet Taiwan operates through a physical office located in Georgia, in which State its officers and directors also operate on the ground in Georgia."); *id.* ¶ 14 ("KaiJet Taiwan conduct[s] activities in the United States and Georgia through its subsidiaries and affiliates."); *id.* ¶ 19 ("KaiJet Taiwan performed several overt acts in furtherance of [its] plan within the State of Georgia, including delivery of the accused products, and aiding and abetting the same, within the United States and in Georgia."); *id.* ¶ 21 ("KaiJet Taiwan . . . is responsible for . . . the development, design, manufacture, sale,

ULTRADRIVE product from Taiwan to KaiJet US in Atlanta, Georgia;[37] (2) showing KaiJet US initiated electronic wire payments from Georgia to KaiJet Taiwan in Taiwan for the sale of the ULTRADRIVE;[38] and (3) that KaiJet Taiwan sent emails and other intangible communications to KaiJet US in Georgia in furtherance of certain negotiations involving the ULTRADRIVE.[39]

KaiJet Taiwan disputes Sanho's characterizations and evidence. According to KaiJet Taiwan, KaiJet US purchases the products directly from KaiJet Taiwan in Taiwan, then imports the product itself into Georgia to sell. For this, KaiJet Taiwan relies on Liu's and Tai's affidavits, which directly contradict Sanho's allegations and evidence. Liu and Tai both aver that KaiJet Taiwan "does not make, use, offer to sell, or sell any products" in the United States or Georgia and does not "import any products into the United States."[40] Notably, KaiJet Taiwan does not dispute

---

and import of the infringing products into and delivery throughout the United States and the State of Georgia."); *id.* ¶ 22 ("KaiJet Taiwan . . . directed and participated in the marketing, sale, and offer for sale of [its] infringing products at Best Buy Stores and other retail outlets . . . in the State of Georgia.").

37 ECF 152-19.

38 ECF 153-6 (SEALED).

39 ECF 153-7 (SEALED); ECF 153-8 (SEALED).

40 ECF 146-1, ¶ 7 (Liu Affidavit); ECF 146-3, ¶ 9 (Tai Affidavit).

that it sent emails and other intangible communications into Georgia regarding price negotiations and the ULTRADRIVE product.[41]

The Court finds Sanho has satisfied the first prong of the Georgia long-arm statute. First, the uncontroverted evidence shows that KaiJet Taiwan sent communications, including emails, into Georgia in relation to transactions and pricing of the ULTRADRIVE. This alone is persuasive. *Diamond Crystal*, 593 F.3d at 1264 ("[A] nonresident's mail, telephone calls, and other intangible acts, though occurring while the defendant is physically outside of Georgia, must be considered."); *POWERbahn*, 2020 WL 1467248, at *6 ("Here, there is no doubt from the emails provided that Mr. Warner was engaged in business with Wahoo, a Georgia citizen, meeting the 'transacts any business prong' of the long arm statute."); *Avent v. Pirrello*, No. 1:16-cv-1127-TWT, 2017 WL 1062372, at *3 (N.D. Ga. Mar. 20, 2017) (citing *TRS & Assocs., Inc. v. Document Imaging Techs., Inc.*, No. 1:08-cv-03264-JOF, 2009 WL 2778256, at *7 (N.D. Ga. Aug. 25, 2009) ("Because Defendant sought to derive economic benefit from its relationship with Plaintiff, the Court finds that the Defendant did transact business in Georgia through his telephone and email contacts."); *Sprint Nextel Corp. v. Ace Wholesale, Inc.*, No. 1:12-

41 ECF 160, at 13.

cv-02902-JEC, 2014 WL 688134, at *5 (N.D. Ga. Feb. 21, 2014) ("[I]ntangible acts may, if they consummate some transaction, support personal jurisdiction under the long-arm statute."). And while KaiJet Taiwan disputes Sanho's evidence that it ships and sells the ULTRADRIVE in Georgia, the Court is required to resolve the conflicting evidence in Sanho's favor at this stage. *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 524 (2006) ("[A]ny disputes of fact in the written submissions supporting and opposing the motion to dismiss are resolved in favor of the party asserting the existence of personal jurisdiction."). Therefore, the Court finds that Sanho has satisfied Georgia's long arm statute.

**2. Personal Jurisdiction Over KaiJet Taiwan Comports with Constitutional Due Process.**

"Once a statutory basis for long-arm jurisdiction is established, the remaining question is whether the exercise of personal jurisdiction comports with due process." *Kason*, 952 F. Supp. 2d at 1340. As stated above, due process recognizes two categories of personal jurisdiction: general and specific.

**a. General Jurisdiction**

General jurisdiction requires a corporate defendant's contacts to be "so continuous and systematic as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at 919. "The paradigm forums in which a corporate defendant is at home . . . are the corporation's place of incorporation and its

principal place of business. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). In an "exceptional case," a corporate defendant may be said to be "at home" in another forum if its operations are "so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19. At bottom, simply conducting business in a forum is insufficient for general personal jurisdiction. *Tyrrell*, 137 S. Ct. at 1558.

Sanho does not argue that KaiJet Taiwan is subject to general jurisdiction in this Court. As its name suggests, KaiJet Taiwan is a foreign corporation incorporated and maintaining its principal place of business in Taiwan. There is otherwise no indication that this is an "exceptional case" in which KaiJet Taiwan should be subject to general jurisdiction in a forum that does not meet one of those two criteria. Since KaiJet Taiwan cannot be considered "at home" in Georgia, it is not subject to general personal jurisdiction in the state.

**b. Specific Jurisdiction**

If a nonresident defendant is not subject to general personal jurisdiction, the Court "may nonetheless exercise specific jurisdiction over the defendant if the cause of action 'arises out of' or 'relates to' the defendant's in-state activity." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1360–61 (Fed. Cir. 2006) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)).

Constitutional due process "requires that there exist sufficient 'minimum contacts' such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Breckenridge*, 444 F.3d at 1361 (citing *Burger King*, 471 U.S. at 476–78).

The Federal Circuit applies a three-prong test to determine if a defendant is subject to specific personal jurisdiction in a forum: whether "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge*, 444 F.3d at 1363. "The first two factors correspond to the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor with the 'fair play and substantial justice' prong." *Elecs. for Imaging*, 340 F.3d at 1350 (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1545 (Fed. Cir. 1995)). *See also Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310 (1945). The defendant bears the burden of proof on the third factor and "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable under the five-factor test articulated by the Supreme Court in *Burger King*." *Breckenridge*, 444 F.3d at 1363 (citing *Burger King*, 471 U.S. at 476–77 (1985)).

Sanho argues the first two prongs of the Federal Circuit's test are met through KaiJet Taiwan's admission of sending emails and intangible communications to KaiJet US in Georgia.[42] The Court agrees; this alone is sufficient to meet the constitutional due process requirement. *POWERbahn*, 2020 WL 1467248, at *6 ("The Court finds that the first two prongs . . . are met for the same reasons that the Court held that [defendant] was subject to Georgia's long arm statute—that under the applicable legal standards, the emails provided by POWERbahn, combined with [defendant's] admission about some level of assistance with development, raise an inference (for the purpose of assessing jurisdiction) that [defendant] induced infringement."). *See also Hi-Tech Pharm. Inc. v. Dynamic Sports Nutrition, LLC*, No. 1:16-CV-949-MHC, 2016 WL 9454418, at *7–8 (N.D. Ga. Dec. 28, 2016) (holding first two prongs satisfied because defendant "admits to email communications with [Georgia resident], which Plaintiff alleges were in furtherance of [the claims]," and "repeatedly communicated with a Georgia resident via email in furtherance of the [claims]").

Additionally, Sanho demonstrates that KaiJet Taiwan purposefully directs its activities at Georgia by pointing to evidence that KaiJet Taiwan ships and sells

---

42 ECF 153-7 (SEALED); ECF 153-8 (SEALED).

the ULTRADRIVE in the State.[43] KaiJet Taiwan disputes this evidence and points to its own declarations directly contradicting this characterization. However, Sanho satisfies the due process analysis for the same reasons it satisfied the Georgia long arm statute—the Court must construe all reasonable inferences and resolve any conflict in Sanho's favor. *Elecs. for Imaging,* 340 F.3d at 1349; *POWERbahn*, 2020 WL 1467248, at *4.

For the third factor, KaiJet Taiwan does not argue that the Court's exercise of personal jurisdiction over it would be unreasonable or unfair. Instead, KaiJet Taiwan conflates the pertinent standards for general and specific jurisdiction, arguing that it would not be "at home" in Georgia.[44] This is not the correct test; the third prong in assessing specific jurisdiction questions whether "minimum requirements inherent in the concept of 'fair play and substantial justice' may defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities." *Burger King*, 471 U.S. at 477–78 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)). The Court must focus on the "relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204

---

43 ECF 152-19; ECF 153-6 (SEALED).

44 ECF 146, at 13–14.

(1977)). In *Hi-Tech Pharmaceuticals*, this Court summarized the five factors relevant to this analysis as articulated by the Supreme Court in *Burger King*:

> (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Hi-Tech Pharm.*, 2016 WL 9454418, at *9 (citing *Burger King*, 471 U.S. at 462, 467).

KaiJet Taiwan does not raise any of these factors as a reason why exercising jurisdiction over it would be unfair. It simply reiterates its argument that it is a separate entity apart from KaiJet US that does not ship or sell the ULTRADRIVE in Georgia. Nonetheless, applying the *Burger King* factors, the Court concludes that it may properly exercise jurisdiction over KaiJet Taiwan. Given Sanho's allegations of common ownership, the burden of appearing in this Court by KaiJet Taiwan appears to be light. Moreover, Sanho has a particularly strong interest in obtaining convenient and effective relief. Based on KaiJet US's discovery responses and objections—some of which implicate KaiJet Taiwan's involvement in the conduct underlying Sanho's allegations regarding the HYPERDRIVE[45]—Sanho's interest,

[45] *E.g.*, ECF 165-3.

as well as the Court's interests, will be furthered by KaiJet Taiwan's inclusion in this action.

Therefore, the Court finds that the exercise of personal jurisdiction over KaiJet Taiwan in this case is consistent with constitutional due process. As such, the Court has personal jurisdiction over KaiJet Taiwan. KaiJet Taiwan's motion to dismiss is **DENIED**.

## III. SANHO'S MOTION TO DISMISS COUNTERCLAIM VIII

On January 3, 2020, KaiJet US filed its Answer to the Third Amended Complaint and asserted eight counterclaims against Sanho for declaratory judgment (counterclaim Counts I–VII) and false advertising under the Lanham Act (counterclaim Count VIII).[46] On January 24, Sanho filed its motion to dismiss only counterclaim Count VIII for failure to state a claim pursuant to Rule 12(b)(6).[47] KaiJet US filed its opposition on February 4.[48] Sanho filed a reply on February 18.[49]

To withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true,

---

46 ECF 115.

47 ECF 132.

48 ECF 140.

49 ECF 148.

to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Am. Dental Ass'n*, 605 F.3d at 1289 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must also present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556).

False advertising claims under the Lanham Act are governed by 15 U.S.C. § 1125(a)(1)(B), which provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, . . . shall be liable in a civil action by any person

> who believes that he or she is or is likely to be damaged by such act.

To state a claim for false advertising, KaiJet US must establish:

> (1) the ads of [Sanho] were false or misleading, (2) the ads deceived, or had the capacity to deceive, consumers, (3) the deception had a material effect on purchasing decisions, (4) the misrepresented product or service affects interstate commerce, and (5) [KaiJet US] has been—or is likely to be—injured as a result of the false advertising.

*Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010) (citing *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1224 (11th Cir. 2008)).

In Counterclaim Count VIII, KaiJet US alleges Sanho has paid third parties—falsely disguised as independent reviewers, not paid-for advertisement—to submit positive reviews of Sanho's HYPERDRIVE product on various online platforms.[50] KaiJet US also alleges Sanho is paying these falsely designated third-party reviewers to remove negative reviews of Sanho's product.[51] KaiJet US contends Sanho has engaged in this form of advertising to influence customers' purchasing decisions away from KaiJet US's products and towards its own.[52]

---

50 ECF 115, ¶¶ 38–40.

51 *Id.* ¶ 40.

52 *Id.* ¶¶ 41–43.

Sanho argues that KaiJet US's Lanham Act counterclaim must be dismissed because online product reviews by a third party do not qualify as "commercial advertising or promotion" for the purposes of a false advertising claim.[53] However, Sanho does not direct the Court to any authority that bars KaiJet US from asserting its false advertising claim under these alleged facts. While making no finding as to the ultimate viability of KaiJet US's Counterclaim—on which it will bear the burden of proof—and treating the well-pleaded allegations as true, KaiJet US has alleged sufficient facts to state a plausible claim at this stage. *Iqbal*, 556 U.S. at 678. Sanho's motion to dismiss is **DENIED**.

## IV. SANHO'S MOTION FOR A FINDING OF OVERLAPPING ENTITY STATUS FOR PURPOSES OF DISCOVERY

On December 20, 2019, the Court held a discovery call with the parties regarding KaiJet US's answers to Sanho's discovery requests.[54] Specifically, Sanho is seeking documents KaiJet US contends it does not possess or control, but KaiJet Taiwan does possess and control, but that it purportedly will not permit KaiJet US to access.[55] These documents concern various topics including the circumstances

---

53 ECF 132-1, at 2–3.

54 ECF 111; ECF 147.

55 *Id.*

surrounding the ULTRADRIVE's design, development, and manufacturing process, as well as the KaiJet entities' non-US sales of the product.

Based on the record before the Court during the discovery conference, the Court withheld judgment on Sanho's discovery requests and invited it to file a motion for a determination of alter ego status between KaiJet US and KaiJet Taiwan.[56] On April 2, 2020, Sanho filed its motion requesting that the Court declare, for the purposes of discovery, KaiJet US overlaps with KaiJet Taiwan, as well as with two other non-party corporate entities—Magic Control Technology Corporation ("MCT") and Star View Global Ltd. ("Star View")—on the theory that all four entities operate as one under the j5Create brand.[57] On April 6, after filing its motion but before KaiJet US filed a response, Sanho filed a notice of newly discovered evidence in support of its motion.[58] On April 16, KaiJet US filed its response in opposition to Sanho's motion.[59] Sanho filed its reply on April 30.[60]

---

56 *Id.*

57 ECF 165.

58 ECF 168.

59 ECF 170.

60 ECF 173.

**a. Legal Standard**

The Court possesses broad discretion to control and manage the discovery process in cases pending before it. *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001); *Phipps v. Blakeney*, 8 F.3d 788, 790 (11th Cir. 1993). Federal Rule of Civil Procedure 34(a) governs the production of documents in civil matters. Pursuant to Rule 34(a), a party must produce documents responsive to a discovery request when those documents are "in the responding party's possession, custody, or control." *Id*. "Whether documents are in a [party's] control under Rule 34 is broadly construed." *Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 470 (S.D. Fla. 2011).

For the purposes of discovery, control is not defined as, or synonymous with, possession. *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984) ("Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand."). *See also In re Wright*, No. ADV. 04-9156, 2005 WL 6488101, at *3 (Bankr. N.D. Ga. Aug. 9, 2005) ("[C]ontrol does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability, to obtain the documents from a

non-party to the action.").[61] A party seeking documents held by a corporate affiliate may establish the "legal right to obtain documents requested upon demand" if the "affiliated corporate entities . . . have actually shared responsive information and documents in the normal course of their business dealings." *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1201 (11th Cir. 2016) (citing *Costa*, 277 F.R.D. at 470–71). Put another way, "discovery can be sought from one corporation regarding materials that are in the physical possession of another, affiliated corporation." *Batista v. Nissan N. Am., Inc.*, No. CV 14-24728-CIV, 2015 WL 10550409, at *2 (S.D. Fla. Dec. 8, 2015) (citing *Costa*, 277 F.D.R. at 474 n.1). *See also Steele Software Sys., Corp. v. DataQuick Info. Sys., Inc.*, 237 F.R.D. 561, 564 (D. Md. 2006) (citing *Société Internationale pour Participations Industrielles & Commerciales, S.A. v. Rogers*, 357 U.S. 197, 204 (1958) ("It is well established that a district court may order the production of documents in the possession of a related nonparty entity under Rule 34(a) if those documents are under the custody or control of a party to the litigation."); 14D Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 2210 (3d ed. 2020) ("Particular concerns can arise when a corporate

---

61 The test is the same for interrogatories under Fed. R. Civ. P. 33: "[A] party must provide information in response to a Rule 33 interrogatory if such information is under its control." *Costa*, 277 F.R.D. at 471 (collecting cases).

party is related to another corporation, and this nonparty corporation actually possesses the materials in question. Rather than adopting an overarching rule for such situations, the courts have tended to focus on the facts shown in a particular case.").

When the moving party requests that a corporate party produce documents in the possession of an affiliate corporation, courts routinely consider five factors to determine whether there is control:

> Among the factors used by the courts to determine whether one corporation may be deemed under control of another corporation are: (a) commonality of ownership, (b) exchange or intermingling of directors, officers or employees of the two corporations, (c) exchange of documents between the corporations in the ordinary course of business, (d) any benefit or involvement by the non-party corporation in the transaction, and [e] involvement of the non-party corporation in the litigation.

*Super Film of Am., Inc. v. UCB Films, Inc.*, 219 F.R.D. 649, 655 (D. Kan. 2004). *See also Meridian Labs., Inc. v. OncoGenerix USA, Inc.*, 333 F.R.D. 131, 135 (N.D. Ill. 2019) (same); *Lodestar Anstalt v. Bacardi & Co. Ltd.*, No. CV 166411CASFFMX, 2018 WL 8786642, at *2 (C.D. Cal. Nov. 21, 2018) (same); *Shell Glob. Sols. (US) Inc. v. RMS Eng'g, Inc.*, No. 4:09-CV-3778, 2011 WL 3418396, at *2 (S.D. Tex. Aug. 3, 2011) (same); *Steele Software*, 237 F.R.D. at 564 (same); *Am. Rock Salt Co., LLC v. Norfolk S. Corp.*, 228 F.R.D. 426, 457 (W.D.N.Y. 2004) (same); *Uniden Am. Corp. v. Ericsson Inc.*,

181 F.R.D. 302, 306 (M.D.N.C. 1998) (same). While no factor is dispositive, courts generally consider them all "to determine the closeness of the relationship and to help ensure that a subsidiary does not hide responsive documents with an overseas parent company." *Life Spine, Inc. v. Aegis Spine, Inc.*, No. 19 CV 7092, 2020 WL 2219060, at *2 (N.D. Ill. May 7, 2020) (citing *Flavel v. Svedala Indus., Inc.*, No. 92-C-1095, 1993 WL 580831, at *4 (E.D. Wis. Dec. 13, 1993)).

While none of these cases are binding authority, the Court finds this test persuasive and applies it here. The Court concludes Sanho has shown that KaiJet US has "control" of documents and information in the possession of KaiJet Taiwan, but that it has not met this burden with regard to MCT or Star View.

***i.*** **Sanho Has Demonstrated Control Between KaiJet US and KaiJet Taiwan.**

Using the above-referenced five factor test, the Court finds Sanho has met its burden of showing that KaiJet Taiwan is an affiliate of KaiJet US and that KaiJet US has control over the sought-after documents and information in the possession of KaiJet Taiwan.

The first factor—common ownership—is widely considered the most important in the control determination. *E.g., Costa*, 277 F.R.D. 468 at 472 ("Courts have consistently held that control exists where the party and its related [ ] affiliate are owned by the same individual."); *Steele Software*, 237 F.R.D. at 564

(same). In some cases, the first factor "can be dispositive of control when a parent corporation is the party to the lawsuit, and the moving party seeks discovery of the parent's wholly-owned subsidiary." *Cormack v. United States*, 117 Fed. Cl. 392, 403 (2014).

The Court finds the letter from the FCC to Sanho's legal counsel particularly persuasive.[62] According to the letter, on February 3, 2020, Sanho requested various records referencing Liu, KaiJet US, and KaiJet Taiwan pursuant to the Freedom of Information Act—5 U.S.C. § 552.[63] The FCC's Office of Engineering & Technology conducted a search and found several records responsive to Sanho's request.[64] In a footnote, the FCC clarified the relationship between KaiJet US and KaiJet Taiwan: "[KaiJet Taiwan] and [KaiJet US] are the ***same company***, with the former based in New Taipei City, Taiwan and the latter based in Kennesaw, GA."[65] KaiJet US does not challenge the FCC's finding or otherwise present sufficient evidence to refute the agency's conclusion.

---

62 ECF 168-1, at 2.

63 *Id*.

64 *Id*.

65 *Id*. (emphasis added).

Beyond the FCC letter, Sanho presents other evidence of common ownership—including statements from Liu, the majority owner of KaiJet US.[66] Based on this evidence, the Court finds that Sanho has shown that KaiJet US is a subsidiary of KaiJet Taiwan as part of a unified corporate structure. This factor is particularly weighty given that KaiJet US and KaiJet Taiwan are both parties to this litigation.

For the second factor, the Court does not have the benefit of analyzing KaiJet Taiwan's corporate structure. However, the Court has already discussed Liu's apparent dual role in KaiJet US and KaiJet Taiwan.[67] To summarize: all parties agree that Liu is the CEO and majority owner of KaiJet US, but there is a factual dispute as to Liu's prior and current role in KaiJet Taiwan. Sanho claims—and presents evidence—that Liu previously owned a portion of KaiJet Taiwan and currently serves as a managing member. Liu, conversely, contends that she is not currently a manager or employee, but previously owned a portion of KaiJet Taiwan and is currently its creditor. Although there is a factual dispute, the Court

---

66 ECF 152-6 (Liu interview); ECF 166-6 (SEALED) (listing percentage owners of KaiJet US).

67 *See supra* Section II.c.ii.

credits Sanho's evidence and, thus, considers the second factor as weighing in favor of a finding of overlapping entity status.

For the third and fourth factors, Sanho has presented evidence that the KaiJet entities regularly exchange emails in the normal course of business that demonstrate KaiJet Taiwan's involvement in this patent dispute. Additionally, Sanho presents evidence showing both entities use the common "j5Create" domain.[68] And Sanho points to several emails involving the ULTRADRIVE product at issue in the litigation.[69] KaiJet Taiwan attempts to diminish these emails, contending that they are not "integral or necessary for KaiJet [US] to perform its functions."[70] The Court finds these communications between the entities to be probative of overlapping status, particularly because the communications relate to the very same products at issue in this litigation. Accordingly, the third and fourth factors support Sanho's request.

For the final factor, KaiJet Taiwan is a named Defendant that is currently in default in this litigation. If the Court were to bar Sanho from obtaining documents

---

68 *E.g.*, ECF 166-2 (SEALED); ECF 166-14 (SEALED).

69 *E.g.*, ECF 166-7 (SEALED); ECF 166-9 (SEALED); ECF 166-10 (SEALED); ECF 166-12 (SEALED); ECF 166-13 (SEALED); ECF 166-14 (SEALED).

70 ECF 170, at 14.

from KaiJet Taiwan through KaiJet US, KaiJet Taiwan could simply remain in default and effectively immunize itself, as well as severely hamstring Sanho, by producing no relevant documentation or information at all. What is more, KaiJet Taiwan will certainly benefit from an outcome in KaiJet US's favor in this litigation, as it will then be permitted to sell its product throughout the United States with impunity. This is yet another factor weighing in favor of a finding of control. *Afros S.P.A. v. Krauss-Maffei Corp.*, 113 F.R.D. 127, 131 (D. Del. 1986) ("If the nonparty is to receive a benefit from the litigation, that fact along with others must be weighed in determining control for purposes of Rule 34.").

Therefore, the Court finds that Sanho has met its burden of showing that KaiJet Taiwan and KaiJet US sufficiently overlap for the purposes of discovery and that KaiJet US has control over the sought-after discovery in KaiJet Taiwan's possession.

#### *ii.* Sanho Has Not Proven KaiJet US's Control as to MCT or Star View.

Sanho has not, however, met its burden as to MCT or Star View. Unlike KaiJet Taiwan, MCT and Star View are two non-party entities that seemingly have no connection to this patent dispute. Indeed, the Third Amended Complaint does not reference either entity, let alone allege any wrongdoing by them. And

crucially, Sanho does not assert that KaiJet US has control over any specific information in the possession of MCT or Star View.

Sanho's request as to MCT and Star View is instead wholly connected to the entities' involvement with the "j5Create" brand and Liu. Sanho demonstrates that KaiJet US does share at least one officer with MCT, as Liu is listed as the CEO of both entities.[71] And Liu is likewise listed as the President and CEO of "j5Create."[72] Sanho also points to email communications among individuals using the domain "j5Create" and those (1) using the domain "MCT" or (2) discussing Star View.[73] While KaiJet US may have some loose affiliation with MCT and Star View, this evidence simply does not go far enough to show that KaiJet US controls any documents or information in MCT's or Star View's possession. For example, unlike with KaiJet Taiwan, there is no indication of any corporate relationship (parent, subsidiary, or otherwise) between KaiJet US and MCT or Star View. In sum, Sanho's evidence, and the reasonable inferences drawn therefrom, do not support a finding of overlapping entity status between KaiJet US and MCT or KaiJet US and Star View for purposes of discovery.

71 ECF 152-5.

72 *Id.*

73 *E.g.*, ECF 166-13 (SEALED); ECF 166-14 (SEALED).

## V. CONCLUSION

Sanho's motion to dismiss Counterclaim Count VIII [ECF 132] is **DENIED**; KaiJet Taiwan's motion to dismiss [ECF 146] is **DENIED**; and Sanho's motion for a finding of overlapping parties for the purposes of discovery [ECF 165] is **GRANTED** as to KaiJet Taiwan, but **DENIED** as to MCT and Star View. KaiJet US must respond to all discovery requests made by Sanho—including all currently-pending and future requests—on behalf of itself and KaiJet Taiwan. Further, the parties' motions for leave to file certain matters under seal [ECF 154; ECF 167; ECF 171; ECF 175] are **GRANTED**.

**SO ORDERED** this the 29th day of July 2020.

Steven D. Grimberg
United States District Court Judge

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| SANHO CORPORATION,<br>Plaintiff,<br>v.<br>KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., *et al.*,<br>Defendants. | Civil Action No.<br>1:18-cv-05385-SDG |

## OPINION AND ORDER

This matter is before the Court on the parties' various dispositive motions, including cross-motions for summary judgment in whole and in part and a motion for judgment on the pleadings. With the benefit of oral argument and for the reasons set forth below, the Court holds as follows:

- Plaintiff Sanho Corporation's motion for partial summary judgment [ECF 439] is **GRANTED**;
- Defendant Kaijet Technology International Corporation, Inc.'s (Kaijet Taiwan) motion for summary judgment [ECF 446] is **GRANTED** as to Sanho's false advertising claim and **DENIED** as to all others;
- Defendant Kaijet Technology International Limited, Inc.'s (Kaijet US) motion for partial summary judgment [ECF 450] is **GRANTED** as to Sanho's false advertising claim and **DENIED** as to all others;
- Defendant Starview Global Limited's motion for summary judgment [ECF 456] is **GRANTED** as to Sanho's false advertising claim and **DENIED** as to all others; and
- Kaijet US and Kaijet Taiwan's motion for judgment on the pleadings [ECF 494] is **DENIED**.

## TABLE OF CONTENTS

I. BACKGROUND .......... 4

II. DISCUSSION .......... 9

A. Kaijet US's Motion for Summary Judgment Is Granted as to False Advertising and Denied as to All Other Claims. .......... 10

1. Factual Disputes Remain as to the Merits of Sanho's Design Patent Infringement Claims. .......... 11

*i.* The '875 Patent .......... 14

*ii.* The '616 Patent .......... 20

*iii.* The '618 Patent .......... 20

*a.* The JCD382 .......... 21

*b.* The JCD389 .......... 23

2. Factual Disputes Remain as to the Merits of Sanho's Lanham Act Claims for Trademark Infringement and Unfair Competition, but not Sanho's False Advertising Claim. .......... 24

*i.* Section 32, Infringement of the '707 Mark .......... 25

*a.* Void *Ab Initio* .......... 25

*b.* Consumer Confusion .......... 27

*ii.* Section 43(a), Unfair Competition .......... 36

*iii.* Section 43(a), False Advertising .......... 37

3. Factual Disputes Remain as to the Merits of Sanho's Copyright Infringement Claim. .......... 39

B. Kaijet Taiwan's Motion for Summary Judgment Is Granted as to False Advertising and Denied as to All Other Claims. .......... 47

1. Kaijet Taiwan Has Engaged in Commerce in the United States. ........ 47

*i.* Patent Law ........ 50

*ii.* Lanham Act ........ 53

*iii.* Copyright law ........ 54

2. The Court Declines to Address Sanho's Theory That Kaijet Taiwan and Kaijet US Are Alter Egos. ........ 55

C. Starview's Motion for Summary Judgment Is Granted as to False Advertising and Denied as to All Other Claims. ........ 57

D. Sanho's Motion for Summary Judgment Is Granted. ........ 59

1. No Reasonable Jury Could Find Sanho Liable for False Advertising. ........ 59

2. No Reasonable Jury Could Find Sanho Liable for False Patent Marking. ........ 62

E. Defendants' Motion for Judgment on the Pleadings Is Denied. ........ 64

III. CONCLUSION ........ 65

## I. BACKGROUND[1]

This procedurally complicated case arises out of an intellectual property dispute between competitors in the MacBook dongle[2] market.[3] Plaintiff Sanho is a tech company headquartered in Fremont, California,[4] that "makes and sells accessories" for electronic devices like laptop computers and mobile phones.[5] Sanho has been selling a series of electronic accessories under the "HyperDrive" name since 2005,[6] including MacBook dongles since 2015.[7]

Defendant Kaijet US, a tech company headquartered in Kennesaw, Georgia,[8] sells a line of competing "UltraDrive" MacBook dongles under the

---

1 Many documents in this case have been filed under provisional seal. The Court will place those documents under permanent seal. Nevertheless, the Court has determined that those portions of the record cited in this Order do not require the protection of a seal.

2 "A dongle is a small piece of computer hardware that connects to a port on another device to provide it with additional functionality." *Dongle*, WIKIPEDIA, https://en.wikipedia.org/wiki/Dongle (last visited May 16, 2024) (emphasis omitted). Common varieties include port adapters (e.g., HDMI to USB-C), data storage devices (i.e., USB drives), and plug-ins that provide wireless connectivity over Wi-Fi or Bluetooth. *Id.*

3 ECF 483-2, at 2, ¶¶ 1, 6.

4 ECF 442, at 24.

5 *Id.* at 20.

6 *Id.* at 29.

7 *Id.* at 31.

8 ECF 502-25, at 3.

"j5create" brand name.[9] Defendants Kaijet Taiwan and Starview—both of which are headquartered in Taiwan[10]—are Kaijet US's suppliers of j5create products.[11] The three Defendants are rather intimately connected. The sole owner of Starview (as of 2021),[12] Yuki Tai, is also a co-founder of Kaijet Taiwan[13] and owns a majority of its stock (as of 2022).[14] Kaijet US was founded in 2011 by Yu-chia Jessica Liu, who was at the time the sole owner of Kaijet Taiwan,[15] and the entities through 2017 had nearly identical names: "Kaijet Technology International Limited" (Kaijet Taiwan) v. "Kaijet Technology International Limited, Inc." (Kaijet US).[16] Kaijet US sells "j5create" products under an oral license from Kaijet Taiwan,[17] for which Kaijet US is an "exclusive distributorship."[18] Starview likewise sells products

---

9 ECF 483-2, ¶ 1; ECF 453-2, ¶¶ 9–13.

10 ECF 502-2, ¶ 9 (Kaijet Taiwan); ECF 479-3, at 23 (Starview).

11 ECF 453-2, ¶ 10 (Kaijet Taiwan); ECF 456-2, ¶ 9 (Starview). For example, Kaijet Taiwan and Starview sell (or previously sold) a j5create product called the JCD382 to Kaijet US [ECF 463-1, at 80, 87], which in turn sells the product in the United States [ECF 453-2, ¶ 13].

12 ECF 463-1, at 77.

13 ECF 448-2, at 4.

14 ECF 479-5, at 7.

15 ECF 466-2, at 14.

16 ECF 488-2, ¶¶ 1–2.

17 ECF 453-4, at 5.

18 ECF 488-2, ¶ 29.

exclusively to Kaijet US (as of 2021), and its owner (Yuki Tai) could not recall Starview selling products to anyone else.[19]

Sanho brings this suit against the entities it believes are responsible for j5create's dongles—more specifically, the MacBook-compatible USB-C hubs[20]—that were sold between 2017 and 2022.[21] Sanho began selling its own HyperDrive hub in late 2016 or early 2017:[22]


[23]

19 ECF 463-1, at 81. Unless otherwise specified, "Defendants" refers collectively to Kaijet US, Kaijet Taiwan, and Starview; "Kaijet Defendants" refers to Kaijet US and Kaijet Taiwan; and "j5create" refers strictly to the brand and not to any party.

20 "A USB hub is a device that expands a single Universal Serial Bus (USB) port into several so that there are more ports available to connect devices to a host system. … [A]n external USB hub can consolidate several everyday devices (like a mouse, keyboard or printer) into a single hub to enable one-step attachment and removal of all the devices." *USB Hub*, WIKIPEDIA, https://en.wikipedia.org/wiki/USB_hub (last visited May 16, 2024) (emphasis omitted).

21 ECF 483-2, ¶¶ 5–6.

22 *Id.* ¶ 2.

23 ECF 491-2, ¶ 110.

Kaijet US began selling the first j5create UltraDrive hub sometime around October 2017:[24]



[25]

Both parties sold their hubs through the big-box electronics retailer Best Buy, in brick-and-mortar stores and online.[26]

Sanho sued Kaijet US in 2018, alleging that j5create had copied various features of its HyperDrive in violation of federal and state intellectual property laws.[27] That case (the First Action), which was initially filed in California, was transferred to this district,[28] and the complaint was twice amended: to substitute Georgia state law claims for California state law claims[29] and then to add Kaijet Taiwan as a party defendant.[30] Sanho then filed a second suit (the Second Action) in this district, arising out of the same facts but asserting novel claims against a

---

24 *Id.* ¶ 53.

25 *Id.* ¶ 110.

26 *Id.* ¶ 107.

27 ECF 1.

28 ECF 24.

29 ECF 39.

30 ECF 89.

larger group of defendants: Kaijet US, Kaijet Taiwan, Starview, and former Defendant Magic Control Technology.[31] Counterclaims were asserted in both cases.[32] The two cases were subsequently consolidated into one docket; however, they remain separate cases, each with its own operative complaint.[33]

Magic Control was subsequently dismissed under Rule 12(b)(6),[34] and all claims and counterclaims concerning one of Sanho's patents—U.S. Patent No. 10,572,429—were voluntarily dismissed,[35] leaving the following:

- *Under patent law*: Sanho's patent infringement claims, and Defendants' patent noninfringement, patent invalidity, and false patent marking counterclaims, involving the '875,[36] '616,[37] '618,[38] and '290[39] Patents;[40]

---

31 ECF 418, ¶¶ 8–10; *Sanho Corp. v. Kaijet Tech. Int'l Ltd., Inc.*, No. 1:20-cv-02150-TCB (N.D. Ga. May 19, 2020) (the 2150 Case), ECF 1.

32 ECF 115; 2150 Case, ECF 24.

33 ECF 196.

34 ECF 267, at 2.

35 ECF 425, at 2.

36 The '875 Patent refers to U.S. Design Patent No. D813,875.

37 The '616 Patent refers to U.S. Design Patent No. D855,616.

38 The '618 Patent refers to U.S. Design Patent No. D644,618.

39 The '290 Patent refers to U.S. Design Patent No. D807,290.

40 Technically, Kaijet Taiwan has asserted patent law counterclaims only for '875 and '616 Patent noninfringement and invalidity. In addition, Starview is only a party to claims and counterclaims asserted in the Second Action. Thus, under patent law, Starview is a Defendant only for purposes of Sanho's '618 and '290 Patent infringement claims, and has asserted counterclaims only for '618 and '290 Patent invalidity and for false patent marking.

- *Under the Lanham Act* (the federal trademark statute): Sanho's trademark infringement claim and Defendants' trademark noninfringement counter-claim, both involving the '707 Mark, as well as Sanho's unfair competition and false advertising claims and Defendants' false advertising counter-claims;[41]

- *Under the Copyright Act*: Sanho's copyright infringement claim and Defendants' copyright noninfringement counterclaim, both involving the '336 Copyright;[42] and

- Sanho's Georgia law claims.[43]

Pending before the Court are five dispositive motions—four for summary judgment, and one for judgment on the pleadings—addressing many, but not all, of these claims and counterclaims.

## II. DISCUSSION

Defendants move for summary judgment on all of Sanho's federal claims save one (infringement of the '290 Patent), and the Kaijet Defendants additionally move for judgment on the pleadings on all of Sanho's state law claims. Sanho in

---

41 The '707 Mark refers to U.S. Trademark Registration No. 5,442,707. Technically, under the Lanham Act, Starview is a party only for purposes of Sanho's false advertising claim.

42 The '336 Copyright refers to U.S. Copyright Registration No. VA 2-103-336. Technically, Starview is not a party to any claims or counterclaims arising under the Copyright Act.

43 Starview is not a party to any of Sanho's state law claims.

turn moves for summary judgment on Defendants' false patent marking and false advertising counterclaims. Each will be addressed in turn.[44]

**A. Kaijet US's Motion for Summary Judgment Is Granted as to False Advertising and Denied as to All Other Claims.**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a). A fact is "material" if it could change the outcome of the case, and a dispute is "genuine" if a reasonable jury could resolve it in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The purpose of summary judgment is to test "the need for a trial"—to look for "factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. Thus, at summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. Judges are not to weigh evidence, determine credibility, or draw their own inferences from the facts, these being the proper functions of the jury. *Id.*

---

[44] The Court notes that the parties have mixed and matched arguments and briefs in what can only be explained as a poor end-run around the Court's page limits, which the Court has already enlarged. ECF 430. Thus, Kaijet US has, technically, neither moved for nor argued for summary judgment on Sanho's false advertising and copyright infringement claims, that task having apparently been delegated to Kaijet Taiwan. ECF 502, at 2. Likewise, Sanho addresses the merits of its false advertising claim in its response to Starview's motion, even though Starview does not contest that claim on its merits. ECF 456-1, at 2.

**1. Factual Disputes Remain as to the Merits of Sanho's Design Patent Infringement Claims.**

Sanho claims that certain models of j5create's UltraDrive hubs infringe its design patents, as follows:

- '875 Patent: Allegedly infringed by j5create model JCD382;
- '616 Patent: Allegedly infringed by the JCD382;
- '618 Patent: Allegedly infringed by the JCD382 and JCD389; and
- '290 Patent: Allegedly infringed by the JCD348,[45] JCD386, and JCD388.[46]

Kaijet US moves for summary judgment with respect to the JCD382 and JCD389 products—in other words, on Sanho's design patent infringement claims as to the '875, '616, and '618 (but not '290) Patents.[47]

The gist of a design patent infringement claim is that two things look the same: that the defendant's product design (the "accused design") produces the same "effect upon the eye" as the plaintiff's patent-protected product design

45 The parties at times refer, in the context of Sanho's '290 Patent infringement claim, to "JCD324" instead of "JCD348." E.g., ECF 453-1, at 16. But there is no other indication that "JCD324" is a product accused of infringement in this case. The Court thus construes "JCD324" as a typo for "JCD348."

46 ECF 418, ¶ 16; ECF 453-2, ¶ 1.

47 ECF 504, at 2. Kaijet US purports to move for summary judgment on Sanho's '290 Patent infringement claim as to the JCD382. *Id.* However, the operative complaint does not allege infringement of the '290 Patent by the JCD382. ECF 418, at 9. The Court accordingly treats that claim as withdrawn.

(the "claimed design*"). Gorham Mfg. Co. v. White*, 81 U.S. 511, 526 (1871). The well-established legal standard for design patent infringement, as recently re-articulated by an *en banc* Federal Circuit,[48] is the so-called "ordinary observer" test. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (*en banc*). That test asks whether "a purchaser familiar with the prior art"—that is, a purchaser reasonably familiar with the kind of products at issue, *id.* at 675—would be so "deceived by the similarity between the claimed and accused designs" as to "purchase one supposing it to be the other," *id.* at 683. Under the ordinary observer test, even if the accused and claimed designs differ "in details of ornament," the one infringes the other if "they are still the same in general appearance and effect, so much alike that in the market and with purchasers they would pass for the same

---

[48] Because the Federal Circuit has near-exclusive jurisdiction over appeals from district court cases arising "in whole or in part" under federal patent law, *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 829 (2002) (quoting 28 U.S.C. § 1295(a)(1)), the Court will apply Federal Circuit law to this case. In accordance with that law, the Court will apply Federal Circuit precedent to federal patent law claims and to federal patent law preemption issues. *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004) ("We apply Federal Circuit law not only to the patent issues but also in deciding whether the patent laws preempt a state-law tort claim."). The Court will apply Eleventh Circuit precedent to all other issues. *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003) (applying the law of the regional circuit for claims that "do not present questions that are intimately involved with the substance of the patent laws.").

thing—so much alike that even persons in the trade would be in danger of being deceived." *Id.* at 670 (quoting *Gorham*, 81 U.S. at 531).

In some instances, the difference between the claimed and accused designs will be obvious: They will, in the words of *Egyptian Goddess*, be "plainly dissimilar," or "sufficiently distinct." *Id.* at 678. That is, the two designs will be so different that no observer—no matter how unfamiliar with the products at issue—could confuse one for the other. In those instances, there will be no infringement. *Id.* However, "[i]n other instances, when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art." *Id.* As the Federal Circuit explained, establishing a "frame of reference consist[ing] of numerous similar prior art designs … can highlight the distinctions between the claimed design and the accused design as viewed by the ordinary observer." *Id.* at 677. An observer who has seen enough "closely similar prior art designs" may find significant design differences between two products that, to the unaccustomed eye, look the same. *Id.* at 676.

Significantly, *Egyptian Goddess* put the burden of *producing* relevant prior art on the *defendant*, reasoning that the defendant would be incentivized to produce prior art that most effectively highlights the differences between the claimed and

accused designs. *Id.* at 678–79. Thus, *Egyptian Goddess* suggests that, where the claimed and accused designs are not plainly dissimilar, and where the defendant has not met its burden of providing the necessary context to distinguish between them, the defendant is not entitled to summary judgment. Under that principle, Kaijet US is not entitled to summary judgment on any of Sanho's design patent infringement claims.

**_i._ The '875 Patent**

Sanho claims that its '875 Patent (left) is infringed by the j5Create JCD382 (right):



FIG. 7 [49]




[50]

The '875 Patent, like all design patents, protects only the "ornamental features" of Sanho's product design, and not its "broader general design concept." *OddzOn Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). The '875 patent, in other words, does not protect the abstract, high-level concept of a cordless MacBook hub. Nor does a design patent encompass a product's *functional* aspects.

---

49 ECF 504-19, at 113.

50 *Id.* at 19.

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1333 (Fed. Cir. 2015). For example, the flat head of a hammer, designed to allow the hammer to "deliver force to a struck object," is functional and outside of a design patent's scope. *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1294 (Fed. Cir. 2010).

Here the '875 Patent's two male ports (depicted above as protruding from the hub on the far side), which connect the hub to the MacBook, are functional—but the placement of the male ports relative to the body of the hub is ornamental. Likewise, the inclusion of particular female ports (e.g., USB or USB-C) is integral to the hub's port-adapting function—but the female ports' placement and distribution on the body of the hub is ornamental. And though functional concerns set certain parameters on the '875 Patent's physical shape (the side with the male ports must be straight, so as to lie flush against the side of the MacBook when the hub is plugged in; the bottom of the hub must not extend out too far, lest it destabilize the MacBook when it is placed on a desk or table), the '875 Patent's sleek and narrow build is primarily an ornamental feature.

Focusing solely on the '875 Patent's ornamental features does not eliminate the resemblance between it and the JCD382. From undersigned's untrained perspective, the two designs look alike: they are both flat, thin, and rectangular, much longer than they are wide, with rounded corners and squared-off sides. On both, the male ports are positioned about a quarter of the way along one of the

long sides; and the female ports are similarly positioned either along the other long side or at the end.

Kaijet nevertheless moves for summary judgment on the grounds that the JCD382's tapered ends (top) give it a "plainly dissimilar shape" from the '875 Patent (bottom):[51]



[52]



[53]

The Court does not agree. Surely, an ordinary observer could reasonably find that the designs are at least *similar*. The ordinary observer is defined, not as an expert, but as the "principle purchaser[ ]" of the products in questions. *Gorham*, 81 U.S. at 528. Here, that means the typical MacBook owner: a large and varied class to which the Court is hesitant to ascribe any special eye for product design. And to the ordinary eye, Sanho's and j5create's designs look alike, with similar proportions, similar profiles, and similar distributions of ports. It is possible to imagine going to the store to buy one and accidentally coming home with the other. The JCD382's tapering is certainly a point of distinction, and not the only one; nevertheless, it is

51 ECF 453-1, at 21.

52 ECF 504-19, at 112.

53 *Id.*

an insufficient basis for the Court to declare the two designs plainly dissimilar to the ordinary observer as a matter of law.

The Federal Circuit case law that Kaijet US cites on this point is not dispositive. Kaijet US argues that the Federal Circuit's decisions in *Ethicon* and *Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, 836 F. App'x 895 (Fed. Cir. 2020), require a ruling of plain dissimilarity.[54] In *Ethicon*, the Federal Circuit affirmed a lower court's determination that the surgical devices pictured below were "plainly dissimilar" as a matter of law:



D'804 patent, Fig. 1




Covidien's accused product[55]

796 F.3d at 1335. The appellate court explained that the two designs *were* similar at the functional and conceptual levels: as surgical devices having handles, triggers, buttons, and torque knobs. *Id.* at 1336. But that was where the similarity ended: at the *ornamental* level, the devices differed at virtually every point, beginning with the contrast between the "overall contoured shape" of the claimed

---

54 ECF 453-1, at 18–21.

55 *Id.* at 11.

design (left) and the "overall linear shape" of the accused design (right). *Id.* The *Ethicon* court also identified plainly visible differences between the curvature of the two designs' handles and triggers, the shape of their buttons, and the molding of their torque knobs. *Id.* at 1336–37. These differences were amplified by the fact that the ordinary purchasers of the surgical products at issue were either hospital administrators or surgeons: in either case, people "who are more sophisticated than the general public." *Id.* at 1337. Here, by contrast, the '875 Patent and the JCD382 are similar not only in function and conception but in particular ornamentation, and their ordinary purchasers are the general public. *Ethicon* does not control the outcome here.

Neither does *Super-Sparkly*, in which the Federal Circuit distinguished between two rhinestone-encrusted pepper-spray canisters. 836 F. App'x at 898. The claimed design in *Super-Sparkly* was "very simple": a cylinder covered with rhinestones both on the sides and on the bottom. *Id.* In light of that simplicity, the appellate court ruled that the accused design, which featured a cylinder covered with rhinestones on the sides but not the bottom, was "plainly dissimilar." As the appellate court reasoned, where the claimed design has two ornamental features, and the accused design changes one of them, the latter does not infringe the design patent protecting the former as a matter of law. *Id.* That reasoning does not necessitate a particular result here, where the similarities between the '875 Patent

and the JCD382 both qualitatively and quantitatively exceed the differences. In addition, *Super-Sparkly* buttressed its determination of plain dissimilarity by comparing both the claimed and accused designs with closely similar prior art. *Id.* at 898–99. Here, where Kaijet US has not met its burden under *Egyptian Goddess* to produce prior art that highlights the distinctiveness of the JCD382, no such comparison can be made. Because a jury question remains as to whether a purchaser familiar with the prior art would be deceived by the similarity between the '875 Patent and the JCD382s, summary judgment as to Sanho's '875 Patent infringement claim is denied.

### *ii.* The '616 Patent

Sanho claims that its '616 Patent (left) is infringed by the JCD382 (right).

FIG. 1


[56]



[57]

The '616 Patent is similar to the '875 Patent: so similar that Kaijet US's brief treats them interchangeably for purposes of the JCD382 infringement analysis.[58] Thus, having found that a jury question as to infringement exists for purposes of the JCD382 and the '875 Patent, the Court concludes for the same reasons that a jury question as to infringement exists for purposes of the JCD382 and the '616 Patent.

### *iii.* The '618 Patent

Sanho claims that its '618 Patent is infringed by the j5Create JCD382 and JCD389. The Court denies summary judgment as to both models.

---

56 ECF 504-19, at 102.

57 *Id.* at 19 (rotated 180°).

58 ECF 453-1, at 20–21.

***a.*** **The JCD382**

Sanho's '618 Patent is similar to the '875 and '616 Patents discussed above, but features tapering on the ends: it looks, in other words, something like the JCD382:



Fig. 7 [59]




[60]

Kaijet US agrees that the '618 Patent (left) and the JCD382 (right) are similar in "general shape."[61] Nevertheless, it identifies various differences between the two designs—relative length, arrangement of ports, material composition—that, in its view, make the JCD382 "plainly dissimilar."[62] Kaijet also argues that the JCD382 does not infringe the '618 Patent because the '618 Patent is more similar to prior art—specifically, the CN728 Patent—than to the JCD382.[63] This argument is, in effect, one under *Egyptian Goddess*: that, in light of the similarities between various products in the MacBook-hub market, the otherwise subtle design differences

59 ECF 504-19, at 120.

60 *Id.* at 19.

61 ECF 453-1, at 22.

62 *Id.* at 23.

63 *Id.*

between the ‘618 Patent and the JCD382 are significant in the eyes of the hypothetical purchaser. Sanho, in response, asserts that the CN728 Patent is not prior art because it and the ‘618 Patent share an inventor.[64] Kaijet did not address this assertion in its reply brief, nor has it asserted the absence of a factual dispute on the issue of whether the CN728 Patent is prior art to the ‘618 Patent.[65] Thus, Kaijet has not met its burden of production under *Egyptian Goddess* to identify relevant prior art. Nor does the Court find as a matter of law that the ‘618 Patent and the JCD382 are plainly dissimilar. The Court accordingly declines to grant summary judgment on Sanho’s ‘618 Patent infringement claim as to the JCD382.

---

64 ECF 470-1, at 25 n.17 (citing 35 U.S.C. § 102(b)).

65 *See* ECF 491-1.

### *b.* The JCD389

Sanho also claims that the '618 Patent (left) is infringed by the JCD389 (right):



Fig. 7 [66]




[67]

The asserted difference between the two designs is, again, tapering: the '618 Patent (top) is tapered on the ends, while the JCD389 (bottom) is tapered on the sides.



[68]



[69]

Kaijet US argues that this difference in tapering gives the JCD389 a "distinctly different shape" than the '618 Patent.[70] But for the same reasons given in this Order's discussion of the '875 Patent and the JCD382,[71] the Court declines to rule

---

[66] ECF 504-19, at 120.

[67] *Id.* at 26.

[68] *Id.* at 132.

[69] *Id.*

[70] ECF 453-1, at 21.

[71] *See supra* subsection II.A.1.i.

that the two designs are plainly dissimilar as a matter of law, and thus declines to grant summary judgment on Sanho's '618 Patent infringement claim.

In other words, all of Sanho's patent infringement claims will proceed to trial. The Court notes that some arguments that Kaijet US has raised to contest Sanho's patent infringement claims are better considered in the patent validity context. For example, Kaijet US's point is well taken that Sanho's design patents seem more similar to each other than to Kaijet US's allegedly infringing products.[72] The Court also questions how a single product—the j5create JCD382—could realistically infringe on three of Sanho's design patents at the same time.[73] These arguments do not impact the Court's infringement analysis, and are not taken up in this Order because neither party has moved for summary judgment on Kaijet US's invalidity counterclaims. They may, of course, be relevant when all of the claims and all of the evidence are before the jury come trial.

#### 2. Factual Disputes Remain as to the Merits of Sanho's Lanham Act Claims for Trademark Infringement and Unfair Competition, but not Sanho's False Advertising Claim.

Kaijet US moves for summary judgment on Sanho's three Lanham Act claims: infringement of the '707 Mark, unfair competition, and false advertising. The Court grants summary judgment only on the false advertising claim.

---

72 ECF 491-1, at 11.

73 *Id.*

### *i.* Section 32, Infringement of the '707 Mark

Sanho claims that its '707 Mark in "HyperDrive" has been infringed by j5create's use of "UltraDrive" in violation of § 32 of the Lanham Act (codified at 15 U.S.C. § 1114). To prevail under § 32, "the plaintiff must show, first, that its mark is valid and, second, that the defendant's use of the contested mark is likely to cause confusion." *Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989). Kaijet argues that Sanho's trademark infringement claim fails as a matter of law because (a) the '707 Mark is void *ab initio* after Sanho failed to use it in interstate commerce, and (b) no jury could reasonably find a likelihood of consumer confusion between "HyperDrive" and "UltraDrive." These arguments are rejected.

#### *a.* Void *Ab Initio*

The Lanham Act "permits registration of a trademark 'used in commerce.'" *Gay Toys, Inc. v. McDonald's Corp.*, 585 F.2d 1067, 1068 (C.C.P.A. 1978) (quoting 15 U.S.C. § 1051(a)(1)). "The registration of a mark that does not meet the use requirement is void *ab initio*." *Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1357 (Fed. Cir. 2009). Here, Sanho's registration of the '707 Mark was predicated on its use of the mark in commerce in connection with the following goods:

> [C]omponents for personal computers, tablet computers, MP3 players, cell phones and smart phones, namely,

> electrical power cords, *power adapters*, and batteries; styluses and covers for tablet computers.[74]

Kaijet US argues that the products in connection with which Sanho used the '707 Mark—the HyperDrive hubs[75]—are not power cords, power adapters, batteries, styluses, or tablet computer covers, and that the '707 Mark was therefore never used in commerce and was never valid.[76] Sanho responds that its hubs are, in fact, "power adapters," and that its use of "HyperDrive" in connection with its hubs satisfies the Lanham Act's use requirement.[77] In short, the validity of Sanho's '707 Mark depends on whether HyperDrive hubs are "power adapters."

The Court, at this stage, declines to rule as a matter of law that they are not. As Sanho points out, its hubs can be used "to transmit[ ] power from a 'source' (MacBook Pro) to a 'sink' (a cell phone being charged)."[78] Sanho has provided both evidence showing that similar products are marketed as power adapters, and expert testimony that devices facilitating the transmission of power from laptops

---

74 ECF 471-1, ¶ 34 (emphasis added).

75 *Id.* ¶ 37.

76 ECF 453-1, at 25–26.

77 Sanho also argues that it satisfied the Lanham Act's use requirement by selling "computing components *having* power delivery, batteries, and power cords." ECF 470-1, at 27 (emphasis added). The Court rejects that argument: selling a product *incorporating* *x* is not equivalent to selling *x*. A dealership selling white-painted cars cannot reasonably be characterized as selling white paint.

78 ECF 470-1, at 27.

to "connected downstream ports" can properly be classified as power adapters.[79] This evidence creates a jury question on whether Sanho's hubs are power adapters, and thus on whether Sanho's mark is void *ab initio*.

#### ***b.*** **Consumer Confusion**

Kaijet US argues that, even if the '707 Mark is valid, it still cannot be liable for trademark infringement because no jury could reasonably find that "UltraDrive" is similar enough to "HyperDrive" to cause consumer confusion.[80] To analyze the likelihood of consumer confusion, the Eleventh Circuit looks to the following factors:

1. Strength of the mark;
2. Similarity of the mark;
3. Similarity of the products;
4. Similarities of retail outlets and customers;
5. Similarity of advertising media;
6. Defendant's intent; and
7. Actual confusion.

*Tana v. Dantanna's*, 611 F.3d 767, 779 (11th Cir. 2010). Of these, the first (strength of the mark) and seventh (actual confusion) are the most important, but the Court must "[e]valuat[e] the overall balance" of all seven. *Frehling Enters., Inc. v. Int'l*

---

79 ECF 512-4, ¶ 33.

80 ECF 453-1, at 26.

*Select Grp., Inc.*, 192 F.3d 1330, 1335, 1342 (11th Cir. 1999). Here, a reasonable jury could find that the balance of the factors supports a finding in Sanho's favor on the likelihood of consumer confusion.

*First*, strength of the mark: Marks are categorized as "strong" or "weak" depending on their distinctiveness. *Tana*, 611 F.3d at 774. The Eleventh Circuit recognizes the following four categories of marks, from weakest to strongest:

- Generic: marks that "refer to a class of which an individual [article or] service is a member (e.g., 'liquor store' used in connection with the sale of liquor)." *Frehling*, 192 F.3d at 1335.

- Descriptive: marks that "describe a characteristic or quality of an article or service (e.g., 'vision center' denoting a place where glasses are sold)." *Id.*

- Suggestive: marks that "require an effort of the imagination by the consumer in order to be understood as descriptive" (e.g., "penguin" in connection with refrigerators). *Id.*

- Arbitrary: marks that "bear[ ] no relationship to the product (e.g., 'Sun Bank' is arbitrary when applied to banking services)." *Id.*

In addition, a mark is stronger the less that third parties use it. *Id.* at 1336.

Here, a jury could reasonably find that the '707 Mark is strong. "HyperDrive" is not generic, as it is not a class of products. Nor is it descriptive, because a hub is not a "drive" in the common computing sense: it is neither "[a]n apparatus for reading and writing data to or from a mass storage device," nor the

mass storage device itself.[81] "HyperDrive" is, rather, either suggestive or arbitrary. It could be suggestive, if consumers understand "drive" as connoting a portable piece of computer hardware and "hyper" as connoting something that is modern, advanced, or fast. Or it could be arbitrary, if consumers make the connection between "HyperDrive" and the Star Wars franchise and understand the word as invoking intergalactic adventure.[82] The suggestive or arbitrary nature of the '707 Mark gives it inherent distinctiveness and, accordingly, inherent strength. *Tana*, 611 F.3d at 774.

Moreover, the strength of the '707 Mark is not significantly reduced by third party use, for two reasons. First, third-party use of the '707 Mark's component words "hyper" and "drive" (or of their homophones) is not probative of strength. As the Eleventh Circuit has explained: "[T]he significance of third-party use depends on the *entire* name a third party uses." *Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Ord. of Saint John of Jerusalem, Knights of Malta, The Ecumenical Ord.*, 809 F.3d 1171, 1186 (11th Cir. 2015) (emphasis in original). Thus, other trademark registrations that "use *parts* of [Sanho]'s word," *id.* (emphasis in original)—those

81 *Drive*, WIKTIONARY https://en.wiktionary.org/wiki/drive (last visited May 16, 2024) (noun entries 12–13).

82 ECF 512-1, ¶¶ 6–7.

"utilizing the segment 'Hyper,'" or "utilizing the term 'drive,'"[83]—are "not persuasive evidence of third-party use," *id.* Second, third-party use of "HyperDrive" in connection with *unrelated* products is not probative of the '707 Mark's strength. Kaijet US points out that homophonic trademark registrations exist for the following products: (1) a mobile app for "analyzing, optimizing, and gamifying the operation of motor vehicles";[84] (2) a different mark for the same product;[85] (3) a software license that "allows users to manage large volumes of geospatial data";[86] (4) "servers for delivery of data to networked consumers";[87] (5) "centrifuges for laboratory use";[88] and (6) electrical controls for use "in power engine systems."[89] But because "[n]one of these instances … occupies the same commercial field" as the HyperDrive, none of them "weaken the distinctiveness of [Sanho]'s mark." *Superior Consulting Servs., Inc. v. Shaklee Corp.*, 710 F. App'x 850, 855 (11th Cir. 2017). The first factor thus weighs in Sanho's favor.

---

83 ECF 453-1, at 29.

84 ECF 504-12, at 4.

85 *Id.* at 5.

86 *Id.* at 8.

87 *Id.* at 10.

88 *Id.* at 12.

89 *Id.* at 15.

*Second*, similarity of the marks: Similarity is determined by comparing the marks' appearances, sounds, meanings, and manners of use. *Sovereign Mil.*, 809 F.3d at 1186. In assessing similarity, the factfinder must consider the "overall impression created by the mark as a whole," and refrain from "simply comparing individual features." *Id.* Here, this factor is not decisive. The marks are dissimilar in appearance:

HYPER DRIVE[90] UltraDrive[91]

They are, however, similar in sound, meaning, and usage. The words have a similar structure—a two-syllable prefix followed by the word "drive"—and produce a similar effect on the ear. The words have a similar meaning, "hyper" and "ultra" being roughly synonymous.[92] And the words are used in the same way: as product names for similar-looking MacBook hubs presumably sold side-by-side in the same stores. How the dissimilarity in appearance weighs against the similarity in sound, meaning, and usage is an appropriate question for the jury.

---

90 ECF 461-1, at 23 (cropped).

91 *Id.* at 19 (cropped).

92 *Compare hyper-*, Oxford Eng. Dictionary, https://www.oed.com/dictionary/hyper_prefix (last visited May 16, 2024) ("over, beyond, or above"), *with ultra-*, Oxford Eng. Dictionary, https://www.oed.com/dictionary/ultra_prefix (last visited May 16, 2024) ("going beyond, surpassing, or transcending the limits of").

*Third*, similarity of the products: Products are similar if they "are so related in the minds of consumers that they get the sense that a single producer is likely to put out both goods." *Frehling* 192 F.3d at 1338. The question is not whether the products themselves are "readily distinguish[able]," but whether the products could "emanate from the same source." *Id.* Thus, the Eleventh Circuit has found that wine and brandy were similar when "it was not unreasonable to conclude that a maker of wine could also produce brandy." *Id.* (citing *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985)). By that metric, the "HyperDrive" and "UltraDrive" products are indisputably similar. The third factor accordingly weighs in Sanho's favor.

*Fourth*, similarity of retail outlets and customers: This factor focuses on "where, how, and to whom the parties' products are sold." *Id.* at 1339. That the products are sold in the same stores is strong evidence of likelihood of confusion. *Id.* Here, where the "HyperDrive" and "UltraDrive" products are sold in the same stores (Best Buy), in the same way (physically and online), and to the same customers, this factor weighs in Sanho's favor.

*Fifth*, similarity of advertising media: The test is "whether there is likely to be significant enough *overlap in the readership* of the publications in which the parties advertise that a possibility of confusion could result." *Id.* at 1340 (emphasis added). Thus, Sanho's evidence that it and j5create both advertise "online via web

sites and social media" is not dispositive without a reasonable inference of readership overlap.[93] However, as the party moving for summary judgment, it is Kaijet US's burden to assert that the undisputed evidence compels a finding in its favor on this factor, which it has failed to do. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This factor accordingly weighs against the grant of summary judgment.

*Sixth*, Kaijet US's intent: The relevant intent is the defendant's "intent of deriving benefit from the reputation of the plaintiff" in adopting its mark, which can be inferred from direct or circumstantial evidence. *Sovereign Mil.*, 809 F.3d at 1188. Helpful here is the Eleventh Circuit's discussion of intent in *J-B Weld Co., LLC v. Gorilla Glue Co.,* 978 F.3d 778 (11th Cir. 2020). There, the Eleventh Circuit clarified the distinction between "[i]ntent to benefit from a competitor's goodwill" and "intent to copy." *Id.* at 790. On one hand, the two intents are different, and only the *former* is probative of the dispositive question of consumer confusion. *Id.* (quoting *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1293 (11th Cir. 2018)). On the other hand, the *same* evidence may be, and often is, probative of both. *Id.* As the appellate court explained: "[A] finder of fact may … infer intent to benefit from a competitor's goodwill … from evidence of intent to copy." *Id.* In *J-B Weld*, the defendant had, in internal emails, "repeatedly

---

93 ECF 470-1, at 36.

referenced" the plaintiff's design and "expressed a desire to use similar elements" in its own product, and had designed its own product "with the knowledge that it would be sold on shelves near [the plaintiff's product] in retail stores." *Id.* at 790, 792. *J-B Weld* held that "[t]his evidence of [the defendant]'s intent to copy creates an inference that [the defendant] intended to capitalize on [the plaintiff]'s goodwill, and that evidence is probative of the likelihood of confusion issue." *Id.* at 792.

The Court here follows the Eleventh Circuit's *J-B Weld* analysis in ruling that the sixth factor favors Sanho. Sanho has presented similar circumstantial evidence of Kaijet US's intent to copy as did the plaintiff in *J-B Weld*: email communications repeatedly referencing Sanho's design, and expressing a desire to use similar elements in its own product.[94] Sanho, moreover, has compelling evidence of Kaijet US's intent to copy that the *J-B Weld* plaintiff did not: evidence that Kaijet US changed its existing product name from "ultrastation" to "UltraDrive"—in effect conforming it more closely to the trademark-protected "HyperDrive"—*after* Sanho began selling its hubs, and as Kaijet US was preparing to introduce a competing product into the same market.[95] As in *J-B Weld*, this evidence of Kaijet US's intent

[94] ECF 491-2, ¶¶ 40–47.

[95] *Id.* ¶¶ 51–59.

to copy supports the reasonable inference that Kaijet US intended to capitalize on Sanho's goodwill, and is probative of the likelihood of consumer confusion.

*Seventh*, consumer confusion: "Evidence of actual confusion is the best evidence of a likelihood of confusion." *Frehling*, 192 F.3d at 1340. This factor tends to work in the plaintiff's favor: lack of actual confusion does not doom his case, "but even a very little amount of it is highly probative" of the likelihood of consumer confusion. *Sovereign Mil.*, 809 F.3d at 1189. The Eleventh Circuit affords courts significant discretion in analyzing this factor "in light of the particular facts of each case." *Frehling*, 192 F.3d at 1340. Here, the relevant evidence is limited and hotly contested. Sanho asserts that the evidence shows customer emails and product returns consistent with actual confusion.[96] Kaijet US asserts that Sanho's evidence boils down to a handful of "misdirected" consumer complaints and computer-system glitches that cannot support the inference of actual confusion.[97]

The Court need not weigh evidence under the seventh factor now, however, because the likelihood of consumer confusion will be decided by a jury. The first (strength of the mark), third (similarity of products), fourth (similarity of outlets and consumers), and sixth (defendant's intent) factors weigh in varying degrees in Sanho's favor, while the second factor (similarity of the marks) is best decided

96 ECF 470-1, at 38.

97 ECF 491-1, at 18; *see* also ECF 453-1, at 36–37.

by a jury and the fifth (similarity of advertising media) is not contested by Kaijet US at summary judgment. Even without strong evidence of actual confusion under the seventh factor, the balance of the other six clearly precludes the grant of summary judgment in Kaijet US's favor. Because factual disputes remain both as to (a) the validity of Sanho's trademark and (b) the likelihood of consumer confusion between "HyperDrive" and "UltraDrive," Sanho's trademark infringement claim will proceed to trial.

#### *ii.* Section 43(a), Unfair Competition

In addition to its § 32 trademark infringement claim, Sanho brings a claim under § 43(a) of the Lanham Act for unfair competition (codified at 15 U.S.C. § 1125(a)), which, as the parties seem to agree, can be premised on federal trademark infringement.[98] *See Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 858 (1982) ("[Section] 43(a) prohibits a broader range of practices than does § 32."). Thus, Sanho's § 32 trademark infringement and § 43(a) unfair competition claims will proceed to trial together.[99]

---

[98] ECF 453-1, at 39–40 ("The test for unfair competition is the same as that of trademark infringement."); ECF 89, ¶ 77 (bringing § 43(a) unfair competition claims based on "infringe[ment] on the 707 Mark").

[99] Sanho argues three alternative theories of liability for its § 43(a) unfair competition claim: (1) liability based on federal trademark infringement, (2) liability based on trade dress infringement, and (3) liability based on common law trademark infringement. ECF 470-1, at 43–45. Because the Court rules that summary judgment is inappropriate as to (1), it declines to address the merits of (2) and (3). The Court notes, however, that it does not identify

#### *iii.* **Section 43(a), False Advertising**

Sanho's third and final Lanham Act claim asserts that j5create falsely advertised the JCD382 as an "8-in-1" product, when it contains only seven ports.[100] False advertising is actionable under § 43(a) of the Lanham Act for statements that are either (1) "literally false" or (2) "literally true, but misleading." *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1308 (11th Cir. 2010). This distinction is legally significant because it impacts the plaintiff's burden of production: for literally false advertisements, no evidence of consumer deception is required; but for literally true but misleading advertisements, the plaintiff *must* "present evidence of deception," often "in the form of consumer surveys, market research, [or] expert testimony." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1261 (11th Cir. 2004). To evaluate literal falsity, courts must "analyze the message conveyed [by the advertisement] in full context, and … view the face of the statement in its entirety." *Osmose*, at 1308. The line between literally false and simply misleading statements

---

allegations in either of Sanho's operative complaints that would put Kaijet US on notice that a common law trademark infringement claim is being asserted against it. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

[100] ECF 479-1, at 22. As noted above, Sanho argues the merits of its false advertising claim in its brief opposing Starview's motion for summary judgment. *Supra* note 44.

can be thin, but, as a general rule, the more ambiguous a statement is, the less likely it is to be literally false.

Here, the Kaijet Defendants[101] move for summary judgment on the grounds that (1) "8-in-1" is not literally false because the JCD382 has eight *functions* (if only seven ports), and (2) Sanho cannot prevail on a "literally true but misleading" theory because it has produced no evidence of consumer confusion.[102] The Court agrees. First, "8-in-1" is too ambiguous—too "susceptible to multiple meanings," *id.* at 1309—for the Court to declare it literally false. At issue are the eight numbered labels pictured below:




[103]

The numbers might be read as counting ports—in which case "8-in-1" would be literally false. But the Court agrees with the Kaijet Defendants that the numbers

---

101 As noted above, Kaijet Taiwan is the only party that has moved for and argued for summary judgment on Sanho's false advertising claim. *Supra* note 44. The Court nevertheless takes up the merits of that claim here, in the context of Kaijet US's motion for summary judgment, so that the merits of Sanho's claims might be analyzed together. For purposes of this claim, the moving parties are the "Kaijet Defendants."

102 ECF 502-1, at 33–35.

103 ECF 461-1, at 30 (cropped).

may also be read as "count[ing] out the eight functions" of the JCD382.[104] And the labels do, in fact, count out eight functions. Several of those functions do seem duplicative—(5) and (6) are both labeled "USB 3.0.," (7) and (8) are both labeled "Memory Card"—but that suggests the labels are misleading, not literally false. More to the point, because "8-in-1" can be reasonably construed as referring either to ports or to functions, the statement is ambiguous—and thus not literally false, but at best misleading.

Moreover, Sanho has failed to present evidence of customer confusion, which it needs to prevail on a false advertising claim premised on a misleading statement. The Court accordingly grants summary judgment to the Kaijet Defendants on Sanho's false advertising claim.

### 3. Factual Disputes Remain as to the Merits of Sanho's Copyright Infringement Claim.

Sanho claims that the Kaijet Defendants[105] infringed its '336 Copyright by misappropriating protected elements of its product packaging.[106] Copyright infringement has two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc.*

---

[104] ECF 502-1, at 34.

[105] Here again, Kaijet Taiwan is the only party that has moved for and argued for summary judgment. *See supra* note 101.

[106] ECF 460-1, at 29.

*v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The Kaijet Defendants move for summary judgment on the second element, asserting that it did not copy "any *protectable* elements of Sanho's copyrighted work."[107]

In analyzing copying, the Eleventh Circuit begins with the threshold issue of whether the defendant has access to the plaintiff's work. With access, the plaintiff can prove copying by showing that the defendant's work is "substantially similar" to his own. *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010). Lacking access, the plaintiff must meet the higher burden of proving that the defendant's work is "strikingly similar" to his own. *Id.* In the Eleventh Circuit, a "reasonable opportunity to view" the copyrighted work constitutes access. *Herzog v. Castle Rock Ent.*, 193 F.3d 1241, 1249 (11th Cir. 1999) (per curiam).

Here, a factual dispute exists as to whether the Kaijet Defendants had a reasonable opportunity to view Sanho's product packaging. According to the Kaijet Defendants, their allegedly infringing packaging design was finalized on September 18, 2017.[108] Sanho president Kien Hoe Daniel Chin submitted testimony that the copyrighted packaging design was physically offered for sale at brick and

---

107 ECF 502-1, at 29 (emphasis in original).

108 ECF 502-2, ¶ 35.

mortar Best Buy stores between April and September 2017.[109] This testimony is corroborated by Best Buy's records, which shows that Best Buy had HyperDrive products on hand no later than May 2017.[110] Chin's testimony is also corroborated by a September 13, 2017 email from Kaijet US CEO Jessica Liu,[111] which seems to reference a "HyperDrive" product that she "saw once at BBY store."[112] From this evidence, a jury could find that the Kaijet Defendants had a reasonable opportunity to view (if not actual access to) the copyrighted packaging.

With access, Sanho must show that its and j5create's packaging designs are "substantially similar" *in protected expression*. This qualifier is important: Not all

---

109 ECF 511-8, ¶¶ 24, 26.

110 The Kaijet Defendants cite to Best Buy's point of sale records for the factual proposition that Best Buy did not begin selling HyperDrive products in its brick-and-mortar stores until late October 2017. ECF 488-1, at 13. Best Buy's records do not support that inference. The records show that Best Buy began increasing its on-hand and on-order stock of HyperDrive products in May 2017, with big orders at the beginning of August, the middle of August, and the end of September; and with on-hand stock increasing steadily from late September through late November. *See* ECF 488-9. The Kaijet Defendants' assertion that Best Buy's records show a "drastic increase in the number of units on-hand ('OH') and on order ('OO') in late October 2017" thus mischaracterizes the evidence. ECF 488-2, ¶ 54. Nor do the Kaijet Defendants explain how it inferred facts about *where* products were sold from data that only indicates *how many* products Best Buy held in inventory. As far as the Court can tell, the only probative evidence in the record on the factual issue of when Best Buy began selling HyperDrive products in brick-and-mortar stores is Chin's testimony.

111 ECF 502-2, ¶ 15.

112 ECF 488-2, ¶ 63. The parties do not dispute that "BBY" refers to Best Buy. *Id.*

elements of a copyrighted work are necessarily protected, because copyright only protects a work to the extent that it is original. *Baby Buddies*, 611 F.3d at 1316. Thus, the first step in assessing substantial similarity is distinguishing between a work's protectable and non-protectable elements. The distinction can be a subtle one. *Intervest Const., Inc. v. Canterbury Est. Homes, Inc.*, 554 F.3d 914, 920 (11th Cir. 2008). Under the doctrine of "idea/expression dichotomy," *id*, copyright law protects the particular expression of an idea (*e.g.*, a Barbie), but not the idea itself (*e.g.*, a human-figure doll with "youthful female facial features"), *Baby Buddies*, 611 F.3d at 1318 (citing *Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*, 724 F.2d 357, 360 (2d Cir. 1983)). In addition, copyright law distinguishes between an object's "artistic design," which is protectible, and its "utilitarian function," which is not. 17 U.S.C. § 101. Thus, copyright protection extends only to elements that are physically or conceptually separable from a product's usefulness. *Home Legend, LLC v. Mannington Mills, Inc.*, 784 F.3d 1404, 1413 (11th Cir. 2015). Finally, where a work's originality lies in its "arrangement and coordination" of common elements, the Court must distinguish between the copyrighted work's particular arrangement of elements, which is protectible, and the underlying elements themselves, which often are not. *Intervest*, 554 F.3d at 919.

Here, Sanho's copyrighted packaging (left) contains both protectable and non-protectable elements:



113



114

Non-protectable are Sanho's product name and description, the packaging's selection of typographies and colors, and familiar images such as MacBooks and laptop ports. *See* 37 C.F.R. § 202.1(a). Also non-protectible are functional elements like the listing of product information and specifications. The way in which the product-shaped cutout or window on the front of the packaging allows consumers to view the product without opening the packaging is likewise functional and therefore non-protectable.

Sanho's packaging does have original elements. As the Eleventh Circuit has explained, originality in the copyright context is a "low bar." *Home Legend*, 784

113 ECF 461-1, ¶ 38.

114 *Id.* ¶ 33.

F.3d at 1409. To be deemed original, a work need only "possess some creative spark, no matter how crude, humble, or obvious," *id.*, and the Court catches a spark of creativity here in Sanho's arrangement and coordination of the packaging's otherwise unprotectible constituent elements—most notably in the alignment of the right side of the product-shaped cutout with the left edge of a depiction of a MacBook to suggest the physical docking of the hub to the laptop. The originality of Sanho's design is underscored by examples that Kaijet US has submitted of packaging for similar products: they contain more or less the same elements—product name and description, specifications and features, cutouts or windows—but in a variety of arrangements, none of them resembling Sanho's in overall layout, and none of them suggesting its product's physical compatibility with another device in the way that Sanho's does.[115]

[115] ECF 506-10, at 2, 5, 8, 16.

Here, at the level of protected expression—Sanho's arrangement and coordination of elements in its packaging—a jury question exists as to the substantial similarity between Sanho's (left) and j5create's (right) designs:



116




117

Significantly, j5create has appropriated the most original element of Sanho's design: the cutout in the center showing the product hub physically interfacing with a depiction of a MacBook to the right. In addition, the front of j5create's packaging presents mostly the same information as Sanho's, and in the same layout: product name at top, product description at bottom, "4K" and "50 Gbps" callouts at bottom right. The back of j5create's packaging, like Sanho's, depicts a MacBook, open at a similar angle and viewed from a similar perspective, with the

---

116 ECF 89-4, at 2.

117 *Id.* at 3.

product hub attached and its ports labeled, followed by a bulleted list detailing the ports' capabilities. The left side panel of j5create's packaging, like Sanho's, depicts and labels the hub's ports. These are significant similarities in the packagings' arrangement and coordination of dominant design features.

The packagings are of course far from identical. Unlike Sanho's, the front of j5create's packaging features its brand name at top left, and both the product's model name and its 2016 MacBook compatibility on a banner at bottom. Unlike Sanho's, the back of j5create's packaging lists product specifications in four languages. Unlike Sanho's, the side panels of j5create's packaging depicts the product's side profile. The packaging designs differ in color scheme and in font. There are various other small differences which, according to the Kaijet Defendants' expert witness, total over 180.[118]

Nevertheless, substantial similarity is a qualitative, as opposed to a quantitative, question. It is determined, not by tallying up and comparing the raw "number of similarities and differences," but by looking at the copyrighted work's protected expression as a whole. *Baby Buddies*, 611 F.3d at 1316. Here, the question is whether a large number of minor differences outweighs a smaller number of similarities in dominant design features. Because that question is best decided by

[118] ECF 461-1, ¶ 48.

a jury, Sanho's copyright infringement claim against the Kaijet Defendants will proceed to trial. Kaijet US's motion for summary judgment is therefore granted as to Sanho's Lanham Act false advertising claim, but denied as to all others.

### B. Kaijet Taiwan's Motion for Summary Judgment Is Granted as to False Advertising and Denied as to All Other Claims.

Kaijet Taiwan moves for summary judgment on the same claims for which Kaijet US moved for summary judgment, contesting both the merits of Sanho's claims and the extraterritorial application of U.S. intellectual property law. Because the merits of Sanho's claims have already been discussed in the context of Kaijet US's motion for summary judgment, the Court turns to the issue of extraterritoriality. Sanho's position is that Kaijet Taiwan, though a foreign corporation, is subject to U.S. intellectual property law because (1) it has engaged in activity in the United States through its dealings with Kaijet US, and (2) it is an alter ego of Kaijet US. Because the Court finds that Kaijet Taiwan's activity in the United States subjects it to U.S. intellectual property law, it declines to rule on Sanho's alter ego theory.

#### 1. Kaijet Taiwan Has Engaged in Commerce in the United States.

Sanho presented substantial evidence of Kaijet Taiwan's activity in the United States, beginning with evidence that Kaijet Taiwan sold and shipped the allegedly infringing j5create products to the United States. Kaijet Taiwan admits

that it supplies Kaijet US with lists of "products that will soon be available," and that Kaijet US selects which of those products will be marketed and sold in the United States.[119] Kaijet Taiwan admits that its address is listed as the "container stuffing location" for shipments to Kaijet US of the allegedly infringing j5create products;[120] that waybills designate Kaijet Taiwan as the "shipper" for those products;[121] and that Kaijet US paid Kaijet Taiwan directly for the delivery of those products.[122] Nor is Kaijet Taiwan under any illusion as to its products' ultimate destination: as part of filing for trademark protection of the "j5create" brand name with the U.S. Patent and Trademark Office (USPTO), Kaijet Taiwan declared under penalty of perjury that the "j5create" mark was "in use in commerce" in the United States in connection with its allegedly infringing products.[123]

There is also evidence that Kaijet Taiwan coordinated with Kaijet US to import its goods into the United States. Kaijet Taiwan admits that it has been filing documents and applications—at least 46 applications, and allegedly hundreds of

---

119 ECF 488-2, ¶ 28.

120 *Id.* ¶ 52.

121 *Id.* ¶ 50.

122 *Id.* ¶ 49.

123 *Id.* ¶ 10. The evidence further suggests that Kaijet Taiwan filed trademark applications in the United States at the direction of Kaijet US CEO Jessica Liu. ECF 464-2, at 2.

documents—with the Federal Communications Commission (FCC) since 2015.[124] Kaijet Taiwan admits that some of those FCC communications were made in pursuit of the certificates of conformity needed to import j5create products into the United States.[125] Kaijet Taiwan admits that its designated contact person with the FCC was Kaijet US CEO Jessica Liu.[126] And Kaijet Taiwan admits that its former invoicing agent Melody Kuo coordinated with Kaijet US's shipper to "facilitate the shipment" of j5create products to the United States.[127]

There is also evidence that Kaijet Taiwan coordinates with Kaijet US to market j5create products in the United States. The parties agree that in October of 2017, as Kaijet US was rolling out its first UltraDrive hub for sale at Best Buy in the United States, Kaijet Taiwan employee Cindy Lin emailed a "product roadmap" including "product launch date, sample date, quantity of pilot run, quantity of sample, and packaging" to Kaijet US personnel.[128] Kaijet Taiwan owns j5create's website, www.j5create.com,[129] which boasts of "4 corporate offices around the world"—and Kaijet Taiwan does not deny that, at the inception of this lawsuit, its

---

124 ECF 488-2, ¶ 6.

125 *Id.* ¶ 7.

126 *Id.* ¶ 5.

127 *Id.* ¶ 18.

128 *Id.* ¶ 47.

129 *Id.* ¶ 14.

website indicated that one of those offices was located in Kennesaw, Georgia.[130] In addition, Kaijet Taiwan admits that visitors to www.j5create.com can navigate, via its "Where to Buy" section, to another Kaijet Taiwan-hosted website where j5create products are sold.[131] Together, this is more than enough evidence from which a jury could find Kaijet Taiwan liable under U.S. patent law, the Lanham Act, and the Copyright Act.

***i.* Patent Law**

Kaijet Taiwan cannot assert extraterritoriality as a defense against Sanho's (1) direct or (2) indirect patent infringement claims. First, Sanho brings *direct* patent infringement claims under 35 U.S.C. § 271(a), which creates liability for "whoever … offers to sell, or sells any patented invention, within the United States." Thus, if the Court is to hold Kaijet Taiwan liable for patent infringement under § 271(a), Sanho must prove that Kaijet Taiwan committed infringing acts *inside* the United States. *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1375–76 (Fed. Cir. 2005). The location of an infringing act is determined through traditional contract principles, by looking to the "places of contracting and performance." *MEMC*, 420 F.3d at 1376–77.

130 *Id.* ¶ 15.

131 *Id.* ¶ 17.

Here, the record evidence supports the reasonable inference that Kaijet Taiwan both *sold* and *offered for sale* infringing products in the United States. Kaijet Taiwan's liability for the *actual sale* of products is controlled by *North American Philips Corp. v. American Vending Sales, Inc.*, 35 F.3d 1576 (Fed. Cir. 1994). At issue in *North American Phillips* was the "situs of the infringement" under patent law when allegedly infringing goods were delivered to Illinois by defendants located in Texas and California under "free on board" (FOB) shipping contracts. *Id.* at 1579. Other than those contracts, the only two connections that the defendants had to Illinois were (1) visits to Illinois by the defendants' officers to promote sales, and (2) the defendants' participation in trade shows in Illinois. *Id.* at 1577–78. *North American Phillips* nevertheless held that "to sell an infringing article to a buyer in Illinois is to commit [the tort of infringement-by-sale] there." *Id.* at 1579.

Similarly, here, evidence that Kaijet Taiwan sold, shipped, and facilitated the importation of j5create products to the United States supports the inference that it committed the alleged tort of infringement-by-sale in the United States. Nor can the fact that Kaijet Taiwan shipped the allegedly infringing products "FOB Taiwan"[132] be a defense, when it was not a valid defense in *North American Phillips*—especially since Kaijet Taiwan's commercial ties with the United States

---

[132] ECF 502-1, at 13.

vis-à-vis the infringing products are orders of magnitude stronger than were the *North American Phillips* defendants' with Illinois.

The record also supports the inference that Kaijet Taiwan *offered for sale* its products in the United States. The Federal Circuit has explained that § 271(a)'s "offer for sale" language was added to the statute to prevent a party from "generating interest in a potential infringing product to the commercial detriment of the rightful patentee." *MEMC*, 430 F.3d at 1376. A defendant can accordingly be liable under § 271(a) for conveying to potential purchasers "the description of the allegedly infringing merchandise and the price at which it can be purchased." *3D Sys., Inc. v. Aarotech Lab'ys, Inc.*, 160 F.3d 1373, 1379 (Fed. Cir. 1998). Here, a jury could find that Kaijet Taiwan generated interest in potentially infringing products through its product "roadmaps," from which Kaijet US selected the merchandise it would market and sell in the United States.

Second, Sanho brings *indirect* patent infringement claims under 35 U.S.C. § 271(b), which creates liability for a party that "actively induces infringement." To prevail under § 271(b), "the patentee must show, first that there has been direct infringement, and second, that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." *MEMC*, 420 F.3d at 1378. Kaijet Taiwan argues that Sanho should be barred from proceeding under a theory of indirect infringement because of defects in the

pleadings,[133] even though both of Sanho's operative complaints clearly indicate that Sanho is pursuing both direct and indirect theories of patent infringement.[134] Kaijet Taiwan is effectively arguing for dismissal, under Fed. R. Civ. P. 12(b)(6), in a nearly six-year-old case, of claims that it has already answered. Such an argument has long been waived. All of Sanho's patent infringement claims will accordingly proceed to trial against Kaijet Taiwan: under § 271(a) for selling or offering for sale infringing products, and under § 271(b) for inducing the infringement of others.

***ii.*** **Lanham Act**

Kaijet Taiwan also cannot assert extraterritoriality as a defense against Sanho's Lanham Act claims. The controlling case here is the recent Supreme Court decision in *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, which delineated "the dividing line between foreign and domestic applications" of Lanham Act claims under both § 32 and § 43(a). 600 U.S. 412, 428 (2023). According to *Abitron*, that dividing line is the defendant's "use in commerce" in the United States of the mark (or trade dress) at issue. *Id.* at 423. And "use in commerce," *Abitron* held, means "'the bona fide use of a mark in the ordinary course of trade,' where the mark

---

133 ECF 502-1, at 39.

134 ECF 89, ¶ 58 ("Defendant's actions constitute direct and indirect infringement of the … 875 patent and 616 Patent"); ECF 418, ¶¶ 27, 36 (alleging "direct and indirect infringement" of the '618 and '290 Patents).

serves to 'identify and distinguish [the mark user's] goods ... and to indicate the source of the goods.'" *Id.* (quoting 15 U.S.C. § 1127). Or as Justice Jackson put it in her concurrence: the Lanham Act permits liability for a foreign defendant's use of its mark "wherever the mark serves its source-identifying function." *Id.* at 430. Here, where Sanho has presented evidence that j5create's products are displayed for sale in Best Buy stores across the United States and that Kaijet Taiwan declared under oath to the USPTO that its allegedly infringing products are "in use in commerce" in the United States, there is a jury question as to Kaijet Taiwan's liability on Sanho's Lanham Act claims for trademark infringement and unfair competition.

***iii.* Copyright law**

Finally, Kaijet Taiwan cannot assert extraterritoriality as a defense against Sanho's copyright infringement claims. As the Eleventh Circuit explained in *Palmer v. Braun*, "[w]here a person imports an infringing work into the United States, the federal courts have jurisdiction over the action for infringement." 376 F.3d 1254, 1258 (11th Cir. 2004). For example, where a foreign water bottler labeled its products "for marketing in the United States, the bottles were packaged for shipment to the United States, and the bottler sold them to a company which imported them to the United States," that bottler was subject to U.S. copyright law. *Id.* (citing *GB Marketing USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*, 782 F. Supp.

763, 772–73 (W.D.N.Y. 1991)). Here, where Sanho has presented evidence that Kaijet Taiwan marketed its products in, packaged its products for, and shipped its products to the United States, a jury question exists as to Kaijet Taiwan's Copyright Act liability. Kaijet Taiwan's motion for summary judgment is therefore granted as to Sanho's false advertising claim[135] and denied as to all others.

### 2. The Court Declines to Address Sanho's Theory That Kaijet Taiwan and Kaijet US Are Alter Egos.

Sanho opposes Kaijet Taiwan's extraterritoriality defense, not only on the basis of Kaijet Taiwan's actions in the United States, but also under the theory that Kaijet Taiwan and Kaijet US "are the same company" and are therefore liable for each other's conduct.[136] However, because the Court has ruled that Kaijet Taiwan's actions in the United States give rise to liability under U.S. intellectual property law independent of any actions taken by Kaijet U.S., the Court declines to address Sanho's alter ego theory at this time.

This is not just a function of procedural expediency. The Court is hesitant to rule on Sanho's alter ego theory because it raises a thorny choice-of-law problem that the parties' briefing failed to address. The choice-of-law problem here is

---

[135] Because the Court grants summary judgment on Sanho's false advertising claim on the merits, *see supra* subsection II.A.2.iii, it does not consider the extraterritorial applicability of that claim as to Kaijet Taiwan.

[136] ECF 460-1, at 30.

twofold. First, what law governs the alter ego analysis? Kaijet Taiwan is incorporated and has its principal place of business in Taiwan.[137] Kaijet US is incorporated in Delaware and has its principal place of business in Georgia.[138] Sanho's brief in support of its alter ego theory relies on Georgia law governing corporate veil-piercing[139]—but it does not explain why Georgia law should apply when neither of the entities in question is incorporated in Georgia. Kaijet Taiwan, for its part, cites to *both* Georgia law and federal common law without explanation.[140] But surely, both cannot govern at the same time. It is possible that neither are relevant. Might not the issue be governed by Delaware law? Or, perhaps, Taiwanese law?

There is a second problem: under any law, analysis of Sanho's alter ego theory would likely involve an inquiry into whether corporate formalities are being observed. Presumably, the requisite corporate formalities depend on the law of the places of incorporation: here Delaware and Taiwan. Yet neither party cites to either Delaware or Taiwanese law in arguing whether the entities in question

---

137 ECF 502-2, ¶ 9.

138 ECF 115, ¶ 7, at 4.

139 ECF 460-1, at 36–37.

140 *Compare* ECF 502-1, at 42 n.165 (Georgia law), *with id.* at 43 n.170 (federal common law).

abused the corporate form. These problems must be resolved before there can be a ruling on Sanho's alter ego theory.

### C. Starview's Motion for Summary Judgment Is Granted as to False Advertising and Denied as to All Other Claims.

Starview moves for summary judgment on the two patent infringement ('618 and '290 Patents) and one Lanham Act (false advertising) claims that Sanho has asserted against it, raising only the defense of extraterritoriality. The analysis here mirrors the analysis for Kaijet Taiwan's motion for summary judgment above. Like Kaijet Taiwan, Starview asserts that it has committed no acts in the United States that would trigger liability under U.S. intellectual property law.[141] The record suggests otherwise.

There is evidence that Starview sells j5create products to Kaijet US, most directly through the deposition testimony of Starview's owner, CEO, and 30(b)(6) witness Yuki Tai that "Starview has sold [JCD382] to the United States,"[142] and in the form of a "Supply Contract" between Starview and Kaijet US.[143] The record also contains purchase orders from Kaijet US to Starview for j5create products;[144] commercial invoices from Starview to Kaijet US for those same j5create

---

141 ECF 456-1, at 1.

142 ECF 493, ¶¶ 11–12.

143 ECF 479-6, at 3.

144 ECF 493, ¶ 19.

products;[145] periodic wire payments from Kaijet US to Starview;[146] and an email that could be read as a Starview employee's request for the countersignature and delivery of purchase orders and invoices from Kaijet US.[147]

There is also evidence that Starview ships j5create products to Kaijet US: The record contains packing and weight lists for shipments from Starview to Kaijet US;[148] bills of lading and air waybills that designate Starview as the "shipper,"[149] and emails to and from "starview.shipping@gmail.com" that appear to discuss the logistics of shipments from Taiwan to Atlanta.[150] Finally, under the terms of Starview's "Supply Contract" with Kaijet US, Starview is responsible for "effectively manag[ing] the quality of the products and immediately provid[ing] the necessary after-sales service for the products."[151]

This evidence is sufficient to defeat Starview's extraterritoriality defense. Thus, Starview may be liable, under 35 U.S.C. § 271(a) and *North American Phillips*, for selling infringing products to Kaijet US in the United States. And it may be

---

145 *Id.* ¶ 20.

146 *Id.* ¶ 22.

147 *Id.* ¶ 21.

148 *Id.* ¶ 24.

149 *Id.* ¶¶ 29–30.

150 *Id.*

151 ECF 479-6, at 3.

liable, under 35 U.S.C. § 271(b) and *MEMC*, for inducing Kaijet US to sell or offer for sale infringing products in the United States. Starview's extraterritoriality defense is accordingly rejected, and its motion for summary judgment is granted as to Sanho's false advertising claim[152] but denied as to all others. The Court declines to address Sanho's alternative alter ego theory as to Starview, which is incorporated in Anguilla[153] with its principal place of business in Taiwan,[154] for the same reasons it declined to do so as to Kaijet Taiwan.

### D. Sanho's Motion for Summary Judgment Is Granted.

Sanho moves for summary judgment on Defendants' false advertising and false patent marking counterclaims. Sanho's motion is granted as to both.

#### 1. No Reasonable Jury Could Find Sanho Liable for False Advertising.

The Kaijet Defendants' § 43(a) false advertising counterclaim asserts that Sanho engaged in a "fake review campaign" by manufacturing positive product reviews of its GN28 line of products on e-commerce retailer Amazon's online marketplace.[155] To prevail on a false advertising claim, a claimant must

---

[152] Because the Court grants summary judgment on Sanho's false advertising claim on the merits, *see supra* subsection II.A.2.iii, it does not consider the extraterritorial applicability of that claim as to Starview.

[153] ECF 456-2, ¶ 1.

[154] *See* ECF 479-3, at 23.

[155] ECF 483-1, at 10.

demonstrate, not only that the defendant made a statement that is false or misleading,[156] but that the false or misleading statement was *material*. *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1319 (11th Cir. 2010). A statement is material if it "is likely to influence the purchasing decision." *Id.* Here, therefore, the Kaijet Defendants must demonstrate that Sanho's alleged fake review campaign was likely to influence a consumer's decision to purchase the GN28 over competing j5create products. Sanho contends that it cannot be liable for false advertising because no reasonable jury would find its allegedly fake review campaign material,[157] and the Court agrees.

The Kaijet Defendants point to the following evidence linking Sanho's alleged fake review campaign to GN28 purchases:

1. A study showing that 74% of respondents "read online reviews" from online stores like Amazon and BestBuy;[158]
2. A study showing that 32.7% of respondents cited "[p]roduct reviews and recommendations as a "[m]ain reason for shopping at Amazon";[159] and
3. Sanho CEO Daniel Chin's declaration testimony that "The UltraDrive is an inferior and lower quality version of the HyperDrive. It receives less favorable

---

[156] *See supra* subsection II.A.2.iii.

[157] ECF 439-1, at 13.

[158] ECF 439-27, at 3.

[159] *Id.* at 4.

> customer rating reviews on Best Buy's website and has many complaints."[160]

That is not enough. Evidence about *where* consumers read online reviews is not probative of what they do with the information in those reviews. Likewise, evidence about why consumers choose to shop at *Amazon* is not probative of why they would choose the HyperDrive over the UltraDrive, when the latter was sold exclusively through Best Buy.[161] And whether a CEO believes his product is better than a competitor's is not probative of whether a consumer would choose to buy the one product instead of the other. What the Kaijet Defendants need is evidence that goes to the *consumer's purchasing decision*: evidence tending to prove that Sanho's alleged fake reviews caused consumers to buy Sanho's products instead of j5create's. No such evidence has been produced. Furthermore, the Kaijet Defendants have failed to meaningfully rebut Sanho's evidence of *immateriality*: Akins' deposition testimony that the GN28 has (as of "late 2022") a better aggregate rating on Best Buy (where it is actually sold) than it does on Amazon,[162] and Sanho's expert's testimony that the sales metrics of the GN28, both of themselves and relative to the sales metrics of its j5create competitor, are

160 ECF 93-2, ¶ 22.

161 ECF 453-4, at 13.

162 ECF 483-2, ¶ 18.

uncorrelated with the timing of Sanho's alleged fake review campaign.[163] No reasonable jury could find, on this record, that Sanho's fake review campaign was material, and thus Sanho is entitled to summary judgment on the Kaijet Defendants' false advertising claim.

**2. No Reasonable Jury Could Find Sanho Liable for False Patent Marking.**

Defendants' second counterclaim asserts that Sanho falsely marked one of its products—the HyperDrive DUO—with its '875, '616, and '618 Patents despite the DUO being outside those patents' scopes.[164] To prove false marking, a party must, under 35 U.S.C. § 292, (1) mark an unpatented article with "any word or number importing that the same is patented," (2) "for the purpose of deceiving the public," and (3) cause a "competitive injury." *Sukumar v. Nautilus, Inc.*, 785 F.3d 1396, 1399 (Fed. Cir. 2015). Sanho does not appear to contest that (1) the DUO was falsely marked,[165] but argues that it cannot be liable for false patent marking because (3) Defendants did not suffer a competitive injury. The Court agrees.

The Federal Circuit defines "competitive injury" as a "wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair

---

[163] ECF 441-1, at 54–63.

[164] ECF 483-1, at 30; ECF 439-1, at 20.

[165] Sanho speculates that the DUO was marked as a result of employee negligence [ECF 439-1, at 22], and represents that it has removed the allegedly false markings from its website "out of an abundance of caution" [*id.* at 23].

competition; a disadvantage in a plaintiff's ability to compete with a defendant, caused by the defendant's unfair competition." *Sukumar*, 785 F.3d at 1396 (quoting BLACK'S LAW DICTIONARY (9th ed. 2009)). A false marking plaintiff must show a causal relationship between the competitive injury and the false marking. *Gravelle v. Kaba Ilco Corp.*, 684 F. App'x 974, 979 (Fed. Cir. 2017) (rejecting false patent marking claim because "no reasonable jury could infer from [the plaintiff]'s decline in [product] sales around the time of [the defendant]'s false marking that the decline was an injury *caused* by the false marking) (emphasis added).

Defendants have presented the following evidence of causation:[166]

1. The fact that Sanho's claims for damages in this litigation are premised on competition between the parties;
2. Four twitter posts in which Sanho mocks j5create for copying the HyperDrive;[167] and
3. A blog post in which Sanho mocks j5create for copying the HyperDrive.[168]

That is not enough. Defendants' evidence fails to provide a basis to reasonably infer that it suffered a competitive injury at all, much less that its competitive

---

[166] ECF 483-1, at 39. Defendants also proffer that Sanho has created a "false impression of a robust patent portfolio," and that Defendants have "suffered injury to its goodwill and reputation as a result." *Id.* at 39–40. However, Defendants do not substantiate these allegations with any evidence.

[167] ECF 507-38, at 2, 4–6.

[168] ECF 507-39, at 2–8.

injury was caused by Sanho's false patent marking. Nor do Defendants attempt to rebut the sworn testimony of Kaijet US's own officer and shareholder that Kaijet US has not been economically disadvantaged by Sanho's patent marking.[169] No reasonable jury could find, on this record, that Sanho's patent marking caused a competitive injury to Defendants. Therefore, Sanho is granted summary judgment on Defendants' false advertising and false patent marking claims.

**E. Defendants' Motion for Judgment on the Pleadings Is Denied.**

Finally, Defendants move for judgment on the pleadings as to Sanho's state law claims. Under Fed. R. Civ. P. 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." In addition, according to the Court's Local Rules, motions for judgment on the pleadings "must be filed WITHIN THIRTY (30) DAYS after the beginning of discovery unless the filing party has obtained prior permission of the Court to file later." LR 7.1(A)(1), NDGa (emphasis in original).

Defendants admit that their motion does not comply with Local Rule 7.1(A)(1).[170] Nor do Defendants attempt to explain how their motion complies with Rule 12(c). Defendants are moving for judgment on the pleadings only on claims asserted in the Third Amended Complaint, meaning the pleadings closed when

---

169 ECF 483-2, ¶ 41.

170 ECF 499, at 7.

Defendants answered that complaint on January 3, 2020. Defendants' motion for judgment on the pleadings was filed *over four years later*, on March 26, 2024. At that point, the Court's January 31, 2024 summary judgment motions deadline had passed,[171] and a jury trial beginning on July 9, 2024 had already been scheduled.[172] Defendants do not explain why the instant motion could not have been filed months, if not years, earlier. Nor do they explain why they did not seek the Court's leave before filing it in accordance with the Local Rules. In addition, as Defendants point out, they will not be prejudiced by a denial of the instant motion because the issues it raises can be addressed at trial.[173] So as not to delay said trial, and due to counsel's once-again disregard of the applicable procedural rules, the motion for judgment on the pleadings is denied.

## III. CONCLUSION

The Court holds as follows:

- Sanho motion for partial summary judgment [ECF 439] is **GRANTED**;
- Kaijet Taiwan's motion for summary judgment [ECF 446] is **GRANTED** as to Sanho's false advertising claim and **DENIED** as to all others;

---

171 ECF 429.

172 ECF 438.

173 ECF 499, at 7.

- Kaijet US's motion for partial summary judgment [ECF 450] is **GRANTED** as to Sanho's false advertising claim and **DENIED** as to all others;

- Starview's motion for partial summary judgment [ECF 456] is **GRANTED** as to Sanho's Lanham Act false advertising claim and **DENIED** as to all others; and

- Kaijet Taiwan and Kaijet US's motion for judgment on the pleadings [ECF 494] is **DENIED**.

The Clerk is DIRECTED to permanently seal the documents filed under provisional seal at ECFs 440, 441, 442, 443, 444, 445, 448, 449, 453, 454, 455, 460, 461, 462, 463, 464, 465, 466, 470, 471, 472, 473, 474, 475, 479, 480, 481, 483, 486, 488, 491, and 495.[174]

**SO ORDERED** this 20th day of May, 2024.

Steven D. Grimberg
United States District Judge

[174] *See supra* note 1.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| SANHO CORPORATION,<br>Plaintiff,<br>v.<br>KAIJET TECHNOLOGY INTERNATIONAL LIMITED, INC., *et al.*,<br>Defendants. | Civil Action No.<br>1:18-cv-05385-SDG |

**OPINION AND ORDER**

This Order resolves the following post-trial motions in this intellectual property dispute over MacBook dongles or "hubs":

- Defendants Kaijet Technology International Limited, Inc. (Kaijet US) and Kaijet Technology International Corporation's (Kaijet Taiwan) renewed motion for judgment as a matter of law [ECF 641];
- Defendant Star View Global Limited's renewed motion for judgment as a matter of law [ECF 646];
- Kaijet Taiwan's motion to dismiss [ECF 641];
- Kaijet US and Kaijet Taiwan's (the Kaijet Defendants) motion for a new trial [ECF 643];
- Star View's motion for a new trial [ECF 645];
- Plaintiff Sanho Corporation's motion for attorneys' fees [ECF 637];
- The Kaijet Defendants' motion for attorneys' fees [ECF 638]; and
- The Kaijet Defendants' motion to deny or reduce Sanho's bill of costs [ECF 652].

For the following reasons, all pending motions are **DENIED** except the Kaijet Defendants' motion to deny or reduce Sanho's bill of costs, which is **GRANTED IN PART** and **DENIED IN PART**.

## I. The Kaijet Defendants' and Star View's motions for judgment as a matter of law are denied.

The Kaijet Defendants, joined in part by Star View, renew their motion for judgment as a matter of law under Federal Rule of Civil Procedure 50,[1] arguing that the evidence does not support a verdict in Sanho's favor on copyright and patent infringement. The motion is denied. The Court rules, for the same reasons that it did on Defendants' pre-verdict motion for judgment as a matter of law under Rule 50(a), that the jury had a "legally sufficient evidentiary basis" to find in Sanho's favor on copyright and patent infringement. Fed. R. Civ. P. 50(a); *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016).[2] As to copyright infringement, there was sufficient evidence for the jury to find that the Kaijet Defendants' product packaging design was "substantially similar to the

---

1 ECF 641, at 7; ECF 646, at 1. Because Sanho did not assert a copyright claim against Star View, Star View joins the Kaijet Defendants' motion for judgment as a matter of law only as to patent infringement.

2 The Federal Circuit has exclusive jurisdiction over appeals from "any civil action arising under" patent law, 28 U.S.C. § 1295(a)(1), but applies regional circuit law to "nonpatent" procedural issues, *In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1368 (Fed. Cir. 1999).

protected elements" of Sanho's design.[3] *Baby Buddies, Inc. v. Toys R Us, Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010). Similarly, as to patent infringement, there was sufficient evidence for the jury to find that "a purchaser familiar with the prior art would be deceived" by the visual similarity between the Sanho-owned U.S. Design Patent No. D844,618 ('618 Patent) and Defendants' JCD382 and JCD389 MacBook dongles.[4] *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 683 (Fed. Cir. 2008). Defendants' Rule 50(b) motion is denied.

## II. Kaijet Taiwan's motion to dismiss is denied.

Kaijet Taiwan moves to dismiss the copyright infringement claim against it for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(h)(3). Kaijet Taiwan argues for dismissal on extraterritoriality grounds; that is, it argues that Sanho's copyright infringement claim fails because there is no evidence that Kaijet Taiwan engaged in infringing activities within the United States.[5] In making this argument, Kaijet Taiwan cites the Eleventh Circuit case *Palmer v. Braun* for the proposition that extraterritoriality is a *jurisdictional* limit on

---

[3] ECF 594; *see also* ECF 513, at 39–47. The evidence before the jury included the two-dimensional "deposit copy" of Sanho's design that was submitted to the Copyright Office, as well as a physical example of Sanho's product packaging embodying that design. ECF 620-13.

[4] ECF 594; *see also* ECF 513, at 20–24. The evidence before the jury included the '618 Patent, the JCD382 and JCD389 dongles, and various examples of prior art. ECF 620-12; ECF 620-2; ECF 620-6; ECF 628.

[5] ECF 641, at 11.

a court's ability to adjudicate claims under the Copyright Act. 376 F.3d 1254, 1258 (11th Cir. 2004). Kaijet Taiwan cannot be faulted for its reliance on *Palmer*, given that the Court has relied on *Palmer* to analyze the extraterritorial application of the Copyright Act in this very case.[6] Nevertheless, a closer look at more recent case law reveals that extraterritoriality is a substantive bar, rather than a jurisdictional defect, to a copyright infringement claim.

The Court's extraterritoriality analysis here centers on a line of post-*Palmer* Supreme Court cases clarifying the distinction between *statutory prerequisites* to a claim on one hand, and a federal court's *subject matter jurisdiction* over a claim on the other. *See MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 297–98 (2023); *see also Avila-Santoyo v. U.S. Att'y Gen.*, 713 F.3d 1357, 1359–60 (11th Cir. 2013). It is a distinction that courts have not always meticulously maintained. *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998) ("Jurisdiction, it has been observed, is a word of many, too many, meanings."). Even the Supreme Court, by its own admission, has at times confused the issue by "mischaracterize[ing] claim-processing rules or elements of a cause of action as jurisdictional limitations, particularly when that

---

6 ECF 513, at 54–55.

characterization was not central to the case, and thus did not require close analysis." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010).

The distinction between statutory prerequisites and jurisdictional requirements can be critical, however, due to the "unique and sometimes severe consequences" of a jurisdictional defect. *MOAC*, 598 U.S. at 297. Jurisdictional defects deprive courts of the "power to hear a case." *United States v. Cotton*, 535 U.S. 625, 630 (2002). Thus, jurisdictional issues "must be raised by courts *sua sponte*," "do not allow for equitable exceptions," and "cannot be waived." *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 203 (2022). This case exemplifies why this issue can be so important. If territoriality here is *not* jurisdictional, then Kaijet Taiwan has waived it by failing to raise it in its pre-verdict motion for judgment as a matter of law under Rule 50(a). *See Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 903 (11th Cir. 2004). But if territoriality *is* jurisdictional, then it cannot be waived; the Court must enforce it even at this late stage in litigation, no matter how "many months of work on the part of the attorneys and the court may be wasted." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011).

Endeavoring to limit that kind of waste and "bring some discipline to the use of the term 'jurisdictional,'" *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012), the Supreme Court in the seminal case *Arbaugh v. Y&H Corp.* established a "bright line" rule, 546 U.S. 500, 516 (2006). Under *Arbaugh*, any "threshold limitation on a

statute's scope" is jurisdictional only if Congress has "clearly state[d]" that it is. *Id.* at 515. Whether Congress has spoken clearly is determined using the "traditional tools of statutory construction." *Boechler*, 596 U.S. at 203. While Congress need not "incant magic words in order to speak clearly," *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013), its statement "must indeed be clear," *MOAC*, 598 U.S. at 298. Anything less than clear—a jurisdictional reading that is merely "plausible," or "better than nonjurisdictional alternatives"—is not enough. *Id.* Absent a clear jurisdictional statement, limitations on a statute's scope are deemed to be "nonjurisdictional in character." *Arbaugh*, 546 U.S. at 516.

Applying the *Arbaugh* rule, the Supreme Court has over the past two decades stripped the jurisdictional label from a variety of statutory "preconditions to relief." *MOAC*, 598 U.S. at 297 (collecting cases). Of particular relevance here is the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, which held—in abrogation of established circuit precedent—that extraterritoriality under § 10(b) of the Securities Exchange Act did *not* implicate subject matter jurisdiction. 561 U.S. 247, 253–54 (2010). As *Morrison* reasoned, "to ask what conduct § 10(b) reaches is to ask what conduct § 10(b) prohibits," and what conduct a statute prohibits is a "merits question." *Id.* at 254; *see also Arbaugh*, 546 U.S. at 511–12 (citing *E.E.O.C. v. Arabian Am. Oil Co.*, 499 U.S. 244 (1991)) (casting doubt on whether the extraterritorial reach of Title VII was truly a question of

subject matter jurisdiction). In the wake of *Morrison*, the Eleventh Circuit has held (albeit in an unpublished opinion) that "the extraterritorial application of a statute . . . is a merits question rather than a question of subject-matter jurisdiction." *Int'l Bhd. of Teamsters v. Amerijet Int'l, Inc.*, 604 F. App'x 841, 851 (11th Cir. 2015). Likewise, post-*Arbaugh* circuit court decisions on the extraterritorial reach of the Copyright Act—the precise question at issue here—have held that "the issue is not one of jurisdiction." *Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 791 (5th Cir. 2017); *accord Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353, 1367 (Fed. Cir. 2008).

This Court agrees. *Morrison*'s logic applies as fully to the Copyright Act as it did to § 10(b): To ask what conduct the Copyright Act reaches is to ask what conduct it prohibits, and what conduct the Copyright Act prohibits is a merits question rather than one of subject matter jurisdiction. The same result is reached under *Arbaugh*'s bright-line rule: The territorial reach of the Copyright Act is not jurisdictional because Congress has not clearly stated that it is. Territorial limits on the Copyright Act arise, not from the text of the statute itself, but from the judicially created "background presumption that legislation reaches only domestic conduct." *Geophysical Serv.*, 850 F.3d at 791; *see also Morrison*, 561 U.S. at 255 (characterizing the presumption against extraterritoriality as "a canon of construction"). *Reed Elesevier* is instructive on this point: In that case, the Supreme

Court held that the Copyright Act's registration requirement was not jurisdictional because Congress had not co-located it with the jurisdiction-granting provisions in 28 U.S.C. §§ 1331 and 1338(a). 559 U.S. at 164–65. The same logic applies with greater force here, where the Copyright Act's territoriality requirement is not only "separate" from §§ 1331 and 1338(a) but does not arise out of the text of the statute at all. *Id.* at 164; *see also S. River Watershed All., Inc. v. Dekalb Cnty.*, 69 F.4th 809, 822 (11th Cir. 2023) (holding that the Clean Water Act's diligent prosecution bar was not jurisdictional because it was located "outside the [statute's] jurisdiction-granting provision").

*Palmer* does not require a different conclusion.[7] In light of the superseding Supreme Court case law in *Arbaugh*, *Morrison*, and *Reed Elsevier*, the jurisdictional ruling in *Palmer* is best understood as dicta. In *Palmer*, nothing "*turned on* whether the existence of a cause of action for [extraterritorial] violations was technically jurisdictional." *Steel Co.*, 523 U.S. at 91. Whether territoriality was jurisdictional "made no substantive [or procedural] difference . . . , had been assumed by the parties, and was assumed without discussion by the [c]ourt." *Id.*; *see also Litecubes*, 523 F.3d at 1368 (distinguishing *Palmer* because the Eleventh Circuit "assumed the

---

[7] The Court assumes without deciding that *Palmer* is binding precedent for purposes of this case. *But see Litecubes*, 523 F.3d at 1366 (applying Federal Circuit law to questions of subject matter jurisdiction in patent appeals).

issue [of territoriality] was a jurisdictional one, without any analysis of whether the question was more properly considered a question on the merits"). The Supreme Court has indicated that such "drive-by jurisdictional rulings" should be given "no precedential effect." *Reed Elsevier*, 559 U.S. at 174. The Court thus concludes, *Palmer* notwithstanding, that it has subject matter jurisdiction over Sanho's copyright infringement claim against Kaijet Taiwan, and Kaijet Taiwan's motion to dismiss is therefore denied.

**III. The Kaijet Defendants' and Star View's motions for a new trial are denied.**

The Kaijet Defendants, joined by Star View, move for a new trial under Federal Rule of Civil Procedure 59(a)(1) on both their counterclaim for '618 Patent invalidity and Sanho's claim for '618 Patent infringement.[8] Their motion is denied. First, the verdict that the '618 Patent is valid is not against the "clear weight" of the evidence. *McGinnis*, 817 F.3d at 1254; *see also* Fed. R. Civ. P. 59(a)(1). Defendants argue that the '618 Patent is invalid because it is obvious in view of the prior art, and especially in view of the design disclosed in Chinese patent CN728.[9] But the question of whether CN728 is prior art to the '618 Patent was explicitly reserved

---

8 ECF 643-1, at 10; ECF 645, at 1.

9 ECF 643-1, at 11.

for the jury,[10] and Defendants have waived any challenge to the jury's finding as to that issue by raising it for the first time in their reply brief. *See, e.g.*, *Reliance Ins. Co. of Ill. v. Richfield Hosp. Servs., Inc.*, 92 F. Supp. 2d 1329, 1332 (N.D. Ga. 2000); *cf. United States v. Levy*, 379 F.3d 1241, 1244 (11th Cir. 2004) ("[T]his Court . . . repeatedly has refused to consider issues raised for the first time in an appellant's reply brief). Given that the jury was authorized to disregard the CN728 patent, it was not against the weight of the evidence for the jury to find in Sanho's favor on '618 Patent invalidity, on which claim a new trial is denied.

Second, the verdict that the JCD382 and JCD389 both infringed the '618 Patent does not "result in a miscarriage of justice." *McGinnis*, 817 F.3d at 1254. Defendants' argument here is premised on an alleged statement by a single juror that the '618 Patent was infringed only by the JCD382[11]—a statement elicited by Defense counsel after the verdict had been returned.[12] But the law is clear that "orally given findings cannot impeach the verdict." *Sims' Crane Serv., Inc. v. Ideal Steel Prods., Inc.*, 800 F.2d 1553, 1555 (11th Cir. 1986). A juror's "contemporaneous, extemporaneous exegesis" is not an "appropriate way to obtain specific answers

---

[10] The Court instructed the jury that a factual dispute existed as to whether the CN728 patent was prior art for purposes of Defendants' patent invalidity claims. ECF 595.

[11] ECF 643-1, at 11–12.

[12] *Id.*

from a jury." *Id.* at 1555–56. In fact, under the Federal Rules of Evidence, the juror's statement could not be used to disturb the verdict "even if [it] had been offered in the form of affidavits." *Id.* at 1556 (citing Fed. R. Evid. 606(b)).[13] The Court declines to consider the juror's statement here.

The '618 Patent infringement verdict will not result in a miscarriage of justice for the additional reason that Defendants have not been prejudiced by it. Sanho did not seek damages on the '618 Patent infringement claim at trial,[14] and the Court has denied Sanho's subsequent requests for disgorgement of profits and for a permanent injunction with regard to that patent.[15] In the section to follow, the Court will deny Sanho's attendant motion for attorneys' fees. What Sanho will get from the '618 Patent infringement verdict amounts, in Defendants' own words, to "no relief."[16] Keeping that verdict undisturbed is not a miscarriage of justice. Defendants' motion for a new trial is denied.

---

13 The Federal Circuit applies the law of the regional circuit when "reviewing a district court's evidentiary rulings." *ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345, 1355 (Fed. Cir. 2024).

14 ECF 589.

15 ECF 634, at 5–8.

16 ECF 643-1, at 12.

## IV. The Parties' Motions for Attorneys' Fees Are Denied.

Both Sanho and the Kaijet Defendants request an award of attorneys' fees under 25 U.S.C. § 185.[17] Section 185 allows fees to be awarded to the prevailing party in "exceptional cases." 35 U.S.C. § 285. A case is exceptional if it "stands out from others" under the totality of the circumstances—either with respect to the "substantive strength of a party's litigating position," or with respect to the "unreasonable manner in which the case was litigated." *Luv n' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1105 (Fed. Cir. 2024).

This is not such an exceptional case. The fact that neither side's litigation position was overwhelmingly strong is reflected by the mixed verdict: Sanho won on copyright but lost on trademark; the Kaijet Defendants won on the '290 and '875 Patents but lost on the '618. Both sides lost claims at summary judgment.[18] On the balance, these are not exceptional results. In addition, though each side accuses the other of bad faith, the parties' conduct has not been so unreasonable as to justify an award of attorneys' fees to one side or the other. Sanho and the Kaijet Defendants' motions for attorneys' fees are accordingly both denied.

---

[17] ECF 637, at 6; ECF 638, at 2. Sanho also requests attorneys' fees under "the inherent equitable powers of the Court." ECF 637, at 6. That request is denied for the same reasons the Court denies fees under § 185.

[18] ECF 513, at 37–39 (granting summary judgment on Sanho's false advertising claim); *id.* at 59–64 (granting summary judgment on Defendants' false advertising and false patent marking counterclaims).

## V. The Kaijet Defendants' motion to deny or reduce Sanho's bill of costs is granted in part and denied in part.

The Kaijet Defendants ask the Court to deny or reduce Sanho's bill of costs.[19] Under Federal Rule of Civil Procedure 54(d), costs "shall be allowed as of course to the prevailing party unless the court directs otherwise." *Gilchrist v. Bolger*, 733 F.2d 1551, 1556 (11th Cir. 1984). To qualify as a prevailing party, a litigant "must be awarded some relief on the merits of its claim by the court" that "materially alter[s] the legal relationship between the parties." *Royal Palm Props., LLC v. Pink Palm Props., LLC*, 38 F.4th 1372, 1376 (11th Cir. 2022). "A judgment for damages in any amount" is sufficient to sustain prevailing party status. *Farrar v. Hobby*, 506 U.S. 103, 113 (1992). Under that standard, Sanho is the prevailing party here by virtue of the $1,385,509.00 judgment in its favor against the Kaijet Defendants.[20] *See Royal Palm*, 38 F.4th at 1382 ("[I]n the majority of cases whether there is a prevailing party and which party prevailed will be easily determined."). Sanho is therefore entitled to costs to the extent authorized by 28 U.S.C. § 1920. *Johnston v. Borders*, 36 F.4th 1254, 1287 (11th Cir. 2022).

---

[19] ECF 652, at 2.

[20] ECF 635 (entering judgment in favor of Sanho against Kaijet US in the amount of $774,626.00, and against Kaijet Taiwan in the amount of $610,883.00).

Sanho initially requested costs totaling $64,643.72,[21] but later adjusted that figure downward to $58,914.67.[22] The Kaijet Defendants' objections to the latter figure are sustained in part and overruled in part as follows:

1. Interpreter fees for Michelle Tan and Grace Gao-Sheppard: **Overruled**. Costs for interpreter fees are authorized by § 1920(6) and are taxed as to Tan at $1050.00 and as to Gao-Sheppard at $4,200.00. The Kaijet Defendants argue that Tan and Gao-Sheppard's fees are set by the Court Interpreters Act, but this argument has no merit: Section 1920(d) permits courts to tax costs for "compensation of interpreters" separate from any costs under the Court Interpreters Act. 28 U.S.C. § 1920(6).

2. Deposition transcript for Zhuowen Liao: **Overruled**. Costs for deposition transcripts are authorized by § 1920(2), and the Court finds that Sanho "could have reasonably believed" that Liao's deposition was necessary for use in this case.[23] *E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 623 (11th Cir. 2000). Costs for Liao's deposition transcript are taxed at $811.00.

3. Deposition transcripts for Kaijet US's Rule 30(b)(6) witness and Jessica Liu: **Overruled**. Costs for deposition transcripts are authorized by § 1920(2), and the Kaijet Defendants do not dispute that the transcripts were necessarily obtained for use in this case. Costs are taxed as to Kaijet US's Rule 30(b)(6) witness at $2,931.58, and as to Liu at $2,842.25.[24]

4. Airfare for Daniel Chin and Valerie Chong: **Sustained**. Costs for witness travel are authorized by § 1920(3) and defined in 28 U.S.C. § 1821. *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 440 (1987). Under § 1821, a witness who travels by common carrier must "utilize a common carrier at the most economical rate reasonably available." 28 U.S.C. § 1821(c)(1). Here, Sanho's witnesses did not do so, instead flying first class on airline tickets booked two days before a trial that had been scheduled months in advance. Because Sanho did not propose an alternative method for calculating travel

---

21 ECF 640, at 1.

22 ECF 664, at 29.

23 ECF 664-4, at 2; ECF 664-5, at 9.

24 This figure does not include costs for Liu's video deposition.

expenses, the Court adopts the Kaijet Defendants' proposed figure of $134 per witness.[25]

5. Printing of defense trial exhibits: **Overruled**. These costs are authorized by § 1920(3) and are taxed at $1,680.00.

6. Video recordings of depositions: **Overruled**. The longstanding rule in the Eleventh Circuit is that "when a party notices a deposition to be recorded . . . by both stenographic and nonstenographic means, and no objection is raised at that time by the other party to the method of recordation pursuant to Federal Rule of Civil Procedure 26(c), it is appropriate under § 1920 to award the cost of conducting the deposition in the manner noticed."[26] *Morrison v. Reichhold Chemicals, Inc.*, 97 F.3d 460, 465 (11th Cir. 1996). Because the Kaijet Defendants did not object to video recording at the time the depositions at issue were noticed, and because the Court finds that Sanho could have reasonably believed that video recordings were necessary for use in this case, Sanho is awarded the costs of conducting video depositions.

7. Deposition exhibits: **Overruled**. These costs are authorized by § 1920(2) and are taxed at $492.55. *See Kadribasic v. Wal-Mart Inc.*, No. 1:19-cv-03498-SDG, 2022 WL 898346, at *5 (N.D. Ga. Mar. 28, 2022).

8. Deposition web-conferencing: **Overruled**. These costs are authorized by § 1920(2). *See id.*

9. Apportionment of costs: **Overruled**. The Kaijet Defendants argue that the Court should reduce Sanho's award of costs, given that Sanho did not prevail on all of its claims. This case is poorly suited for apportionment, however, because—as the Kaijet Defendants themselves admit—there is "likely no feasible way to determine which costs are associated" with which claim.[27] Nor is the full amount of costs so disproportionate to Sanho's overall recovery that apportionment is needed to prevent injustice. *See TransWorld Food Serv., LLC v. Nationwide Mut. Ins. Co.*, No. 1:19-CV-3772-

---

25 ECF 664, at 21.

26 The Court does not read § 1920(c) as forbidding courts from awarding costs for both printed and electronically recorded transcripts, where the manner in which the deposition is to be recorded is properly noticed.

27 ECF 652-1, at 30.

SDG, 2023 WL 2733378, at *3 (N.D. Ga. Mar. 30, 2023) (exercising discretion to reduce costs that "total[ed] nearly half of Plaintiffs' entire award").

10. All other objections: **Sustained**. The Kaijet Defendants' objections to which Sanho has not specifically responded are sustained.

As a result, Sanho is awarded costs totaling $52,316.05, as follows:

| Cost | Award |
|---|---|
| **Fees of the Clerk** | **$400.00** |
| **Summons and Subpoena Fees** | **$415.65** |
| - Kaijet Defendants | $147.65 |
| - Lyu | $65.00 |
| - Kaijet US IP Counsel | $65.00 |
| - Kaijet Taiwan IP Counsel | $65.00 |
| - Miller | $65.00 |
| - Star View | $8.00 |
| **Transcripts** | **$42,780.00** |
| - Miller | $1,170.20 |
| - Kaijet US 30(b)(6) | $2,931.58 |
| - Akins | $1,458.25 |
| - Bressler | $1,152.40 |
| - Cenatempo | $952.20 |
| - Chin | $2,362.40 |
| - Chong | $718.83 |
| - Baker | $1,197.60 |
| - Franzon | $951.40 |
| - Liu | $4,364.75 |
| - Chow | $1,302.00 |
| - Pellegrino | $786.25 |
| - Nguyen | $776.30 |
| - Liao | $811.00 |
| - Lyu | $2,059.95 |
| - Sarabia | $2,552.29 |
| - Shankwiler | $1,204.20 |
| - Tai | $2,057.25 |
| - Star View 30(b)(6) | $2,865.55 |
| - Kaijet Taiwan 30(b)(6) | $4,118.00 |
| - Trial | $6,987.60 |

| Cost | Award |
|---|---|
| **Witnesses** | **$1,070.00** |
| - Chin | $708.00 |
| - Chong | $362.00 |
| **Copies** | **$2,400.40** |
| **Interpreters** | **$5,250.00** |
| **Total** | **$52,316.05** |

## VI. CONCLUSION

Defendants' renewed motions for judgment as a matter of law [ECFs 641, 646] and for a new trial [ECFs 643, 645] are **DENIED**. Kaijet Taiwan's motion to dismiss [ECF 641] is **DENIED**. The parties' motions for attorneys' fees [ECFs 637, 638] are **DENIED**. The Kaijet Defendants' motion to deny or reduce Sanho's bill of costs [ECF 652] is **GRANTED IN PART** and **DENIED IN PART**. Sanho is **AWARDED** $52,316.05 in costs.

**SO ORDERED** this 1st day of July, 2025.



Steven D. Grimberg
United States District Judge

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 25-1989

**Short Case Caption:** Sanho Corp. v. Kaijet Technology International Limited, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- ☑ the filing has been prepared using a proportionally-spaced typeface and includes 13,042 words.
- ☐ the filing has been prepared using a monospaced typeface and includes ______ lines of text.
- ☐ the filing contains ______ pages / ______ words / ______ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ______).

Date: 11/20/2025

Signature: /s/ Elizabeth H. Rader

Name: Elizabeth H. Rader